UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMS<br>Plaintiff *Pro Se*, | § § § | |
| vs. | § § § | 3-15CV-1701L |
| CITY OF IRVING, | § | CIVIL ACTION NO. _____ |
| IRVING POLICE DEPARTMENT, | § § | |
| DISPATCHER STEPHANIE BARNES<br>in her official and individual capacities, | § § § | |
| DETECTIVE ERIC CURTIS in his<br>official and individual capacities, and | § § § | |
| CAPT. BRUCE JOLLY in his official<br>and individual capacities, | § § § | |
| CRAIG LACKEY in his individual<br>capacity,<br>    Defendants. | § § § § § | |

## PLAINTIFFS ORIGINAL COMPLAINT

1. Plaintiff Michael Williams ("Williams") complains of Defendants City Of Irving, Texas, Irving Police Department ("IPD"), Dispatcher Stephanie Barnes ("Barnes"), Detective Eric Curtis ("Curtis") and Capt. Bruce Jolly ("Jolly") as follows:

2. This is a proceeding for declaratory relief and for money damages against Defendants, to redress the deprivation of rights secured to the plaintiff by the Civil Rights Act of 1871 (42 U.S.C. §1983 and 42 U.S.C. §1985), of the Fourteenth Amendment to the Constitution of the United States and for state law claims pertaining to the Texas Tort Claims Act, negligent hiring/negligent retention and intentional infliction of emotional distress.

3. This violation of a clear and established constitutional right defeats the Official and Qualified immunity defense.

## PARTIES

4. Plaintiff, Michael Williams, is an individual who resides at 7604 Acorn Lane; Frisco, Texas 75034.

5. Defendant, City of Irving, Texas, is a municipality organized under Texas Local Government Code Annotated, Chapter 5 and Subchapter A. The City of Irving may be served by serving the City Attorney's Office at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org.

6. Defendant, Irving Police Department is a police department operating under Texas Local Government Code Annotated. § 341 (2013). The Irving Police Department may be served with process by serving Jason D. McClain, Esq., Sr. Assistant City Attorney; City Attorney's Office at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org.

7. Defendant, Eric Curtis, is a police detective with the Irving Police Department who can be served at his place of employment at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; ecurtis@cityofirving.org.

8. Defendant, Stephanie Barnes, is a police dispatcher with the Irving Police Department who can be served at her place of employment at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750.; sbarnes@cityofirving.org.

9. Defendant, Capt. Bruce Jolly, is a police captain with the Irving Police Department who can be served at his place of employment at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750.; bjolly@cityofirving.org.

10. Defendant, Craig Lackey, Esq., (Texas Bar #: 00785372) is an attorney and In-House Counsel for Caliber Home Loans who can be served at his place of employment at 3701 Regent Blvd., Irving, TX 75063; Phone: (214) 874.4106 or craig.lackey@caliberhomeloans.com.

## JURISDICTION AND VENUE

11. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution; equal protection of the laws. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3) providing for jurisdiction in this Court of suits authorized by 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law, pursuant to 28 U.S.C. § 1367. Venue is proper in the Dallas Division of the Northern District of Texas as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## FACTUAL ALLEGATIONS

12. On December 21, 2013, Plaintiff made a non-emergency phone call to the Irving Police Department to report on-going terroristic threats made towards him and his family by a group of White coworkers at his place of employment, Caliber Home Loans or "Caliber" located at 3701 Regent Blvd. in the City of Irving, Texas.

13. Police Dispatcher Stephanie Barnes ("Barnes") took Plaintiffs phone call. During this non-emergency phone call, Barnes, picking up on the fact that Plaintiff was preparing to make a terroristic threat report against a group of White co-workers, used her job at the IPD to trick the Plaintiff into revealing personal and professional information about himself.

14. Among the information she obtained from Plaintiff was personal information about Plaintiff and his family, the names of the people whom Plaintiff was accusing of threatening Plaintiff and his family and the name of the company for whom they all worked.

15. After Plaintiff's phone call with Barnes ended, Barnes spent the next 24 hours sending and receiving phone calls to and from Caliber Senior Managers and Caliber Security. During those phone calls Barnes made many defamatory statements regarding Plaintiff and exchanged private information about Plaintiff and his family with Caliber Senior Managers and Caliber Security.

