IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMS, § | | |
| Plaintiff, § | | |
| § | CIVIL ACTION NO. 3:15-CV-1701-L-BH | |
| v. § | ECF | |
| § | | |
| CITY OF IRVING, TEXAS, et al. § | | |
| Defendants. § | Referred to U.S. Magistrate Judge | |

### INDIVIDUALLY NAMED CITY DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION

Individually named City Defendants Stephanie Barnes, Eric Curtis and Bruce Jolley ("City Defendants") file this partial summary judgment motion on their entitlement to qualified immunity from Plaintiff Michael Williams' 42 U.S.C. §§ 1983 and 1985 claims. This motion is filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Local Rule 56.3 of the Northern District of Texas and in compliance with the Court's July 12, 2016 Order.

Each of the matters required by Local Rule 56.3 are set forth in the Defendants' Partial Summary Judgment Brief. This motion and that brief are supported by an appendix prepared pursuant to Local Rule 56.6.

### I.   Summary of Williams' claims on which summary judgment is sought

Williams files numerous federal and state claims against the City of Irving, the Irving Police Department, three Irving employees and an individual not associated with the City. This motion addresses only Williams' federal claims against City Defendants. Specifically, Williams alleges that City Defendants violated his 14th Amendment Equal Protection rights on the basis of his race when they did not provide Williams "the opportunity to create a police report against a group of White citizens and then have that report assigned to a detective and allow the detective to investigate." Plaintiff's Original Complaint, ¶ 39. More specifically, Williams alleged:

Defendants . . . intended to defeat, block, nullify and/or make void the police report

> filed by Plaintiff. Thus, Plaintiff was not allowed to freely and fully file a police report and enjoy the protections and use of criminal justice process and Due Process the same as other citizens. The police decide and adjudicated the case based upon race. By engaging in the foregoing conduct, Defendants violated Plaintiff's Fourteenth Amendment rights to equal protection.

Plaintiff's Original Complaint, ¶¶ 44-45.[1] Williams also alleges in a similarly conclusory fashion that City Defendants have conspired to deny him Equal Protection in violation of 42 U.S.C. §1985. Plaintiff's Original Complaint, ¶ 48.

## II.   Grounds for summary judgment

City Defendants seek summary judgment because they are entitled to qualified immunity from Williams' federal claims. Specifically, Williams has not and cannot present a valid Equal Protection or §1985(2) conspiracy claim. Moreover, even if Williams could properly allege such violations, City Defendants are still entitled to qualified immunity because Williams' allegations are demonstrably false and/or their conduct was objectively reasonable in light of the existing facts and circumstances.

## III.   Factual background

On December 20, 2013, Williams called the Irving Police Department and spoke to Dispatcher Barnes about how to file a harassment complaint against his co-workers at Caliber Home Loans ("CHL"). (App. p. 3). During this sixteen minute call, Williams told Barnes an increasingly bizarre story about his new co-workers' escalating hostility towards Williams. (App. p. 3). Specifically, Williams alleged, among other things, that his co-workers intercepted his emails to obtain all of him and his family's personal information; they stood around and casually discussed shooting him while he was present; and that they told him they would shoot his wife and send her shoes back to her native Columbia. Williams told Barnes that his supervisors were aware his co-

---

[1] City Defendants assume that Williams is alleging that the investigation was done in violation of his equal protection rights and not that he was unconstitutionally prevented from filing a report. Williams admits that he filed a police report and that it was assigned to Curtis. Plaintiff's Original Complaint, ¶ 20. See also App. p. 10.

workers' actions and that the supervisors endorsed and laughed about the threats. (App. p. 3).

Williams was rambling and inconsistent during his call with Barnes – he mentioned he had talked to a bounty hunter; he became angry with Barnes and then apologized "for the way [he] acted earlier"; and at various times said he was divorced, or going through a divorce or reconciled and no longer divorcing. (App. p. 4). Finally, Williams recounted his fears about coming home to a massacre now or in the future and that his co-workers could drive by and "shoot up" his house. (App. p. 4). Williams was so concerned that he no longer allowed his son to sleep in rooms facing the front of the house. (App. p. 4). Barnes told Williams that he could file an on-line harassment report and encouraged him to do so. (App. p. 4). Barnes gave Williams the website address to use for filing a report, and the call was concluded. (App. p. 4).

