IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMS § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 3:15-CV-1701-L-BH | |
| § | ECF | |
| CITY OF IRVING, TEXAS, et al. § | | |
| Defendants. § | Referred to U.S. Magistrate Judge | |

**INDIVIDUALLY NAMED DEFENDANTS'
PARTIAL SUMMARY JUDGMENT BRIEF**

Individually named City Defendants Stephanie Barnes, Eric Curtis and Bruce Jolley ("City Defendants") file this partial summary judgment brief on their entitlement to qualified immunity from Michael Williams' 42 U.S.C. §§1983 and 1985 claims. This brief is filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Local Rule 56.5 of the Northern District of Texas and in compliance with the Court's July 12, 2016 Order.

**Argument and authorities**

**I. Summary judgment standard**

FED. R. CIV. P. 56(c) provides summary judgment must be entered when there is no genuine issue as to any material fact and that the moving party establishes its entitlement to judgment as a matter of law. *Epps v. NCNB Nat'l Bank*, 838 F. Supp. 296, 298-99 (N.D. Tex. 1993), aff'd, 7 F.3d 44 (5th Cir. 1993). For a fact issue to be genuine, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). For facts to be material, they must relate to a dispute that could affect the outcome of the suit under the governing body of substantive law. *Id.* Moreover, to avoid a properly supported motion for summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).

## II. Qualified immunity standard

City Defendants seek the qualified immunity from suit available to governmental officials sued in their individual capacities. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects an official whose conduct was objectively reasonable even if the conduct infringed upon a constitutional right. *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Qualified immunity focuses on what the officer reasonably understood his powers and responsibilities to be at the time he acted. *Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998) (noting that the actual circumstances may not justify the officer's behavior, but he is entitled to immunity if the facts as they appeared to the officer would make the conduct reasonable). The purpose of the qualified immunity inquiry is to recognize that officers can make reasonable mistakes as to how a legal doctrine will apply. *Saucier v. Katz*, 533 U.S. 194, 197 (2001). In fact, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The qualified immunity analysis is a two-part test. The Court must determine whether the plaintiff has alleged a violation of a "clearly established" constitutional right. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). A right is "clearly established" for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 482 U.S. 635, 640 (1987). In other words, the inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 at 202.

Even if there is a violation of a clearly established right, a defendant is still entitled to immunity if "[his] conduct was objectively reasonable" in light of the clearly established law. *Collins*, 382 F.3d at 573; *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). Importantly, *Williams* has the burden of demonstrating the inapplicability of qualified

immunity by establishing *both* a clearly established right and objectively unreasonable action. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

### III. Equal Protection claim

Williams alleges that he was denied equal protection on the basis of his race. Plaintiff's Original Complaint, ¶¶ 44-45. "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424, (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (per curiam)); *see also Village of Arlington Hts. v. Metro Housing Dev. Corp.,* 429 U.S. 252, 265 (1977)("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor,* 257 F.3d at 473.

#### A. Williams cannot present a violation of a clearly established Constitutional right

Williams has failed to present an Equal Protection claim against the City Defendants. His allegations amount to bare assertions that each City Defendant took an action or actions and that Williams is black. Williams fails to even allege the existence of, much less specifically identify, similarly situated individuals of a different race who City Defendants treated differently than Williams. Likewise, he fails provide any factual indication that City Defendants took any action against Williams because of a desire to harm him due to his race. Without allegations and evidence of different treatment of similarly situated individuals with a discriminatory intent, Williams has not presented an actionable Equal Protection claim.

B. **Williams' Equal Protection claim fails in any event**

Williams' Equal Protection claim is that he was not allowed to file a police report and have it fully and fairly investigated. *See* Plaintiff's Original Complaint, ¶¶ 39, 44-45.[1] Even if Williams could properly plead a violation of clearly established law such that a reasonable officer would have known that his conduct was unlawful, City Defendants are still entitled to qualified immunity because Williams' factual allegations are either demonstrably untrue or City Defendants' actions were objectively reasonable.

1. **Stephanie Barnes**

Barnes was the police dispatcher who took the initial call from Williams on December 20, 2013. (App. p. 3). Williams called Barnes to learn how to file a harassment complaint. (App. p. 24). Barnes directed Williams to the on-line reporting system after discussing the facts of the alleged harassment by Williams' co-workers. (App. p. 4). Williams subsequently filed a police report via the City's on-line process. (App. p. 10). This is the standard process for such complaints, and Barnes has directed numerous other callers with similar complaints to use the on-line reporting process. (App. p. 4). Importantly, there is no difference between a complaint taken by a dispatcher and a complaint filed via the on-line process – both are evaluated by an intake officer and assigned to a detective for investigation if appropriate. (App. p. 4).

