## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMS, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No.  3:15-CV-1701-L-BH |
| | § | |
| CITY OF IRVING, TEXAS, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By the order of reference dated June 16, 2016 (doc. 11), this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.  Before the Court for recommendation is *Individually Named City Defendants' Partial Summary Judgment Motion*, filed August 11, 2016 (doc. 24).  Based upon the relevant filings, evidence, and applicable law, the motion should be **GRANTED**.

### I. BACKGROUND

On May 15, 2015, Michael Williams (Plaintiff) filed this civil rights action against the City of Irving, Texas, the Irving Police Department (IPD), and three IPD employees in their individual capacities (Individual Defendants).  (*See* doc. 3.)[1]  He sues Individual Defendants under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights to equal protection,  under 42 U.S.C. § 1985(2) for conspiring to violate his rights, and for various state law torts.  (*See id.*)

Plaintiff called the IPD on December 21, 2013, to report "terrorist threats" from co-workers at his place of employment, Caliber Home Loans (Caliber).  (*Id.* at 3.)[2]  He talked with police dispatcher Stephanie Barnes (Dispatcher), who allegedly "trick[ed]" him into providing personal and

---

[1]  Plaintiff also initially named Craig Lackey as a defendant in this suit but voluntarily dismissed him on September 9, 2016.  (*See* docs. 33, 35, 36.)

[2]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

professional information about himself and his family. (*Id*.) Dispatcher then contacted Caliber to alert its senior management of this conversation and allegedly "led the company into believing that [Plaintiff] was a danger to the safety of the general workforce at Caliber." (*Id*.) Plaintiff subsequently completed an IPD online police report[3] about the terroristic threats, and his case was assigned to Detective Eric Curtis (Detective). (*Id*.) Detective allegedly conducted a "sham investigation" because he accepted the "fabrications" from Caliber's general counsel about Plaintiff and disposed of the case as unfounded. (*Id*. at 4-5.) Plaintiff disagreed with the outcome and contacted Captain Bruce Jolley[4] (Captain) to seek reassignment of his case to a new detective, and Captain refused the request. (*Id*.) Plaintiff claims that these actions caused him to be "constructively fired" from his position at Caliber, which damaged his reputation and career. (*Id*. at 4.) He contends that Individual Defendants "decided and adjudicated the case based upon race" because he "was not allowed to freely and fully . . . enjoy the protections and use of the criminal justice process." (*Id*. at 6.) He seeks lost salary, employment benefits, litigation fees, and various other compensatory damages. (*Id*.)

Individual Defendants provide sworn affidavits disputing Plaintiff's allegations. (*See* docs. 24, 25, 26.) Dispatcher contends that Plaintiff was "rambling and inconsistent" when he called IPD and told an "increasingly bizarre story about his new co-workers' escalating hostility." (doc. 24 at 2-3.) She told him to file an online harassment report and provided him with the website address and other information. (*Id*. at 3.) She then contacted Caliber to "communicate her concerns about possible safety issues at [Plaintiff's] place of employment." (*Id*.)

---

[3] Plaintiff's complaint inconsistently claims that he made a police report and that he did not make a police report. (doc. 3 at 4, 6.) Individual Defendants provided a copy of the report. (doc. 26 at 15, 23-26.)

[4] Plaintiff identifies this defendant as Bruce "Jolly" (*See* doc. 1), but Individual Defendants' summary judgment motion identifies him as Bruce "Jolley" (*See* doc. 25).

Detective alleges that Plaintiff's case was assigned to him, and even though Plaintiff's online claims were "even more fantastic than [Plaintiff's] allegations" made to Dispatcher, he proceeded to investigate the case. (*Id.* at 4.)  He interviewed Caliber's director of human resources and general counsel, who explained that they conducted a three-week investigation of Plaintiff's claims but could find no evidence to support the allegations, and that Plaintiff repeatedly refused to submit any evidence of wrongdoing to them. (*Id.* at 5-6.)  They additionally explained that Plaintiff had not been fired and had returned to work at the end of the investigation. (*Id.* at 6.)  Detective attempted to interview him, but Plaintiff cancelled the meeting without explanation and failed to reschedule. (*Id.* at 6.)  After he closed the case for lack of evidence, Plaintiff "demanded an appointment with [Detective]" and stated that he had evidence to prove his allegations. (*Id.*)  Detective agreed to meet with him the next day to review the evidence, but Plaintiff failed to show up or reschedule the interview. (*Id.*)

On August 11, 2016, Individual Defendants moved for summary judgment on Plaintiff's § 1983 and § 1985(2) claims on grounds of qualified immunity. (doc. 24.)  Plaintiff failed to respond.[5]

## II. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if

---

[5]   On August 26, 2016, Plaintiff sought an extension of time to respond and for limited but unspecified discovery in order to respond to the qualified immunity issues because he recently obtained counsel. (doc. 28 at 1.) Because no counsel had yet entered an appearance, his motion was denied without prejudice to refiling by counsel after entering an appearance. (doc. 30.)  An attorney did enter this case on Plaintiff's behalf on September 14, 2016, but he never reasserted the motion for extension of time to serve discovery or file a response. (doc. 37.)

