## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAMS, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No.  3:15-CV-1701-L-BH |
| | § | |
| CITY OF IRVING, TEXAS, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By the order of reference dated June 16, 2016 (doc. 11), this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.  Before the Court for recommendation is *Defendants' 12(b)(6) Motion to Dismiss*, filed February 10, 2017 (doc. 41).  Based upon the relevant filings and applicable law, the motion should be **GRANTED**, unless the plaintiff timely files an amended complaint.

### I. BACKGROUND

On May 15, 2015, Michael Williams (Plaintiff) filed this *pro se*[1] suit against several defendants, alleging constitutional and civil rights claims under §§ 1983 and 1985(2) as well as state law tort claims.  (doc. 3.)  After the stipulated dismissal of one defendant and partial summary judgment for other defendants,[2] remaining are Plaintiff's claims against the City of Irving, Texas (the City) and the Irving Police Department (IPD) under 42 U.S.C. §§ 1983 and 1985(2) for violations of his Fourteenth Amendment equal protection rights and for engaging in a conspiracy to interfere with

---

[1] Plaintiff initially filed this case *pro se*. (*See* doc. 3.)  On September 14, 2016, an attorney entered an appearance on his behalf (doc. 37) before the defendants filed this motion to dismiss on February 10, 2017 (doc. 41).  Plaintiff's attorney moved to withdraw on February 28, 2017, and the motion was granted on March 1, 2017.  (docs. 47, 48.)

[2] On September 9, 2016, an agreed judgment was entered on September 9, 2016, dismissing all claims with prejudice against Craig Lackey.  (doc. 36.)  On February 7, 2017, Plaintiff's §§ 1983 and 1985(2) claims against the remaining individual defendants were dismissed with prejudice on grounds of qualified immunity.  (doc. 40.)

his civil rights.  (docs. 3 at 5-7; 36 at 1; 40 at 1-2.)[3]  Also remaining are various state law tort claims under the Texas Tort Claims Act against police dispatcher Stephanie Barnes (Dispatcher), Detective Eric Curtis (Detective), and Captain Bruce Jolly (Captain)[4] of the IPD.[5]  (doc. 3 at 7-11.)

Plaintiff contends that on December 21, 2013, he called the IPD to report "terroristic threats made towards him and his family by a group of White coworkers" at his place of employment, Caliber Home Loans (Caliber).  (*Id.* at 3.)  He talked with Dispatcher, who allegedly "trick[ed]" him into providing personal and professional information about himself and his family, including his name, the names of the people he was accusing, and their place of employment.  (*Id.*)  Dispatcher then contacted Caliber to alert its senior management and security of this conversation and shared with them the information provided by Plaintiff.  (*Id.*)  Plaintiff alleges that Dispatcher made statements to Caliber that included describing him as "being insane, delusional, violent and inclined to commit an act of terrorism on the general staff at Caliber."  (*Id.*)  This allegedly led the company to believe he was a danger to the safety of its employees.  (*Id.*)  Caliber then "constructively fired" him by deactivating his access badge and remote access, blocking him from entering the building, and informing his chain of command at Caliber about his comments.  (*Id.* at 4.)

Plaintiff subsequently completed an online IPD police report[6] about the terroristic threats, and the case was assigned to Detective.  (*Id.*)  Detective spoke with Dispatcher, read her report, and

---

[3] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

[4] Plaintiff identifies Captain's last name as "Jolly" in his complaint, but Defendants' motion to dismiss notes that the proper spelling of his last name is "Jolley."  (docs. 3 at 2; 41 at 1 & n.1.)

[5] Plaintiff appears to bring his claims against Defendants in both their official and individual capacities.  (*See* doc. 3 at 1.)

[6] Plaintiff's complaint claims both that he made a police report and that he did not make a police report.  (doc. 3 at 4, 6.)

listened to the tapes of her conversations with both Plaintiff and Caliber's management. (*Id.*) He also spoke to personnel at Caliber, including its executive vice president of human resources and in-house counsel. (*Id.* at 2, 4.) Plaintiff alleges that Detective conducted a "sham investigation" because he accepted a "false story"[7] and "fabricat[ed]" evidence from Caliber, never made any attempt to corroborate material statements during his investigation, and closed the case. (*Id.* at 4-5.) Plaintiff met with Detective in person on March 5, 2014, apparently after the case had been closed without Detective having spoken with him or any of the "alleged assailants" identified in the police report. (*Id.* at 5.)