16. The defamatory statements made by Barnes to Caliber Senior Management and Caliber Security included allegations of Plaintiff being insane, delusional, violent and inclined to commit an act of terrorism on the general staff at Caliber. Barnes, under the color of authority led the company into believing that plaintiff was a danger to the safety of the general workforce at Caliber. During the phone call, at no time did Barnes ask plaintiff if he needed a doctor, if he had any history of mental illness, if he felt suicidal, or request a squad car to go by Plaintiffs home to conduct a welfare check; which is common police policy in such a circumstance as described by Barnes.

17. Barnes, acting to a well practiced police custom or policy of racists police profiling and under the color of authority, influenced Caliber into providing her with confidential and private information about Plaintiff such the confidential contents of his employee file, co-workers comments about plaintiff, contents of Plaintiffs private and personal email accounts (which had been "hacked" and stolen), medical information, doctor's names, and information regarding Plaintiffs in-laws, details of Plaintiffs marriage and subsequent divorce, overdue bills, details about plaintiffs ex-spouse and personal house expenses.

18. Barnes protected the would-be suspects by providing Caliber Senior Managers with enough information to guide them in developing an alibi and destroying electronic records that would be critical to a criminal investigation.

19. As a result of Barnes defamatory statements Plaintiff was constructively fired from his job and his reputation and career irreparably damaged. Plaintiff's access badge was deactivated blocking him from entering the building where he worked; his remote computer access was deactivated disallowing him from working; his chain of command was told about the defamatory statements made by Barnes irreparably damaging Plaintiffs reputation and career. And the people who were threatening and harassing Plaintiff were never brought to justice; which creates fear in the life of the Plaintiff and Plaintiffs family to this day.
20. After Plaintiff completed the online Terroristic Threats Police report, the case was assigned to Detective Eric Curtis of the IPD. Det. Curtis responded to the police report with the exact same custom that Barnes responded to the phone call.
21. Curtis, aware that no law exists requiring competent investigation, commences a sham investigation designed to obstruct, defeat and impede the police report with the intent of denying the plaintiff equal protection of the laws.
22. Curtis spoke with Barnes first, read her reports and listened to the tapes she made with plaintiff and Caliber management.
23. Curtis then contacted Michelle Greenstreet, who was Executive Vice President of Human Resources when the police report was made.
24. Curtis, during the criminal investigation, spoke with the attorney for the Caliber, Craig Lackey, providing Lackey with the contents of plaintiff's police report and enough information for Lackey to locate and destroy electronic evidence of ongoing harassment Plaintiff mentioned in his police report.
25. Curtis accepted the false story from Lackey that Plaintiff made the police report only after sending numerous emails complaining about his pay and not receiving and end of year pay bonus. This fabrication on the part of Lackey was intended to obstruct a criminal investigation and could have been easily verified as false had Curtis requested a copy of the emails Lackey was referring to.
26. Curtis accepted the second fabrication from Lackey that Caliber paid an outside computer forensics firm to analyze the suspects' computers at Caliber for any sign of Plaintiffs personal information on their computers.
27. This was the second fabrication by Lackey to Curtis which could have been easily verified as false had Curtis requested the name of the computer forensics company and a physical copy of the report that company made.
28. Curtis never made any attempts to corroborate any material statements Lackey told him in relation to his statements to police detective Curtis.

29. Craig Lackey, on more than one occasion, intentionally made false or misleading material statements to the police during a criminal investigation.
30. The tapes of these conversations between Lackey and Curtis should have been available through the Pubic Information Act but were either hidden or destroyed by the IPD.
31. Detective Curtis without speaking to neither the Plaintiff, nor the alleged assailants in the Terroristic Threats Police report, closed the case made by Plaintiff.
32. On 03/05/2014, Plaintiff went to the IPD to meet with Det. Curtis, in person. Det. Curtis confirms that he spoke with Barnes. But more importantly, Curtis confirms that he listened to the tapes of Barnes and the related phone calls and that everything Barnes did was a common practice of the Irving Police Department.
33. Plaintiff escalated the situation and wrote an email detailing these events to Captain Bruce Jolly requesting they review and/or reassign the case to a new detective and order a new investigation. Captain Jolly, an influence of Police policy within the IPD, supported the actions aforementioned and refused to reinvestigate the case in any way.
34. On April 4th, 2014, Plaintiff initiated an investigation through Irving PD Interval Affairs Legal Advisor, Les Moore against Stephanie Barnes. After Plaintiff filed suit in Justice Court 4 in Frisco, Texas new audio tapes of Barnes conversations with Caliber Management surfaced through Irving City Attorney Jason McClain.
35. On May 27th, 2014, the Internal Affairs investigation concluded that Plaintiffs allegations against Barnes were **SUSTAINED** and that she was not operating in accordance with Irving PD policies and procedures. (See Stephanie_Barnes_SUSTAINED.pdf: Exhibit 8).
36. On June 16th, 2014 Plaintiff received a letter from Irving PD Interval Affairs stating that the investigation against Detective Curtis was **UNFOUNDED.** Although Barnes and Curtis both worked for the same police department in the same building guided by the same General Orders, the audio tapes of Barnes speaking with Caliber Senior Management were turned over to Plaintiff (albeit not without a tremendous struggle), but Plaintiff was told in an email from Jason McClain that the audio tapes of Curtis speaking with Caliber Senior Management were NOT available. We believe this evidence of a cover-up to protect Detective Curtis and the IPD.
37. At all relevant times, Defendants were acting under the color of law and under the color of authority as police captains, police officers, detectives, employees, and agents or servants of the City of Irving, Texas; and the County of Dallas, Texas; and as agents of the State of Texas.