Barnes ran a criminal history check on Williams and discovered that his record included several offenses including larceny, fraud, dangerous drugs, disorderly conduct, injury to a child, obstruction of police and robbery. (App. p. 4). Barnes also contacted Williams' employer due to her concerns about Williams' behavior and the totality of the circumstances of Williams' call. (App. p. 4). It took Barnes several phone calls to contact the appropriate CHL personnel, but she was finally able to speak with Tiffani Siskin, a CHL manager, and communicate her concerns about possible safety issues at Williams' place of employment.[2] (App. p. 4).

On January 9, 2014, Williams filed an on-line report alleging work place harassment by his co-workers at CHL. (App. p. 10). On January 21, 2014, the Irving police department sought and received additional information from Williams regarding his allegations. (App. p. 10). Specifically, Williams' complaint was too voluminous for the area provided in the on-line report so an Irving officer e-mailed Williams and asked Williams to e-mail his full complaint back to the

---

[2] During the course of these calls, Barnes made several comments about Williams' potential instability. As a result of her comments, Barnes was suspended for one day. These comments appear to form the basis for Williams' intentional tort claims. *See* Plaintiff's Original Complaint, Counts 3-7.

officer. (App. p. 10). Once Williams complied with this request, an official complaint was completed, given an incident number and assigned to Detective Curtis to investigate. (App. p. 10).

Williams' complaint that was assigned to Curtis was even more fantastic than Williams' allegations to Barnes. Specifically, Williams supplemented his initial allegations with new claims that his co-workers, whom Williams refers to as a "Nazi-minded hate group," called him Trayvon and mimicked shooting him with a pistol; that they would violently slam computer components on desks around Williams; that they stood in front of Williams and discussed whether they should toss a grenade on the playground at Williams' son's school or "set up a sniper's nest to pick his kid off"; that they discussed in front of Williams how far a particular co-worker could be from Williams' wife and still shoot her in the spine and make her head explode; and that one co-worker on an elevator with Williams asked another whether he should fire Williams and then shoot him in the head or shoot him in the head and then fire him while the other employee responded they should shoot Williams in the head. (App. pp. 31-34).

Williams, who lives in Frisco, also alleged that on December 22, 2013, his employer contacted the Frisco Police Department, gave them Williams' home address and reported that Williams "was in the house dead or bleeding to death or the victim of a robbery." (App. pp. 33-34). As a result of this call, Williams claimed that the Frisco Swat Team surrounded his house and tried to break down his door "like a drug raid in the worst part of the world" while he and his son were inside. (App. pp. 33-34). Williams did not reveal in his Irving police report how the interaction with the Frisco PD ended. (App. p. 34).

Despite the fantastic nature of Williams' allegations, Curtis initiated a thorough investigation of his claims. (App. p. 26). First, Curtis reviewed Barnes' reports on her conversations with Williams and her conversations with CHL personnel. (App. p. 26). Those records conveyed Barnes' concerns about Williams' behavior and allegations as well as CHL's

unawareness of any problems at Williams' workplace. (App. p. 26).

Next, Curtis requested records from the Frisco PD to determine whether they had in fact stormed Williams' house as alleged by Williams. (App. pp. 26-27). Those police records indicate that CHL personnel called Frisco PD to request a welfare check on Williams as they had been unable to contact him via text or phone for approximately 18 hours after learning of Williams' troubling call to Irving dispatch. (App. p. 27). Frisco PD unsuccessfully called Williams and then sent two officers to his house. (App. p. 27). No one answered their knock at Williams' door and his neighbors did not know his location. (App. p. 27). With no evidence of an offense, the Frisco officers left the scene. (App. p. CURTIS). Fifteen minutes later, Williams called Frisco PD to ask why they had been at his house. (App. p. 27). Williams said that he was not at home but his neighbors called and told them of the police presence. (App. p. 27). Williams assured Frisco PD that he was fine, so Frisco PD told him to call CHL and closed its inquiry. (App. p. 27).