Here, Williams' on-line report was assigned to Detective Curtis for investigation. (App. p. 26). Barnes never communicated with Curtis about the scope, course or outcome of his investigation of Williams' complaints against his co-workers. (App. p. 4). Likewise, Barnes never communicated with non-City defendant Lackey or any of the co-workers Williams accused of

---

[1] City Defendants assume that Williams is alleging that the investigation was done in violation of his equal protection rights and not that he was unconstitutionally prevented from filing a report. Williams admits that he filed a police report and that it was assigned to Curtis. Plaintiff's Original Complaint, ¶ 20. See also App. p. 10.

harassment.[2] (App. p. 4). The only contact Barnes had with any Caliber Home Loan ("CHL") employee was with manager Tiffani Siskin on December 20 and 21, 2013 – conversations in which Barnes communicated her concerns to Siskin about Williams' phone call to Barnes on December 20, 2013. (App. p. 4). These conversations occurred approximately six weeks before Curtis began his investigation of Williams' harassment allegations. (App. p. 26). These conversations did not affect how Curtis investigated or finally classified Williams' allegations. (App. p. 26). In short, Barnes had no influence on Curtis' investigation. Without any connection to the allegedly unconstitutional investigation, Barnes' actions could not have been objectively unreasonable, and she is entitled to qualified immunity as a matter of law.

### 2. Eric Curtis

Curtis was the detective assigned to investigate Williams' complaint. (App. p. 26). His investigation of Williams' allegations and his determination that those allegations were without merit were objectively reasonable. First, Curtis reviewed the allegations Williams made to Barnes on December 20, 2013 and the allegations in Williams' January 23, 2014 police report. (App. p. 26). Although Williams' claims were hard to believe, Curtis tried to determine whether there was any validity to them. (App. p. 26). To that end, Curtis obtained information from the Frisco PD regarding the police visit to Williams' house that Frisco PD made at the request of Williams' employer on December 22, 2013. (App. p. 26-27). These police records flatly contradict the fantastic tale presented by Williams in his police report. (App. p. 27). Williams' untruthfulness regarding the Frisco PD visit called into question his veracity on the other allegations in his police report – especially since all of the allegations share the same "over-the-top" quality. (App. p. 27).

Nevertheless, Curtis continued his investigation by separately interviewing CHL personnel, Michelle Greenstreet and Craig Lackey. (App. p. 27). Both individuals stated that Williams

---

[2] Williams' on-line police report specifically identified the co-workers he accused of harassment. (App. pp. 22-25).

submitted a complaint to CHL on December 23, 2013, which CHL investigated. (App. p. 27). CHL's investigation included an outside forensic review of all the accused employees' electronic devices and interviews of Williams, the accused co-workers and any other employees who may have heard or seen any of the conduct alleged by Williams. (App. p. 27). After a three-week investigation, CHL found no evidence to support Williams' claims. (App. p. 27). Greenstreet reported that although Williams claimed to have evidence to support this allegations he repeatedly refused to turn anything over to CHL. (App. p. 27).

Finally, Curtis tried to obtain evidence directly from Williams to support his claims. (App. p. 27). However, Williams would not cooperate. First, Williams abruptly cancelled a meeting shortly before it was to occur. (App. p. 27). Then he failed to return Curtis' calls to reschedule the meeting. (App. p. 27). Eventually, Williams showed up unannounced at Irving PD and demanded that Curtis set a meeting to consider the evidence that Williams claimed to have to support his claims, including audio recordings of the harassment. (App. p. 27). In an effort to give Williams every opportunity to support his allegations, Curtis agreed to meet Williams the next day to review all of Williams' evidence. (App. p. 27). Williams did not show up to that meeting. (App. p. 27).

Based on Williams' untruthfulness, CHL's inability to substantiate Williams' allegations and Williams' failure to provide *anything* to support his allegations, Curtis closed his investigation and classified Williams' allegations as unfounded. (App. p. 27-28). Curtis did not take any actions with regard to Williams because of his race. Likewise, Curtis did not treat Williams differently than he would have any other similarly situated person of another race. Based on the facts and circumstances, Curtis' actions were objectively reasonable, and he is entitled to qualified immunity from Williams' federal claims as a matter of law.

    **3.    Bruce Jolley**

Jolley was a police captain at the time of Curtis' investigation of Williams. (App. p. 1).

Jolley was three levels of supervision over Curtis. (App. p. 1). His job did not include involvement in the day-to-day investigations of detectives like Curtis. (App. p. 1). True to that, Jolley did not communicate with Barnes, Lackey or anyone at CHL about Williams' allegations or the investigation of those allegations. (App. p. 1). Jolley may have had an in-passing conversation about the investigation with Curtis, but any such conversation did not involve Jolley substantively participating in the course or outcome of the investigation. (App. p. 1). Williams' only specific allegation against Jolley is that Jolley failed to act on Williams' e-mailed request for a new investigation. Plaintiff's Original Complaint, ¶ 33. Jolley does not remember receiving this e-mail, but such requests are not considered by Jolley's level of supervision, and Jolley would have forwarded the request to Curtis' immediate supervisor. (App. p. 1).