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the qualified immunity context, however, governmental employees asserting the defense in a summary judgment motion need only assert it in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

Here, Individual Defendants have carried their summary judgment burden by asserting the qualified immunity defense. *See Gates*, 537 F.3d at 419.

4

### III. QUALIFIED IMMUNITY

A governmental employee who is sued under § 1983 or § 1985 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) (for § 1983 litigation); *Little v. Texas Atty. Gen.*, No. 3:14-CV-3089-D, 2015 WL 1859457 at *2 (N.D. Tex. Apr. 23, 2015) (noting that "[qualified immunity] applies to claims brought under § 1985") (citing *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir. 2004) (en banc); *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 556 (5th Cir. 1997)). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of

the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Individual Defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that Individual Defendants violated his constitutional rights and that the violation was objectively unreasonable under clearly established law. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407–08 (5th Cir. 2007).

## IV. 42 U.S.C. § 1983

Plaintiff sues under § 1983, alleging that he was denied equal protection under the Fourteenth Amendment on the basis of his race. (doc. 3 at 5-6.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show: (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

## A.    Constitutional Violation

Individual Defendants argue that there is no credible evidence of a constitutional violation with respect to Plaintiff's equal protection claim under the Fourteenth Amendment. (doc. 25 at 3-9.)

6

The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws, which "'is essentially a direction that all persons similarly situated should be treated alike.'" *Club Retro*, 568 F.3d at 212 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); U.S. CONST. amend. XIV, § 1. In an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id.* (internal quotation marks omitted). No equal protection violation occurs where a plaintiff's allegations "fail[] to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213). Even "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action-even if irrational-does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir.1988)) (internal quotation marks omitted).

Here, Plaintiff has neither alleged nor presented any evidence that demonstrates that Individual Defendants treated similarly-situated individuals differently on the basis of race. He instead makes conclusory allegations that there is a "well practiced police custom . . . of racist police profiling" that was "intended to defeat, block, nullify, and/or make void the police report filed by Plaintiff." (doc. 3 at 3, 6.) This is insufficient to meet his burden to show that the qualified immunity defense does not apply or establish a genuine issue of material fact regarding whether Individual Defendants violated his equal protection rights. *See, e.g.*, *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) (finding that plaintiff did not state an equal protection claim where she failed to make a showing that defendant's actions distinguished between different groups); *Thomas v. Jackson*, No.

3:14-CV-4530-B, 2016 WL 749558 at *4 (N.D. Tex. Feb. 5, 2016), *adopted by,* 2016 WL 750657 (N.D. Tex. Feb. 24, 2016) (finding that defendants were entitled to summary judgment on the plaintiff's equal protection claims when he had made no allegations and presented no summary judgment evidence to support his claim of differential treatment). Accordingly, Individual Defendants are entitled to qualified immunity on Plaintiff's equal protection claims under §1983, and summary judgment is appropriate.

**B.      Objective Reasonableness**

Individual Defendants argue in the alternative that even if Plaintiff properly asserted a constitutional violation, he fails to allege or present evidence to show that their actions were objectively unreasonable. (doc. 25 at 4-7, 8-9.)

To show the inapplicability of the asserted qualified immunity defense, Plaintiff must also present evidence to show that the violation of his constitutional rights was objectively unreasonable given the clearly established law at the time of the alleged constitutional violation. *See Zarnow*, 500 F.3d at 407–08. For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Being clearly established in an abstract sense generally gives insufficient notice; in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004); *Kinney*, 367 F.3d at 350; *see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between

8

the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

### 1.   *Dispatcher*

Individual Defendants provide a sworn affidavit from Dispatcher that details how she was the police dispatcher who took the initial call from Plaintiff and directed him to file an online harassment complaint, which is the "standard process for such harassment complaints." (doc. 26 at 6.)  It also explains that she contacted Caliber "due to [her] concerns about [his] behavior and the totality of the circumstances including the content of his communications to [her] and the inconsistencies of his story." (*Id.*) Individual Defendants also include her incident report detailing the telephone interaction between Dispatcher and Plaintiff. (*Id.* at 9-11.)

Plaintiff alleges in his complaint that IPD sustained his complaint against Dispatcher for "not operating in accordance with Irving PD policies," but he has not put forth any summary judgment evidence to support this claim or anything to rebut any of the other evidence submitted. *See Turner*, 476 F.3d at 343 ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