After meeting with Detective, Plaintiff emailed Captain requesting review and/or reassignment of his case to a new detective and a new investigation. (*Id.*) Captain refused to re-investigate the case in any way. (*Id.*) On April 4, 2014, Plaintiff initiated an internal affairs investigation. (*Id.*) On May 27, 2014, an internal affairs investigation concluded that Plaintiff's allegations against Dispatcher were "sustained and that she was not operating in accordance with [IPD] policies and procedures." (*Id.*) (emphasis omitted). On June 16, 2014, Plaintiff received a second letter from internal affairs concluding that "the investigation against [Detective] was unfounded." (*Id.*) (emphasis omitted).

On February 10, 2017, the City, IPD, Dispatcher, Detective, and Captain (Defendants) filed a motion to dismiss, seeking an order requiring Plaintiff to re-plead his §§ 1983 and 1985(2) claims and dismissing his state law tort claims with prejudice. (doc. 41.) Plaintiff failed to respond, and the motion is now ripe for recommendation.[8]

---

[7] According to Plaintiff, Detective accepted a "false story" from Caliber that he made the police report only after he sent "numerous" emails complaining about his pay and not receiving an end-of-year bonus. (doc. 3 at 4.)

[8] After Plaintiff's attorney was permitted to withdraw on March 1, 2017 (doc. 48), Plaintiff moved for a 30-day extension of time to respond to Defendants' motion to dismiss on March 3, 2017. (doc. 50.) His motion was granted in part, and he was given until March 24, 2017, to respond. (doc. 52.) Despite the extension, Plaintiff failed to respond.

3

### III. MOTION TO DISMISS

Defendants move to dismiss Plaintiff's claims for failure to comply with Rules 8(a)(2) and Rule 12(b)(6). (doc. 41 at 6-7.)

Under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).[9] Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must

---

[9] "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Defendants have not submitted any documents outside the pleading with their motion to dismiss. (doc. 41.)

"raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint

fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a

claim to relief that is plausible on its face." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a "probability requirement," but it asks
> for more than a sheer possibility that a defendant has acted unlawfully. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570;

*accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim

for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense").

## IV. FEDERAL CLAIMS

Defendants move to dismiss Plaintiff's §§ 1983 and 1985(2) claims. (doc. 41 at 3-5.)

**A.    The IPD**[10]

Defendants move to dismiss Plaintiff's claims against the IPD because it does not have the

requisite jural existence to be sued. (doc. 41 at 5.)

A plaintiff may not bring a civil rights action against a servient political agency or department

unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena

Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "our cases

uniformly show that unless the true political entity has taken explicit steps to grant the servient agency

---

[10] Although Defendants consider Plaintiff's claims against the City before the IPD in its motion to dismiss, the
status of the IPD is considered first because Plaintiff brings the same claims against both the IPD and the City.

with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313 (citations omitted).  "[A] police department is not a jural entity that can be sued," however.  *Brodzki v. North Richland Hills Police Dep't*,  No. 3:10-CV-0539-P-BH, 2010 WL 1685799, at *1 (N.D. Tex. Mar. 31, 2010) (citing *Darby*, 939 F.2d at 313-14), *adopted by* 2010 WL 1685798 (N.D. Tex. Apr. 9, 2010), *aff'd*, 413 F. App'x 697 (5th Cir. 2011) (per curiam).

Here, in addition to suing the City, Plaintiff also separately sues the IPD under §§ 1983 and 1985(2).  (doc. 3.)  Because the IPD is a non-jural entity, Plaintiff's claims against it should be dismissed for failure to state a claim upon which relief may be granted.

**B.**     **The City**

Defendants also move to dismiss Plaintiff's §§ 1983 and 1985(2) claims against the City for failure to meet the necessary pleading requirements.

*1.     Section 1983*

Defendants move to dismiss Plaintiff's § 1983 claim because he fails to sufficiently plead the policy and policy-maker elements of a claim for municipal liability.  (doc. 41 at 3.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted); *accord Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").  Under § 1983, a municipality or local government entity, such as an independent school district, may be held liable when a plaintiff shows three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with

actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

### a.    Official Policy or Custom

To show municipal liability, a plaintiff must also show an official policy or custom. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2001). "Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda*, 291 F.3d at 328. Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

7

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. *Spiller*, 130 F.3d at 167. It also found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. *Id.*

Here, Plaintiff only vaguely alludes to a discriminatory policy of racial bias by the City in violation of the Fourteenth Amendment. (*See* doc. 3 at 5-6.) To the extent that he references a custom at all, Plaintiff only alleges that the defendants "act[ed] to a well practiced police custom" when they both "did not provide [him] . . the opportunity to create a police report" and then "intended to defeat, block, nullify and/or make void the police report [he did] file[]." (*Id.* at 6.) He does not specify who allegedly acted in this manner, however.[11] (*See id.*) Nor does his complaint identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the City's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.