### COUNT ONE
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983
### Violation of Fourteenth Amendment Equal Protection Rights

**(Against All Defendants)**

38. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.
39. Defendants, acting to a well practiced police custom, did not provide the Victim (who is African-American and the Plaintiff) the opportunity to create a police report against a group of White citizens, and then have that report assigned to a Detective and allow the Detective to investigate.
40. Instead, based upon Plaintiffs phone call, and prior to any police report being made, the Defendants (who are all-White) "teamed-up" with the Suspects (who are also all-White) and began investigating, slandering, racially profiling and spreading false propaganda, throughout various people within the organization, about the Victim (who is African-American and the Plaintiff) constructively derailing the police report and investigatory process while adding a punitive effect to Plaintiff for reporting the crime.
41. The Defendants, based upon a 10 minute telephone conversation with the Plaintiff, told the Suspects that they should be afraid for their lives and the lives of the other employees at the organization because the Plaintiff was insane, violent and delusional.
42. Based upon an illegitimate investigation conducted by Dispatcher Barnes, prior to the filing of any police report and without interviewing the plaintiff Detective Curtis closed the investigation.
43. At no point did anyone from the IPD interview the Victim (who is African-American and the Plaintiff). However, the White Suspects and numerous agents of the suspects were contacted and interviewed on several occasions.
44. Defendants, acting to a well practiced police custom, intended to defeat, block, nullify and/or make void the police report filed by Plaintiff. Thus, Plaintiff was not allowed to freely and fully file a police report and enjoy the protections and use of the criminal justice process and Due Process the same as other citizens. The police decided and adjudicated the case based upon race.
45. By engaging in the foregoing conduct, Defendants violated Plaintiff's Fourteenth Amendment rights to equal protection which resulted in the denial of protection for the plaintiff and his family that is enjoyed by all other citizens.
46. By acting as aforedescribed, Defendants acted with malice and/or egregious and reckless disregard for Plaintiff's rights. As a direct and proximate result of the Defendants' violations of Plaintiffs constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and emotional distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT TWO
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1985(2)
Obstructing justice; intimidating party, witness, or juror
(Against All Defendants)

47. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.

48. Plaintiff contends that the Defendants, collectively, have violated provisions of 42 U.S.C. 1985(2) Conspiracy to Interfere with Civil Rights at:

    "or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

## COUNT THREE
### Intentional Infliction of Emotional Distress
(Against Barnes, Lackey, Jolly and Curtis)

49. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.

50. The standard for review of extreme and outrageous conduct is set out in Feltmeier v. Feltmeier, 207 Ill. 2d 263, 274 (2003): "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community."

51. The results of the IPD Internal Affairs Group investigation, which sustained Plaintiff's complaints of mistreatment, stated that Dispatcher Barnes' conduct was Prejudicial to Good Order and a Violation of the Irving Police Department Standards of Conduct. This suggests that although Barnes' conduct was a custom within the IPD, Barnes' conduct was so outrageous that it went beyond the bounds of decency and was indeed intolerable to a civilized society.

52. At one point, Barnes admits to a Caliber Senior Officer that during the phone call she had with the Plaintiff, she succeeded in intentionally "tricking" the Plaintiff into providing information that she (Barnes) was not entitled to and was intending to use against him with his employer.