In early February 2014, Curtis separately interviewed Michele Greenstreet, CHL's Director of Human Resources, and Craig Lackey, CHL's General Counsel. (App. p. 27). Both individuals reported that CHL had no idea of issues within Williams' workplace before being made aware of his call to Irving PD. (App. p. 27). Greenstreet reported that she requested a welfare check on Williams by Frisco PD because no one could contact Williams and CHL was concerned for his well-being. (App. p. 27). Both Greenstreet and Lackey stated that Williams submitted a complaint to CHL on December 23, 2013 and that CHL initiated a thorough investigation of that complaint. (App. p. 27). CHL's investigation included an outside forensic review of all the accused employees' computers and other electronic devices, interviews of Williams and the accused co-workers, and interviews of any other employees who may have heard or seen any of the conduct alleged by Williams. (App. p. 27). After a three-week investigation, CHL found no evidence to support Williams' claims. (App. p. 27). Greenstreet reported that although Williams claimed to

have evidence to support this allegations he repeatedly refused or failed to turn anything over to CHL. (App. p. 27). Therefore, CHL closed its investigation on Williams' claims with no finding of wrongdoing. (App. p. 27). Both Lackey and Greenstreet reported to Curtis that since the investigation had been completed, Williams had returned to work.[3] (App. p. 27).

Finally, Curtis attempted to interview Williams regarding his claims. (App. p. 27). An interview was scheduled for noon in mid-February. (App. p. 27). Williams called at 11:20 a.m. and cancelled the interview without explanation. (App. p. 27). Thereafter, Williams did not respond to Curtis' calls to reschedule. (App. p. 27). In mid-March, Williams appeared unannounced at the Irving police department and demanded an appointment with Curtis. (App. p. 27). Williams became angry and disruptive as Curtis explained his belief that Williams' allegations were not supported with evidence. (App. p. 27). Williams repeatedly and forcefully stated he had evidence, including recordings, to prove his allegations. (App. p. 27). Therefore, Curtis agreed to meet Williams the next day to review all of Williams' evidence. (App. p. 27). Williams did not show up to that meeting. (App. p. 27).

Based on Barnes' reports, the Frisco PD documents, the interviews with Greenstreet and Lackey and Williams' refusal or inability to produce anything to support his claims, Curtis closed the investigation and determined that Williams' claims were unfounded. (App. pp. 27-28).

## IV.   Prayer

Summary judgement dismissing Williams' federal claims against City Defendants is proper because there is no material issue of fact regarding their entitlement to qualified immunity. The legal grounds supporting this contention are set forth in City Defendants' brief filed contemporaneously with this motion. Based on the facts and law presented to the court in City Defendants' motion and brief, City Defendants respectfully move for partial summary judgment as

---

[3] Williams has current litigation against CHL related to these events at Cause No. 3:15-CV-2346-N.

to Williams' 42 U.S.C. §§ 1983 and 1985 claims against them.

                                            Respectfully submitted,

                                            **CITY ATTORNEY'S OFFICE**
                                            **CITY OF IRVING, TEXAS**

                                 By:    */s/ Jason McClain*
                                            **JASON McCLAIN**
                                            Senior Assistant City Attorney
                                            SBOT No. 00797032
                                            jmcclain@cityofirving.org
                                            825 West Irving Boulevard
                                            Irving, Texas 75060
                                            Telephone: 972.721.2541
                                            Facsimile:  972.721.2750

                                          **ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      On August 11, 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the parties of record or their attorneys who have consented in writing to accept this Notice as service of this document by electronic means:

                                            */s/ Jason McClain*
                                            **JASON McCLAIN**
                                            Senior Assistant City Attorney