In short, Jolley played no role in the determining the course or final classification of Williams' allegations. (App. p. 2). Without any connection to the allegedly unconstitutional investigation, Jolley's actions could not have been objectively unreasonable and he is entitled to qualified immunity as a matter of law.

## IV.     42 U.S.C. §1985(2) Conspiracy Claim

§1985(2) has two parts. *Daigle v. Gulf State Util.'s Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986). The first part prohibits conspiracies that interfere with the administration of justice in federal court, while the second prohibits conspiracies that interfere with the administration of justice in state court. *Id.* (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). Claims under the second part require that the alleged conspirators intend to deprive their victims of the equal protection of the laws through discriminatory behavior. *Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010). Williams proceeds in this case under the second part of §1985(2). Plaintiff's Original Petition, ¶ 48.

### A. Williams cannot present a valid conspiracy claim

Williams' conspiracy to violate his equal protection rights claim suffers the same pleading deficiencies as his actual equal protection claim and should be dismissed. *See supra* Part III.A. Specifically, Williams fails to present any allegations of a conspiracy between any of the Defendants nor does he present anything to even suggest a conspiracy specifically intended to deny him the equal protection of the law. Finally, Williams' conspiracy claim fails because there is no state court proceeding in this case that might trigger the protections of 1985(2). Obviously, if Williams is alleging that Defendants conspired to impair the administration of justice in a state court due to Williams' race, there must be an actual court case in which justice was impaired.

### B. Williams' conspiracy claim fails in any event

Even if Williams could present a violation of 1985(2) including specific conspiratorial acts, a race-based animus to deprive Williams equal protection, and a state court case in which the administration of justice was actually affected, City Defendants are still entitled to qualified immunity because Williams' factual allegations are either demonstrably untrue or City Defendants' actions were objectively reasonable.[3]

#### 1. Stephanie Barnes

As stated in Part III.B.1 above, Barnes did not play any role in Curtis' investigation and final classification of Williams' police complaint. Specifically, she did not communicate with any of the other Defendants about the investigation at issue. (App. p. 4). In evaluating Barnes' entitlement to qualified immunity from Williams' conspiracy claim, her actions were necessarily objectively reasonable because she took *no* actions associated with Williams' equal protection claim.

---

[3] City Defendants assume again that Williams is alleging a conspiracy to deprive him of his equal protection rights during the investigation of his harassment complaint as alleged in Count 1 of his Complaint. Plaintiff's Original Complaint ¶¶ 39, 44-45.

### 2. Eric Curtis

As stated in Part III.B.2 above, Curtis did not communicate with Barnes or Jolley in any substantive fashion regarding his investigation or classification of Williams' investigation. Similarly, Curtis' only communications with Lackey during the course of the investigation was an investigatory interview. (App. p. 28). In evaluating Curtis' entitlement to qualified immunity from Williams' conspiracy claim, his actions were objectively reasonable since they were related to conducting an assigned investigation with no improper influence from any of the other Defendants. (App. p. 28).

### 3. Bruce Jolley

As stated in Part III.B.3 above and just like Barnes, Jolley did not play any role in Curtis' investigation and final classification of Williams' police complaint. Specifically, he did not communicate substantively with any of the other Defendants about the investigation at issue. (App. p. 1). In evaluating Jolley's entitlement to qualified immunity from Williams' conspiracy claim, his actions were necessarily objectively reasonable because he took no actions associated with Williams' equal protection claim.

## V. Conclusion

Williams fails to establish a violation of his Equal Protection rights or a conspiracy against him. Even his bare, conclusory allegations, which are obviously not evidence, fail to address the elements of either claim. Furthermore, even if he could establish unconstitutional discrimination or conspiracy claims, City Defendants are still entitled to summary judgment because Williams' allegations are demonstrably false and their actions were objectively reasonable given their respective levels of participation or non-participation in the investigation that is the basis for Williams' claims.

Respectfully submitted,

**CITY ATTORNEY'S OFFICE
CITY OF IRVING, TEXAS**

By: */s/ Jason McClain*
    **JASON McCLAIN**
    Senior Assistant City Attorney
    SBOT No. 00797032
    jmcclain@cityofirving.org
    825 West Irving Boulevard
    Irving, Texas 75060
    Telephone: 972.721.2541
    Facsimile: 972.721.2750

**ATTORNEY FOR CITY DEFENDANTS**

## CERTIFICATE OF SERVICE

On August 11, 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the parties of record or their attorneys who have consented in writing to accept this Notice as service of this document by electronic means:

    */s/ Jason McClain*
    **JASON McCLAIN**
    Senior Assistant City Attorney