### 2.   *Detective*

Individual Defendants similarly provide a sworn affidavit from Detective that explains how he was assigned Plaintiff's case and subsequently investigated it. (*Id.* at 28-30.) It states that he first reviewed Dispatcher's reports on her conversations with Plaintiff but it "did not affect how [he] investigated or finally classified [Plaintiff's] allegations." (*Id.* at 28.)  He then met with Caliber who had "initiated a thorough investigation of [Plaintiff's] complaint" over the course of three weeks but

could not find any evidence to support Plaintiff's claims, and, moreover, Plaintiff refused to turn over any evidence relating to his allegations.  (*Id.* at 29.)  Detective also attempted to interview him but Plaintiff refused to cooperate and "cancelled the interview without explanation." (*Id.*)  He closed the investigation on Plaintiff's claims with "no finding of wrongdoing" because of the lack of evidence supporting the claims.  (*Id.*)  Plaintiff then "appeared unannounced at the Irving Police Department" one month later and "demanded a meeting with [Detective]" saying that he had evidence to prove his claims.  (*Id.*)  Detective agreed to meet with him the following day, but Plaintiff again did not show up to this meeting or provide any evidence of his claims.  (*Id.*)  Individual Defendants also include the incident report and Detective's supplement report that details his investigation and the final disposition of the harassment claims.  (*Id.* at 32-36, 38-39, 41-44.)  Plaintiff has not put forth any summary judgment evidence to rebut or controvert this evidence.

### 3. *Captain*

Individual Defendants also provide a sworn affidavit from Captain that explains how he is "three levels of supervision" over Detective and does not manage him.  (*Id.* at 3.)  It also explains that he is not aware of any e-mail from Plaintiff asking for his case to be assigned to a different detective and, moreover, "such a request is not considered by [Captain's] level of supervision." (*Id.*)  Plaintiff has again not put forth any summary judgment evidence to rebut or controvert this evidence.

Overall, Plaintiff has not shown that an officer standing in Individual Defendants' shoes could have believed that his or her actions violated clearly established law against Plaintiff of which a reasonable officer would have known. *See Borninski v. Williamson*, No. 3:02-CV-1014-L, 2005 WL 7984287 at *12 (N.D. Tex. May 17, 2005) (citing *Malley*, 475 U.S. at 341).  It appears that a reasonably competent officer could have believed that, in light of existing law and the information

known to Individual Defendants, the actions taken by them regarding Plaintiff's police report and subsequent investigations were not objectively unreasonable. *See id.* (noting that a plaintiff has to establish that "no reasonably competent police officer could have believed that the actions taken by [the defendants] were reasonable" to overcome a qualified immunity defense). Accordingly, Individual Defendants are entitled to qualified immunity, and summary judgment is appropriate.

### V. 42 U.S.C. § 1985(2)

Individual Defendants argue that Plaintiff cannot establish a conspiracy to violate his civil rights under 42 U.S.C. § 1985(2). (doc. 25 at 3.)

Section 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section" and permits a person injured by a conspiracy to deprive him of equal protection of the laws to recover damages. *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). The first clause of § 1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors."[6] *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n.6 (5th Cir. 2010). This clause has been read as protecting any party, witness, or juror from intimidation regardless of any

---

[6]Section 1985(2) contains two clauses:

> Obstructing justice; intimidating party, witness, or juror – If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

racial animus on the part of the defendant. *Montoya*, 614 F.3d at 149 (citing *Kush v. Rutledge*, 460 U.S. 719, 723–27 (1983)).   The second clause "prohibits conspiracies to deny any citizen equal protection of the laws or injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant*, 597 F.3d at 687.   Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second clause of § 1985(2).   *See Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (citing *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1981) (en banc)).   Claims under the second clause require that the alleged conspirators intend to deprive their victims of the equal protection of the laws through discriminatory behavior.   *See Bryant*, 597 F.3d at 687.

Here, Plaintiff claims that Individual Defendants violated § 1985(2) through a "conspiracy to interfere with [his] civil rights."   (doc. 3 at 7.)   He brings this claim specifically under the second clause of the statute and bases it on conclusory allegations of racial discrimination, but he does not submit any evidence to show that the alleged conspiracy was motivated by race or class-based animus. (*Id.*)   He has not objected to or introduced anything to rebut or contradict the sworn affidavits and evidence submitted by Individual Defendants.   *See Thomas*, 2016 WL 749558 at *5 (granting summary judgment because the plaintiff "introduced nothing to rebut or contradict the evidence submitted by [defendant], nor [did he submit] evidence that shows that [defendant] discriminated against him"); *see also Payne v. Universal Recovery, Inc.*, No. 3:11-CV-1672-D, 2011 WL 7415414 at *8 (N.D. Tex. Dec. 7, 2011), *adopted by* 2012 WL 593483 (N.D. Tex. Feb. 17, 2012) (dismissing § 1985(2) claim for failure to show that the alleged conspiracy was motivated by race or class-based animus).   Plaintiff has not met his burden to overcome the entitlement of Individual Defendants to

12

qualified immunity with evidence that they conspired to violate  his clearly established rights. Accordingly, they are entitled to qualified immunity on Plaintiff's conspiracy claims under § 1985(2), and summary judgment is appropriate.

## VI.  RECOMMENDATION

Individual Defendants' motion for summary judgment should be **GRANTED**.  Plaintiff's claims under § 1983 and § 1985(2) against them should be **DISMISSED with prejudice** on grounds of qualified immunity.  All state law claims against them remain pending.

**SO RECOMMENDED** on this 13th day of January, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13