---

[11] Plaintiff only generally states that "Defendants" engaged in this conduct. (*See* doc. 3 at 6.)

(*See* doc 3.)  At most, Plaintiff generally alleges that some of the defendants acted *in compliance with* the municipality's customs, practices, or procedures, which was allegedly discriminatory.  (*See* doc. 3.)  As noted, however, the Fifth Circuit in *Spiller* found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" was insufficient to plead municipal liability.  *Spiller*, 130 F.3d at 167.

Plaintiff in effect relies on a single incident and vague generalities to allege an official policy or custom under § 1983.  A single incident is insufficient to infer an official policy or custom, however.  *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009) ("One incident of applying inapplicable statutes to the [plaintiffs] is, however, insufficient to demonstrate a custom. Again, [the plaintiffs] must show a 'persistent and widespread practice.'"); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012).

Because Plaintiff essentially relies on a single incident, vague generalities, and conclusions, he has not sufficiently alleged an official policy or custom, a necessary element to municipal liability.

### b.    Policymaker

The Fifth Circuit clarified in *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), that to state a claim upon which relief can be granted, "a plaintiff is *not* required to single out the specific policymaker in his complaint." *Id.* at 282 (emphasis added).  To sufficiently state a claim upon which relief can be granted to survive a motion to dismiss,

> [a plaintiff need] only to plead facts—facts which establish that [a] challenged policy was *promulgated or ratified by the city's policymaker*. [The plaintiff's] complaint did

not need to supply an answer to the legal question of the specific identity of the city's
policymaker under the relevant statutory scheme.

*Id.* at 285 (emphasis added).[12]  The case involved a claim against the City of Dallas for a "crackdown

policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected speech"

in Dealey Plaza.  *Id.* at 286.  Because the plaintiff alleged that the city's official spokesman publically

announced the new policy of cracking down on vendors in Dealey Plaza and gave media interviews

describing the new policy, the Fifth Circuit found that the plaintiff had sufficiently pleaded

promulgation or ratification by a policymaker even though he had not specifically identified one.  *See*

*id.* at 286; *see also Mohamed for A.M. v. Irving Indep. Sch. Dist.*, ___ F. Supp. 3d ___, 2017 WL

2189414, at *7 (N.D. Tex. May 18, 2017) (discussing the pleading requirement of a policymaker in

light *Groden*).

        Here, Plaintiff references the conduct of Dispatcher, Detective, and Captain, but he does not

identify a policymaker or any actions taken by a policymaker.  (*See* doc. 3.)  He instead appears to rely

only on the conduct of Dispatcher, Detective, and Captain to establish municipal liability against the

City.  (*See id.* at 5-6.)  As noted, however, municipal liability cannot be established in that manner.

*See Groden*, 826 F.3d at 283 ("Municipalities are not liable for the unconstitutional actions of their

employees under respondeat superior.") (citing *Monell*, 346 U.S. at 694).  Even accepting Plaintiff's

well-pleaded facts as true and viewing them in the light most favorable to him, he fails to identify any

policymaker or point to any actions by the City to ratify or promulgate any policy.  (*See id.* at 1-13.)

Plaintiff's mere conclusory statements are devoid of any facts that establish any involvement by the

_____

        [12] The identity of the policymaker official is a question of state law and not of fact.  *City of St. Louis v. Praprotnik*,
485 U.S. 112, 124 (1988).  "Sometimes, a court can make this determination by consulting state statutes. . . . [or] courts
may need to consult 'local ordinances and regulations.'"  *Groden*, 826 F.3d at 284 n.5 (citing *Bolton v. City of Dallas*, 541
F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas
cities);  *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)  (consulting the Texas Educational Code to
determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125).

City or its policymakers.  (*See id*.)