53. In a reckless disregard for Plaintiffs son, ex-wife and Plaintiffs confidentiality and safety, Barnes raced ahead of the police report process and contacted Caliber building security, Caliber Chief Operating Officer and Caliber Human Resources Director and gave Plaintiffs name, work department, job title and my racial makeup. She also provided the racial makeup of Plaintiffs ex-wife. Barnes carried out these acts prior to any police report being filed or even a positive identification of Plaintiff being made.

54. Barnes proceeded to tell Caliber staff that they should be afraid for their lives and the lives of the other employees at the organization because the Plaintiff was mentally unstable, violent and delusional; while at the same time never attempting to seek medical or psychological assistance for the Plaintiff nor did she send a police squad car to Plaintiffs' home.
55. Barnes knew, based on the telephone conversation that Plaintiff had a family to support, a career and reputation to maintain. She knew that reporting this information to his employer in this manner would result in a financial hardship, loss of employment and severe emotional distress to Plaintiff and Plaintiffs family.

56. By acting as aforedescribed, Defendant Barnes acted with malice and/or egregious and reckless disregard for Plaintiff's rights. As a direct and proximate result of these actions Plaintiff has suffered mental and emotional anguish, severe emotional distress, hypertension and high blood pressure as evidenced by medical records from doctors.

## COUNT FOUR
## INVASION OF PRIVACY
### (Against Barnes and Lackey)

57. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.
58. When Defendant Barnes, under the color of authority, "tricked" as she stated, plaintiff into providing her with his private information (name, address, age and place of employment) that was not required for her to fulfill her role as dispatcher in this case, she unreasonably invaded plaintiffs privacy.
59. Under the color of authority, Barnes, motivated by racist police profiling, illegitimately obtained from Plaintiffs employer private and embarrassing information such as confidential information from Plaintiffs employee file, co-workers comments, contents of Plaintiffs private and personal email accounts, medical information, doctor's names, and information regarding Plaintiffs in-laws, details of Plaintiffs marriage and subsequent divorce, overdue bills and personal house expenses.
60. Barnes used the police process and facilities to publicly disclose Plaintiffs private affairs in the form of police reports and dispatcher notes which are electronically published to police squad cars nationwide and are a permanent record in Plaintiffs police profile and could appear in investigations and background checks regarding Plaintiff.

61. Barnes created a pretext or a setting for Caliber to openly discuss and share Plaintiffs private affairs with other employees and coworkers of the organization whereas this setting would have otherwise never existed.

62. Barnes actions were an unreasonable and malicious intrusion on plaintiff's solitude, seclusion and private affairs. *Billings v. Atkinson, 489 S.W.2d 858, 860 (Tex.1973)*. The Texas Constitution guarantees the sanctity of the home and person from unreasonable intrusion. *Texas State Employees Union v. Texas Department of Mental Health & Mental Retardation, 746 S.W.2d 203, 205 (Tex.1987)*. The fact that this information was not required at all under these circumstances makes the acquisition of the information highly offensive to a reasonable person and there was no legitimate reason for obtaining and/or disclosing the information.

**COUNT FIVE**
**DEFAMATION OF CHARACTER (SLANDER)**
**(Against Barnes, Lackey and Curtis)**

63. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.

64. In a defamatory fashion, Barnes maliciously contacted Caliber building security, Caliber Chief Operating Officer and Caliber Human Resources Director and gave Plaintiffs name, work department, job title and racial makeup. Barnes carried out these acts prior to any police report being filed or even a positive identification of Plaintiff being made.

65. Barnes proceeded to defame Plaintiff by telling Caliber building security, Caliber Chief Operating Officer and Caliber Human Resources Director that they should be afraid for their lives and the lives of the other employees at the organization because the Plaintiff was mentally unstable, violent and delusional; while at the same time never attempting to seek medical or psychological assistance for the Plaintiff nor did she dispatch a police squad car to Plaintiffs' residence; so these remarks were clearly malicious defamation and not honest opinions.

66. A career in Information Technology strongly relies upon references from past employers and co-workers. As a direct and proximate result of the Defendants' violations of Plaintiffs constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and emotional distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT SIX
## DEFAMATION OF CHARACTER (LIBEL)
### (Against Barnes and Curtis)

67. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.