Because Plaintiff has alleged no facts that any policymaker promulgated or ratified an unconstitutional policy or from which a reasonable inference can be made that it promulgated or ratified an unconstitutional policy, he fails to allege sufficient facts to "raise [his] right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.  He therefore fails to nudge his § 1983 claim against the City across the line from conceivable to plausible.[13]  *See id.*

### 2.    Section 1985

Defendants next move to dismiss Plaintiff's § 1985(2) claim because he has not alleged a conspiracy, or that any conspiracy was motivated by race or class-based animus.  (doc. 41 at 4-5.)

Section 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section" and permits a person injured by a conspiracy to deprive him of equal protection of the laws to recover damages. *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010).  Subsection 2 contains two parts.  42 U.S.C. § 1985(2).[14]  The first clause of § 1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying,

---

[13] Because Plaintiff has failed to allege the first two elements of municipal liability, it is unnecessary to reach the third element.

[14] In its entirety, § 1985(2) regarding "[o]bstructing justice; intimidating party, witness, or juror" states:

Ifs two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

42 U.S.C. § 1985(2).

11

punish witnesses who have so attended or testified, or injure jurors." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n.6 (5th Cir. 2010). This clause has been read as protecting any party, witness, or juror from intimidation regardless of any racial animus on the part of the defendant. *Montoya*, 614 F.3d at 149 (citing *Kush v. Rutledge*, 460 U.S. 719, 723-27 (1983)).

The second clause "prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant*, 597 F.3d at 687. Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second clause of § 1985(2). *See Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (citing *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1981) (en banc), *cert. denied*, 454 U.S. 1110 (1981)). Claims under the second clause require that the alleged conspirators intend to deprive their victims of the equal protection of the laws through discriminatory behavior. *See Bryant*, 597 F.3d at 687.

Here, Plaintiff brings a § 1985(2) claim against the City. (doc. 3 at 7.) He merely alleges that "Defendants, collectively, have violated provisions of 42 U.S.C. [§] 1985(2)," however. (*Id.*) As noted, regardless of whether a plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal, *Guidry*, 954 F.2d at 281, and a plaintiff must provide "more than labels and conclusions," *Twombly*, 550 U.S. at 555. Accordingly, he fails to state a claim upon which relief can be granted.

### V. STATE LAW CLAIMS

Defendants also move to dismiss both Plaintiff's official and individual capacity state law tort claims against Dispatcher, Detective, and Captain under the Texas Tort Claims Act. (doc. 41 at 5-6.)

12

A.      **Supplemental Jurisdiction**

Under § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims.  *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135 (5th Cir. 2008) (per curiam); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[15]  Nonetheless, this rule is "neither mandatory nor absolute."  *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted).  Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances.  *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726

---

[15] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. They arise from the same "common nucleus of operative facts" as his federal claims and can be disposed of promptly. No litigants will be prejudiced by exercising supplemental jurisdiction over Plaintiff's state law claims.

## B.   **Texas Tort Claims Act**

The Texas Tort Claims Act (TTCA) "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'"[16]  *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (citing *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). Plaintiff brings state law tort claims under the TTCA against the individual defendants in both their individual and official capacities. (*See* doc. 3 at 1.)

### 1.   *Individual Capacity*

Defendants first move to dismiss Plaintiff's individual capacity state law tort claims against Dispatcher, Detective, and Captain, citing his election of remedies under Tex. Civ. Prac. & Rem. Code §101.106(e). (doc. 41 at 6.)

---

[16] Under Texas law, "[a] municipality engaged in a function defined by the Legislature to be governmental is entitled to governmental immunity provided that the Texas Legislature has not otherwise authorized a waiver of this immunity." *Carnaby v. City of Houston*, No. 4:08-cv-1366, 2009 WL 7806964, at *16 (S.D. Tex. Oct. 28, 2009) (quoting *McDonald v. City of the Colony*, No. 2-08-263-CV, 2009 WL 1815648, at *4 (Tex. App.—Fort Worth 2009, no pet.) (mem. op.)).

Under the election-of-remedies provisions of the TTCA, a plaintiff who sues under the TTCA must elect between suing a governmental unit and suing an employee of that unit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106; *Bustos v. Martini Club, Inc*., 599 F.3d 458, 462 (5th Cir. 2010). If he sues the governmental unit, the suit "constitutes an irrevocable election" by him and "bars any suit or recovery by [him] against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). The TTCA specifically provides that:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees *shall immediately be dismissed* on the filing of a motion by the governmental unit.