68. In the Irving PD document entitled "Detailed History for Police SEQ##131210325 as of 03/18/2014 09:41:59" Barnes writes the following "While speaking to RP (Reporting Party) it was obvious that he was mentally unstable". Barnes continues, ". . . He first stated he had not notified HR (Human Resources) and then said he did and they were helping the employees harass him". Both statements were false. Barnes continues, "He has a large amount of bills and has been having marital problems as well." Despite Plaintiff's recent divorce he and his ex-spouse were on good terms at that time. Barnes continues to write, "They found emails he had sent to himself concerning neurologists, other issues that were concerning and purchasing handguns."

69. Barnes had never received evidence that Plaintiff was interacting with neurologists nor was did Plaintiff ever purchase any handguns. Despite having no evidence of any of these allegations she wrote these statements in a highly suggestive, prejudicial and defamatory manner.

70. These erroneously and maliciously inaccurate statements were published to every police officer in the United States. Should law enforcement stop Plaintiff in traffic or run an investigatory check on his name, drivers license number or social security number these defamatory statements would prejudice the officers towards him.

71. The type of work Plaintiff does requires a high security clearance and an FBI background check that includes fingerprinting prior to hiring and a more detailed background check when being considered for promotions and certain high profile projects. The creation and distribution of these documents constitute Libel.

## COUNT SEVEN
## ABUSE OF PROCESS
### (Against Barnes, Jolly and Curtis)

72. Plaintiff incorporates and realleges Paragraphs 1 through 37 as if here quoted and verbatim and set forth herein at length.

73. Plaintiff contends that Defendants Barnes and Curtis, working in concert and under the color of authority, perverted the legal process in a way that was not authorized by the legal process. They raced ahead of the filing of the police report and warned the suspects of pending investigation and discovery.

74. Defendants Curtis legitimized and furthered the actions of Barnes, which were a violation of Constitutional and State law and what the Irving PD Internal Affairs Group referred to as

"Prejudicial to Good Order and a Violation of the Irving Police Department Standards of Conduct."

75. Defendant Jolly further abused the process by legitimizing the actions of Barnes and Curtis by ignoring pleas from the Plaintiff to correct the misinformation, assign another detective to the case and launch a new investigation. Capt. Jolly, fully aware of the actions of Barnes and Curtis, refused to take any action to correct the processes.

76. This perverted use of the process had the ulterior motive of protecting alleged White law breakers, as a class, while punishing African-American citizens, as a class, for exercising the right to equal protection.

77. As a direct and proximate result of the Defendants Barnes, Jolly and Curtis abuse of the process, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and emotional distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## JURY DEMAND

78. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff MICHAEL WILLIAMS demands a jury on all issues so triable.

## PRAYER

For these reasons, plaintiff respectfully prays that this Court award him all relief to which he is entitled under law or equity.

Respectfully Submitted,

By: /s/ Michael Williams
Michael Williams

## CERTIFICATE OF SERVICE

This is to certify that on the 15th day of May, 2015, I filed the foregoing with the Clerk of Court which will send notification of such filing to Defendant's to wit:

Jason D. McClain, Esq., Sr. Assistant City Attorney; City Attorney's Office at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org

Defendant, Eric Curtis at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; ecurtis@cityofirving.org.

Defendant, Stephanie Barnes at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750.; sbarnes@cityofirving.org.

Defendant, Capt. Bruce Jolly at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750.; bjolly@cityofirving.org.

Defendant, Craig Lackey, Esq., (Texas Bar #: 00785372) at 3701 Regent Blvd., Irving, TX 75063; Phone: (214) 874.4106 or craig.lackey@caliberhomeloans.com.

_/s/ Michael Williams_
Michael Williams

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**RECEIVED MAY 15 2015 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS**

## I. (a) PLAINTIFFS
Michael Williams, Pro Se

**DEFENDANTS**
City of Irving, Irving PD, Dispatcher Stephanie Miles, Sgt. Sandra Curtis, Attorney Craig Lackey, and Captain Bruce Jolly

(b) County of Residence of First Listed Plaintiff: Collin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Jason D. McClain, Esq., Sr. Assistant City Attorney; City Attorney's Office at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983, 42 U.S.C. § 1985

Brief description of cause:
Violation of the 14th Amendment to Equal Protection

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions):*
JUDGE: Hon. Jim Jordan; 160th Judicial District
DOCKET NUMBER: DC-14-14860

DATE: 05/15/2015
SIGNATURE OF ATTORNEY OF RECORD: *Michael Williams*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____