*Id.* at § 101.106(e) (emphasis added). "Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." *Jackson v. Dallas Indep. Sch. Dist*., No. 3:98-CV-1079-D, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) (internal quotation marks and citation omitted), *aff'd*, 232 F.3d 210 (5th Cir. 2000) (unpublished table decision) (per curiam); *accord Dorward*, 2009 WL 2777880, at *14 (citing *Jackson*, 1999 WL 58846, at *5). The election-of-remedies provisions in § 101.106 cover all state tort claims, whether intentional or negligent, and whether brought under common law or the TTCA. *Bustos*, 599 F.3d at 463-64.

Here, Plaintiff alleges claims under the TTCA and state common law against both the City and three of its employees regarding the same subject matter. (doc. 3.) By suing the City, he has made an irrevocable election of remedies and is barred from suing Dispatcher, Detective, and Captain regarding the same subject matter. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.106(a). The City has now moved to dismiss the state law tort claims against the individual defendants, so these claims must

15

be dismissed.  *See id.* at § 101.106(e).

### 2.  *Official Capacity*

Defendants also move to dismiss Plaintiff's state law official capacity claims against the individual defendants because the TTCA does not allow intentional tort claims against the City.  (doc. 41 at 6.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.  *See Hafer v. Melo*, 502 U.S. 21, 26-27 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  A suit against Dispatcher, Detective, and Captain in their official capacities is therefore a suit against their employer, i.e., the City.  *Kentucky*, 473 U.S. at 165.

As noted, the TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'"[17]  *Dorward*, 2009 WL 2777880, at *13 (citing *Miller*, 51 S.W.3d at 587).  "The TTCA's waiver of immunity constitutes the 'only ... avenue for common-law recovery against the government' on a tort theory."  *Id.* (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)).  Furthermore, the TTCA's limited waiver of sovereign immunity expressly does not apply to claims "arising out of assault, battery, false imprisonment, or *any other intentional tort*."  Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (emphasis added)

Under Texas law, intentional infliction of emotional distress, invasion of privacy, defamation

---

[17] Under Texas law, "[a] municipality engaged in a function defined by the Legislature to be governmental is entitled to governmental immunity provided that the Texas Legislature has not otherwise authorized a waiver of this immunity."  *Carnaby v. City of Houston*, No. 4:08-cv-1366, 2009 WL 7806964, at *16 (S.D. Tex. Oct. 28, 2009) (quoting *McDonald v. City of the Colony*, No. 2-08-263-CV, 2009 WL 1815648, at *4 (Tex. App.—Fort Worth 2009, no pet.) (mem. op.)).

of character (slander and libel), and abuse of process are all intentional torts.[18]  The TTCA's limited

waiver of sovereign immunity does not apply to intentional torts, however.  *Swiat v. City of Fort*

*Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011) (considering the

scope of § 101.057(2)).  Accordingly, the  City is immune to Plaintiff's official capacity state law

claims under the TTCA, and the Defendants' motion to dismiss on this ground should be granted.

## VI.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro*

*se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No.

3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow

*pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.

*See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870,

at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain

leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis*

*Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*,

2008 WL 398314, at *1.  Nonetheless, a court may appropriately dismiss an action with prejudice

without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.

*Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended his complaint, and Defendants concede that Plaintiff should

---

[18] *See Jackson v. Sheriff of Ellis Cty.*, 154 F. Supp. 2d 917, 921 (N.D. Tex. 2001) (intentional infliction of emotional distress); *Jimenez v. Conley Magazine, LLC*, No. SA-06-CA-1013-XR, 2006 WL 3716649, at *2 (W.D. Tex. Dec. 14, 2006) (invasion of privacy); *Powell v. Greenville Indep. Sch. Dist.*, No. 3:10-CV-545-L, 2010 WL 4038844, at *2 (N.D. Tex. Sep. 25, 2010) (libel and slander), *adopted by* 2010 WL 4038846 (N.D. Tex. Oct. 13, 2010); *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *14 (N.D. Tex. Aug. 28, 2009) (abuse of process).

be given an opportunity to amend his §§ 1983 and 1985 claims against the City. (*See* doc. 41 ast 6.) It does not appear that Plaintiff has alleged his best case. He should therefore be accorded an opportunity to amend his complaint to sufficiently state a claim upon which relief can be granted.

## VII. RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days allotted for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED**, and all of Plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim. If Plaintiff timely files an amended complaint, however, the motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 14th day of July, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE