# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL WILLIAMS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:15-cv-01701-L-BH** |
| | § | **ECF** |
| **CITY OF IRVING, TEXAS, et al.** | § | |
| **Defendants.** | § | |

## CITY OF IRVING'S RESPONSE TO
## <u>PLAINTIFF'S MOTION TO STAY</u>

In compliance with the Court's Order dated October 24, 2017, the City of Irving ("City") files this response to Michael Williams' Motion to Stay and Motion to Modify Scheduling Order. The City is opposed to Williams' motion.[1]

**Background facts:**

This case is predicated on Williams' allegations that the City violated his federal and state law rights in its handling of Williams' 911 call and the subsequent criminal investigation of his reported concerns. Williams first attempted to litigate these issues in 2014 by filing suit against police employees Eric Curtis and Stephanie Barnes in small claims court in Collin County. *See* Exhibit 2. Williams non-suited his claims during the hearing on the City's Motion to Transfer Venue in July 2014. *See* Exhibit 3. Williams then sued the City in State District Court in December 2014. *See* Exhibit 4. In response to the City's Plea to the Jurisdiction, the Court gave Williams an opportunity to properly re-plead his claims. *See* Exhibit 5. Williams then filed an Amended Petition and added the Irving Police Department ("IPD"), Barnes and Curtis to the

---

[1] Williams asserts in his Certificate of Conference that the undersigned was unavailable to confer on his motion. That is not accurate. The undersigned informed Williams via email that the City was opposed to his motion. *See* Exhibit 1.

lawsuit. *See* Exhibit 6. The court then granted the City's Second Plea to the Jurisdiction and dismissed Williams' claims in November 2015. *See* Exhibit 7.

In the meantime, Williams had filed this case in May 2015 against the City, Barnes, Curtis, IPD, police captain Bruce Jolley and an individual not affiliated with the City. *See* docket entry 3. Williams took no action to prosecute his case. Instead, in June 2016, this Court directed that the appropriate summonses be delivered to the Defendants in order to initiate the suit. *See* docket entry 7. Since then, the City has diligently proceeded in this matter such that only claims against the City itself remain after Williams filed his Amended Complaint in July 2017. *See* docket entry 55.

Williams, however, initiated another lawsuit in State District Court against the City, Curtis and a host of others not associated with the City involving, among other things, the exact circumstances Williams complains of in this lawsuit. *See* Exhibit 8. Neither the City nor Curtis have been served with this lawsuit, which was removed to Federal District Court by the City of Frisco. *See* Exhibit 9.[2]

In this case, the Court's February 22, 2017 Scheduling Order established deadlines for the prosecution of this case. Williams now seeks to either revive expired deadlines or to extend pending deadlines. The City is opposed to Williams' motion because he has not met his burden of establishing the requisite good cause.

**Argument and authorities:**

Deadlines established via a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Generally, the good cause standard "require[s] the

---

[2] As this Court is probably aware, Williams also sued his former employer and other employees for employment discrimination and included the same factual allegations against the City, Curtis and Barnes that are present in this case. *See Williams v. Caliber Home Loans, et al.*, 3:15-CV-02346-N-BH. However, neither the City nor any City employee were named in that suit. After the *Caliber* case was dismissed with prejudice, Williams refiled it in State District Court. *See Williams v. Caliber Home Loans, DC-1703199.* That case was likewise dismissed via summary judgment.

movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 Fed. Appx. 483, 487-88 (5th Cir. 2013) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). "In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Choice Hotels Int'l, Inc. v. Goldmark Hospitality, LLC*, No.3:12-CV-0548-D, 2014 WL 80722, at *2 (N.D. Tex. Jan. 9, 2014) (quotation omitted) (citing *S & W Enters.*, 315 F.3d at 536). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *Id.* (citing *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct.13, 2009) (Fitzwater, C.J.), *aff'd,* 679 F.3d 323 (5th Cir. 2012)).

None of the four "good cause" factors favor Williams. First, Williams does not explain specifically why he needs the requested extensions. Instead, he complains of his former attorney. This case was filed in May 2015, over two and a half years ago. Williams' former attorney appeared in September 2016 and moved to withdraw in February 2017. Williams does not explain how this five-month window of representation that closed over eight months ago requires an extension of deadlines now in October 2017.

Williams mentions a Scheduling Order that "accommodated the City" but not him. *See* Motion to Stay, p. 3. However, the Scheduling Order Williams complains of was entered in February 2017 and superseded an earlier Scheduling Order filed in August 2016. This earlier Scheduling Order was based on, in part, the Scheduling Proposal Williams submitted in August 2016. *See* docket entry 21. This subsequent Scheduling Order that was entered while Williams was represented significantly extended all of the earlier-established discovery and pretrial deadline dates. Williams does not explain how this new Scheduling Order, which extended all of the

deadlines that Williams had previously proposed, prejudiced him such that he now needs even more extensions to those very same deadlines. Moreover, even if Williams was not aware of the new Scheduling Order, he should have been striving to comply with the deadlines he certainly was aware of -- the dates in the earlier Scheduling Order.

Similarly, Williams mentions settlement discussions that he did not participate in. *See* Motion to Stay, p. 3. These discussions were mandated by the Court's Order on Scheduling Proposals and never progressed beyond the City offering nominal settlement numbers. Williams does not explain why a missed settlement discussion in February 2017 necessitates an extension of the expired or pending deadlines in this case now. Likewise, Williams does not offer any reason why he has not engaged in settlement discussions in the eight months since his attorney moved to withdraw from this case.

Finally, Williams offers a conclusory assertion that his attorney's alleged malpractice has resulted in him "not having the opportunity to conduct discovery." *See* Motion to Stay, p. 4. Again, Williams had conducted zero discovery since his attorney moved to withdraw over eight months ago and makes no attempt to justify this inactivity. Interestingly, in Williams' August 2016 Scheduling Proposal, Williams asserts that discovery could be complete in seven months "in light of the fact that this case has already been going on for two years, has went [sic] through two courts already, and much of the discovery Plaintiff needs to convince a trier of fact of the merits of his case." *See* docket entry 21, p. 3.

With regard to the second good cause factor, Williams offers nothing to explain what exactly he wants, much less the importance of his requested relief. Williams seeks to postpone the deadlines to add parties, amend his Complaint, designate experts and conduct discovery among other things. However, without knowing exactly what Williams wants and why, the Court necessarily cannot evaluate the importance of the requested relief. And while Williams admits that

he already has "much of the discovery [he] needs to convince a trier of fact of the merits of his case" he fails to explain what else he needs and why it could not have been obtained within the existing deadlines.

Considering the third good cause factor, the City will be prejudiced if the Court grants Williams' motion. The City and numerous city employees have been dealing with Williams' claims since mid-2014. *See* Exhibit 1. Williams claims against the City and its employees have wound through small claims court, been dismissed in State District Court and are pending in this case and yet another case in federal court. Williams has thwarted "the just, speedy and inexpensive determination of every action" envisioned by Federal Rule of Civil Procedure 1. The City wants to file its motion for summary judgment and obtain a ruling on the merits such that the preclusive effects of *res judicata*, among other things, prohibits Williams from once again re-litigating these matters in the case involving the City of Frisco. Any significant delay requested by Williams necessarily delays the City's opportunity to have this matter resolved in this and other courts.

The final good cause factor considers the availability of a continuance to mitigate any of the prejudice contemplated in step 3. In this case, it is the continuance and associated delays and expenses that prejudice the City. Ironically, in his August 2016 Scheduling Proposal, Williams scoffed at the idea of this case not being resolved by April 2017:

> The dates they . . . submitted for the end of discovery a year [from now] and 10 months [from now] are simply a means of filibustering, frustrating and unnecessarily delaying the judicial process. In light of the amount of time we have already been in court, we should be able to complete discovery and go to trial . . . within the next 6-8 months from today.

*See* docket entry 21, p. 3.

**Conclusion:**

The bottom line here is that Williams' attorney moved to withdraw in February 2017. Williams has had eight months to prosecute this case. During that time, Williams has done nothing to further his case. Neither a lack of diligence nor a pro se litigant's lack of knowledge or familiarity with court rules excuses non-compliance with court orders, rules and deadlines. *Puig*, 514 Fed. Appx. at 487-88 (5th Cir. 2013)(quoting *S & W Enters.,* 315 F.3d at 535). Williams has not complied with this Court's deadlines and cannot establish the requisite good cause for extending those deadlines. *See Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (good cause elements are a strict standard requiring proof of more than mere ignorance). Therefore, the City respectfully request that the Court deny Williams' Motion to Stay.

Respectfully submitted,

**CITY ATTORNEY'S OFFICE**
**CITY OF IRVING, TEXAS**

By:      _/s/ Jason McClain_
          **JASON McCLAIN**
          Senior Assistant City Attorney
          SBOT No. 00797032
          jmcclain@cityofirving.org
          825 West Irving Boulevard
          Irving, Texas 75060
          Telephone: 972.721.2541
          Facsimile: 972.721.2750

**ATTORNEY FOR CITY OF IRVING**

## <u>CERTIFICATE OF SERVICE</u>

On October 30, 2017, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the individual who has consented in writing to accept this Notice as service of this document by electronic means:

Michael Williams, Pro Se
7604 Acorn Lane
Frisco, Texas 75034
(818) 926-0929
creativityandmagic@hotmail.com

*/s/ Jason McClain*
**JASON MCCLAIN**
Senior Assistant City Attorney

| | |
|---|---|
| **From:** | Jason McClain |
| **Sent:** | Monday, October 23, 2017 7:25 AM |
| **To:** | 'Michael Williams' |
| **Cc:** | Rebecca Maddux; Janice Wahl |
| **Subject:** | FW: URGENT - Williams v. City of Irving (Civil Action No. 3:15-cv-1701) - Deposition |
| **Attachments:** | MotionModifySchedulingOrder10202017_Complete.pdf; ProposedSchedulingOrder.pdf |

**Importance:** High

Michael,

The City is opposed to your motion to modify the scheduling order. Moreover, your motion does not impact your deposition, which is and has been scheduled for this morning at 9:30 a.m. We worked with you on selecting this date and even changed a previously noticed deposition date and time to accommodate you. If you do not appear for this deposition as scheduled, the City will file a motion for sanctions against you and will seek to recover the costs incurred in attempting to take your deposition.

Please call me at 972-721-3655 if you have any questions or concerns. Otherwise, I expect to see you at your deposition this morning. Thank you.

Jason

Jason D. McClain | Sr. Assistant City Attorney City Attorney's Office City of Irving I Cityofirving.org
825 W. Irving Blvd., Irving, TX 75060
P: (972) 721.2541 F: (972) 721.2750
jmcclain@cityofirving.org

-----Original Message-----
From: Rebecca Maddux
Sent: Monday, October 23, 2017 6:56 AM
To: Jason McClain <jmcclain@cityofirving.org>
Cc: Janice Wahl <jwahl@cityofirving.org>
Subject: FW: URGENT - Williams v. City of Irving (Civil Action No. 3:15-cv-1701) - Deposition
Importance: High

Becca Maddux, Paralegal
City Attorney's Office
(972) 721-2541

_____
From: Michael Williams [creativityandmagic@hotmail.com]
Sent: Friday, October 20, 2017 6:57 PM
To: Rebecca Maddux
Subject: RE: URGENT - Williams v. City of Irving (Civil Action No. 3:15-cv-1701) - Deposition



Ms. Maddux,

I am filing a motion to Modify the scheduling Order and am trying to determine if the motion will be challenged by The City. The Motion and proposed order is attached.

I am asking the court to STAY ALL PROCEEDINGS until the Motion is resolved.

Thank You,

Michael Williams

From: Rebecca Maddux [mailto:rmaddux@cityofirving.org]
Sent: Friday, October 20, 2017 9:21 AM
To: 'Michael Williams' <creativityandmagic@hotmail.com>
Subject: URGENT - Williams v. City of Irving (Civil Action No. 3:15-cv-1701) - Deposition
Importance: High

Mr. Williams,

We have attempted to contact you multiple times by email and phone regarding your upcoming deposition on Monday, October 23, 2017 at 10:00 a.m. here in our offices at City Hall in Irving. As of this morning we have not heard back from you confirming your attendance.

Please call or reply to this email today confirming your attendance on Monday.

Thank you for your cooperation!

Becca L. Maddux | Litigation Paralegal
City Attorney's Office
City of Irving |
Cityofirving.org<https://eur03.safelinks.protection.outlook.com/?url=cityofirving.org&data=02%7C01%7Ccreativityand
magic%40hotmail.com%7C9cbb9b4a6e5940b05cfc08d517c5ca04%7C84df9e7fe9f640afb435aaaaaaaaaaaa%7C1%7C0%
7C636441060626612331&sdata=AtO7gTHdGaJArd3La2U2TC7UM135pvs1IC%2BRaM71ZJM%3D&reserved=0>
825 W. Irving Blvd., Irving, TX 75060
P: (972) 721.2541 F: (972) 721.2750
rmaddux@cityofirving.org<mailto:name@cityofirving.org>


Confidentiality Notice: The information contained in this e-mail is confidential, is intended only for the use of the individual(s) named above, and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you are not the intended recipient, you are advised that any reading, dissemination, distribution, printing, or copying of this e-mail and any attachments is strictly prohibited. Furthermore, if you have received this e-mail in error, please notify the sender immediately by reply message and delete this e-mail and any attachments from your system.

| | |
|---|---|
| MICHAEL WILLIAMS | **IN THE JUSTICE COURT** |
| 7604 ACORN LN. | |
| FRISCO, TEXAS 75034 | **PRECINCT FOUR,** **COLLIN COUNTY, TEXAS** |
| (818)926-0929 | **DEFENDANT(S) INFORMATION:** ERIC CURTIS |
| CREATIVITYANDMAGIC@HOTMAIL.COM | |
| **Plaintiff,** | **TO BE SERVED AT:** DETECTIVE ERIC CURTIS |
| vs. | IRVING POLICE DEPARTMENT 305 N. O'CONNOR BLVD. |
| DETECTIVE ERIC CURTIS | IRVING, TX. 75061 |
| 305 N. O'CONNOR BLVD. | (972) 721-2471 |
| IRVING, TX. 75061 | |
| **Defendant** | |

2014 MAY 14 AM 8:16
JUSTICE COURT FOUR
COLLIN COUNTY, TEXAS
FILED

### PLAINTIFF'S ORIGINAL PETITION

**COMES NOW** the above styled plaintiff being duly sworn, on his oath deposes that the above styled defendant:

Is justly indebted to the plaintiff in the sum of **$10,000.00**, plus punitive damages in the sum of **$0.00**, plus court costs.

This suit involves relief within the jurisdiction of this court, the total amount excluding court costs and statutory interest is an amount less than $10,000 and any discovery to be conducted under direction of the Judge.

### PRELIMINARY STATEMENT

Plaintiff Williams is an African-American, Sr. Business Intelligence Engineer who was employed at Caliber Home Loans in Irving, Texas. Williams was hired on 08/05/2013 to lead a team of Business Intelligence Engineers and to make sweeping changes within the Information Technology organization within CHL.

The role of Sr. Business Intelligence Engineer is one of the, if not the, most dynamic and challenging roles within the Information Technology industry as a whole. It requires a wide range of senior level skills spanning technology to training to leadership skills. It is a highly visible role responsible for delivering critically important IT initiatives to Executives and Business Units of high visibility. The Sr. Business Intelligence Engineer interacts with Senior Managers from every corner of the organization on a very frequent basis.

The role of Sr. Business Intelligence Engineer is the highest paying role in the IT industry under IT Management, with an average STARTING salary of $125,000.00 per year + Benefits + an annual bonus.

Williams was doing extremely well in this role and was extremely well-liked and admired by his colleagues and his internal customers. Williams's' accomplishments and achievements were felt throughout CHL, nationwide, during the first 30 days of his employment.

ORIGINAL COMPLAINT - 1

**EXHIBIT**

**2**

1   If his productivity remained high, and it appeared that it would, he would have made for a very strong candidate
2   for management within a relatively short amount of time.

3   The hostility reached a high point when Hate Group members would catch Victim Williams alone in the workplace
4   and carried out various forms of harassment that included threats to shoot victim Williams and his family as they
    went about their daily lives in the community away from CHL.

5

6   **On 12/17/2013, Williams was exiting the elevator on the fourth floor as Robert Murray and Kenneth Baugh were**
    entering the same elevator.  They both gave me a menacing stare, and somewhat blocking my way, and as I was
7   passing them Robert Murray said, "Should we shoot him in the head and then fire him, or should we fire him first
    and then shoot him in the head."  Kenneth Baugh said, "Shoot him in back of the head . . . the back".
8

9   **12/17/2013 was on a Wednesday.** Out of shock, confusion and fear, Williams did not return to work for the rest
    of the week.
10

11  Plaintiff Williams reported these threats to the Irving PD in the form of an online police report regarding Terroristic
    Threats.  The police report was ultimately passed to Detective Eric Curtis for investigation.
12

13  The Terroristic Threat police report named two specific people (Robert Murray and Kenneth Baugh) as Primary
    Defendants and a number of other Senior CHL Managers as co-defendants.   In essence, CHL as an organization
14  were suspects/defendants in the investigation.

15  During the investigation conducted by Det. Curtis, he interviewed the HR Director, Michelle Greenstreet, who was
16  employed at CHL, at the time of the threats, but was NOT employed at CHL when Det. Curtis interviewed her.  Det.
    Curtis also interviewed Attorney Craig Lackey, General Counsel for CHL.  And of course they told Det. Curtis several
17  false and misleading statements in order to protect CHL, which is what they are paid to do.

18  Plaintiff Williams attempted to meet with Det. Curtis to review the case.  Instead of a meeting there was a verbal
19  exchange between the two men.  During this verbal exchange, which took place as they stood in the public
    entryway at the Irving PD and not in a conference room, Det. Curtis took a strong adversarial stance against
20  Williams.  He advised Williams that the investigation was closed and refused to privately meet with Williams and
    share the details of the investigation.  Williams suspected a cover-up and obtained Curtis' investigatory notes
21  through the Public Information Act.  After reading the documents he received on the investigation conducted by
22  Det. Curtis, Williams discovered that Det. Curtis and Attorney Lackey conspired to file a false police investigatory
    report with the intent to deprive Williams of his constitutional right to equal protection under the law.  They
23  derailed and closed the investigation.
24

25  CHL Attorney Lackey intentionally told Det. Curtis a number of blatantly false and misleading statements which
    Curtis *freely accepted, did not challenge and did not corroborate.*  Plaintiff Williams has evidence that the
26  statements fabricated by Det. Curtis by Attorney Lackey are false and/or misleading.  Det. Curtis was seeking a
    reason to close the investigation.  This is evidenced by Det. Curtis stating in his report, *"I read the report and found*
27  *some of the claims by Victim Williams to be a bit farfetched."*  This was Det. Curtis statement prior to any
    investigation.  Curtis did not mention precisely which statements were "farfetched."
28

29  An attorney like Craig Lackey putting his license to practice law on the line is evidence of "guilt" in the original
    complaint.  If they were innocent there would be no reason to conspire to lie to a police investigator.
30

31  Det. Curtis never interviewed or questioned *any* of the suspects Robert Murray, Kenneth Baugh and the other
32  senior officers in the CHL organization (Radha Thompson (CIO), Brett Johnson (CTO), Maurice Tipkin (SVP) and

ORIGINAL COMPLAINT - 2

Brian Schultz (SVP)) who were *named* as "an accessory or co-defendants" in the police report filed by plaintiff Williams; Curtis did not give the suspects the opportunity to confess if they chose to do so!

**DET. CURTIS, AS AN INVESTIGATOR, SHOULD HAVE FORCED THE SUSPECTS TO MAKE A STATEMENT "ON THE RECORD" REGARDING WHO, WHAT, WHEN AND WHERE!**

**AS OF 05/10/2014, A FULL FOUR(4) MONTHS AFTER THE POLICE REPORT WAS MADE, THE SUSPECTS IN A CRIMINAL INVESTIGATION HAVE NEVER BEEN CONTACTED NOR INTERVIEWED ON, OR OFF, THE RECORD. THAT, BY DEFINITION, IS A COVER-UP AND/OR CONSPIRACY!**

Curtis used his job as a police detective to protect the suspects and encourage more of the criminal activity which suspects were being accused of carrying out; which was threatening to kill an entire family that included a six year old child. The protection of plaintiff's wife and son is the most important reason that prompted the police report and investigation.

Det. Curtis's formal investigation and written report do not include an interview with Defendant Williams nor does it include an interview with *any* of the actual suspects; not a single suspect was interviewed! Det. Curtis's notes do not mention if Det. Curtis conducted a criminal background check on the suspects to determine whether they had been accused of, or convicted of, any similar crimes in the past.

## ARGUMENT

### COUNT I

| ARGUMENT | STATUTE |
|---|---|
| To NOT investigate the suspects AND accept false, unchallenged and uncorroborated statements from a third party in defense of the suspects was a perversion of the investigatory process. Not sharing this information with the victim, and banking on the victim not knowing the process of obtaining records through the Public Information Act was an egregious abuse of the process. With the ulterior motive being to protect the company CHL. The plaintiff and plaintiffs' family has suffered financial, psychological and emotional damages as a result of these acts.<br><br>Det. Curtis LEAKED to the suspects information that was given to him from the victim and others; this "leaking" of police information gave the suspects an "edge" in the investigation. | **ABUSE OF PROCESS**<br><br>*1) There was an illegal, improper, or perverted use of the legal process, neither warranted nor authorized by the legal process,*<br>*2) There was an ulterior motive or purpose in exercising such use, and*<br>*3) There was damage as a result of the illegal act* |

### COUNT II

| ARGUMENT | STATUTE |
|---|---|
| Victim and his family **and friends** are in more fear now than they were before plaintiff reported the crime to police. But the fear is of the people who threatened the family and of the police department itself. Every day plaintiff and plaintiffs' family wake up paranoid about being shot or shot at by either the CHL people or the police or an agent of either of those organizations. | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>*1) Defendant acted intentionally or recklessly; and*<br>*2) Defendant's conduct was extreme and outrageous; and*<br>*3) Defendant's act is the cause of the distress; and*<br>*4) Plaintiff suffers severe emotional distress as a result of defendant's conduct.* |

ORIGINAL COMPLAINT - 3

_Michael Williams_
Plaintiff's Signature

<u>creativityandmagic@hotmail.com</u>
Plaintiff's e-mail address

Plaintiff consents to the use of this email for service/delivery of pleadings. THAT plaintiff reserves the right to plead further orally upon trial of this matter.

SUBSCRIBED AND SWORN before me this the __14__ day of __May__, __2014__.

By: _____
Clerk of the Court or Notary Public

Dated this Monday, May 12, 2014.

ORIGINAL COMPLAINT - 4

CAUSE NUMBER: 04-SC-14-00080

| | |
|---|---|
| MICHAEL WILLIAMS | IN THE JUSTICE COURT |
| 7604 ACORN LN. | |
| FRISCO, TEXAS 75034 | PRECINCT FOUR, |
| 818-926-0929 | COLLIN COUNTY, TEXAS |
| Plaintiff, | DEFENDANT(S) INFORMATION: |
| | STEPHANIE BARNES (#C1661) |
| vs. | TO BE SERVED AT: |
| | STEPHANIE BARNES (#C1661) |
| STEPHANIE BARNES (#C1661) | IRVING POLICE DISPATCH |
| Defendant | 305 N. O'CONNOR BLVD. |
| | IRVING, TX. 75061 |
| | (972) 721-2471 |

JUSTICE COURT FOUR COLLIN COUNTY, TEXAS

2014 MAY 16 AM 8:15

FILED

### PLAINTIFF'S ORIGINAL PETITION

COMES NOW the above styled plaintiff being duly sworn, on his oath deposes that the above styled defendant:

Is justly indebted to the plaintiff in the sum of $10,000.00 (NOT INCLUDING COURT COST)

This suit involves relief within the jurisdiction of this court, the total amount excluding court costs and statutory interest is an amount less than $10,000 and any discovery to be conducted under direction of the Judge.

### FACTS/COMPLAINT

Plaintiff Williams is an African-American, Sr. Business Intelligence Engineer who was employed at Caliber Home Loans in Irving, Texas. Williams was hired on 08/05/2013 to lead a team of Business Intelligence Engineers and to make sweeping changes within the Information Technology organization within CHL.

The role of Sr. Business Intelligence Engineer is one of the, if not the, most dynamic and challenging roles within the Information Technology Industry as a whole. It requires a wide range of senior level skills spanning technology to training to leadership skills. It is a highly visible role responsible for delivering critically important IT initiatives to Executives and Business Units of high visibility. The Sr. Business Intelligence Engineer interacts with Senior Managers from every corner of the organization on a very frequent basis.

The role of Sr. Business Intelligence Engineer is the highest paying role in the IT industry under IT Management, with an average STARTING salary of $125,000.00 per year + Benefits + an annual bonus.

Williams was doing extremely well in this role and was extremely well-liked and admired by his colleagues and his internal customers. Williams's' accomplishments and achievements were felt throughout CHL, nationwide, during the first 30 days of his employment.

If his productivity remained high, and it appeared that it would, he would have made for a very strong candidate for management within a relatively short amount of time.

ORIGINAL COMPLAINT - 1

| | |
|---|---|
| 1 | This made a group of White (Anglo) IT workers and Managers at CHL, jealous, angry and hostile towards him. This "Hate Group" launched a racially motivated campaign of sabotage and hostility designed to derail Williams career and destroy his chances for success and rising beyond the corporate glass ceiling. |
| 2 | |
| 3 | |
| 4 | |
| 5 | The hostility reached a high point when Hate Group members would catch Victim Williams alone in the workplace and carried out various forms of harassment that included threats to shoot victim Williams and his family as they went about their daily lives in the community away from CHL. |
| 6 | |
| 7 | On 12/17/2013, Williams was exiting the elevator on the fourth floor as Robert Murray and Kenneth Baugh were entering the same elevator. They both gave me a menacing stare, and somewhat blocking my way, and as I was passing them Robert Murray said, "Should we shoot him in the head and then fire him, or should we fire him first and then shoot him in the head." Kenneth Baugh said, "Shoot him in back of the head . . . the back". |
| 8 | |
| 9 | |
| 10 | 12/17/2013 was on a Wednesday. Out of shock, confusion and fear, Williams did not return to work for the rest of that week. |
| 11 | |
| 12 | **VICTIM WILLIAMS CONTACTS IRVING POLICE** |
| 13 | On Saturday, 12/21/2013 between the hours of 6 – 7 pm Victim Williams called the Irving PD non-emergency line to inquire as to the process for filing a police report for a Terroristic Threat. Dispatcher Stephanie Barnes #C1661 answered the call. |
| 14 | |
| 15 | Although Victim Williams was clear that he was only seeking information regarding where and how to file a Police Report, Barnes became eager to know why he wanted to file this report. |
| 16 | |
| 17 | Under the color of authority, Barnes insisted upon asking Williams questions regarding the details of the Police Report Williams was preparing to file and began questioning and probing him for details. |
| 18 | |
| 19 | Although Williams responded more than once that he was not seeking legal assistance, and that he was already receiving guidance from an attorney, Barnes pressed on with more questions; which placed Williams under duress to go into details regarding the pending report filing. Williams felt that he could not refuse to answer those questions and that he had to plead his case to the dispatcher over the telephone immediately. |
| 20 | |
| 21 | |
| 22 | Williams made it very clear to Barnes that there was a conspiracy between the actual people that were making terroristic threats towards him and his family and the Senior Management Team at CHL. Therefore, Barnes knew that CHL Management were to be named as at least co-suspects in the police report that Williams would eventually file. |
| 23 | |
| 24 | |
| 25 | During this conversation Barnes "picked up on" the fact that this was potentially a racially motivated "hate crime" being committed towards Williams in his place of employment and Barnes took the side of the suspects and used her job as a police dispatcher to abuse the crime reporting process and protect those suspects. Here is an account of what she did and the actions she took: |
| 26 | |
| 27 | |
| 28 | **BARNES CONTACTS VICTIMS EMPLOYER; THE SUSPECTS IN THE SOON TO BE FILED POLICE** |
| 29 | **REPORT** |
| 30 | After hanging up from speaking with Williams, Dispatcher Barnes preempted the filing of his police report and contacted CHL and "tipped them off" as to the fact that Williams was *preparing* to file a police report in which C-Level and SVP Level Executives would be named as co-defendants. There was a series of back and forth phone |
| 31 | |
| 32 | |

ORIGINAL COMPLAINT - 2

calls between Barnes and CHL, but the information ultimately ended with Michelle Greenstreet who was at that time SVP of Human Resources for Caliber Home Loans.

Although in Barnes initial phone call with CHL security, they stated that there was no problems at the location. Barnes did not accept that and pressed on by sounding a false alarm by repeating and embellishing a plethora of fraudulent statements regarding Williams to them. Barnes insisted on providing Williams's name and repeating the details of criminal charges he was *preparing* to make against CHL; which potentially placed Williams in even more danger because Williams police report was an accusation that people at CHL was threatening to do harm to him and his family. Police General Orders states that Barnes get permission from her supervisor before interviewing suspects and victims.

On Sunday, 12/22/2013, upon receiving this hearsay information from Barnes, the outsourced "IIDON" (CHL outsources its security functions to a security firm named IIDON Security) Security Officer at the CHL location contacted the outsourced Security Manager (IIDON Security Associates). Then the outsourced Security Manager contacted the internal Security Manager (Tiffany Siskin; SVP Corporate Security). Then the internal Security Manager contacted the SVP of Human Resources (Michelle Greenstreet) and the SVP of Human Resources contacted Williams's boss's boss (Brett Johnson; Chief Technology Officer at Caliber Home Loans). All these CHL people convened on a Sunday morning and went into 911 mode.

### ACTIONS TAKEN AS A RESULT OF BARNES FALSE STATEMENTS

CHL acted on that "hearsay" on the part of Barnes and, on the same day within the same hour, took the following actions against Williams:

1. Williams was immediately placed on the road to termination by CHL; based upon this defamation and hearsay by Barnes.
2. Greenstreet called the Irving PD and the Frisco PD (the police department where Williams owns a home) and told both agencies that Williams would be required to undergo psychological counseling before being allowed to return to work. She also requested that the Frisco PD visit Williams home and have him call his job; although he was due back at work the very next day.
3. Williams's access badge was blocked, disabling his ability to report to work at the CHL building the next day.
4. Williams's remotely logon to the corporate network was disabled disallowing him from performing any work from home as he usually does.
5. Williams's personal and corporate email was searched and pored through by CHL management in search of anything incriminating against Williams; nothing incriminating was found.
6. Greenstreet told the IPD and FPD that she had pored through Williams's personal email messages and found an email about a gun. (Please See HandGunEmail.pdf)
7. Misinformation regarding Williams's previous divorce, his relationship with his in-laws and his alleged financial problems was disseminated to the IPD and FPD by Barnes and Greenstreet.
8. CHL advised Williams's manager and team members of Barnes statements; which damaged his career and reputation.
9. CHL advised Williams's team members and internal customers that he would not be returning to work for an indefinite period of time.
10. CHL called the Frisco Police department and fabricated a series of tales that resulted in the Frisco Police Department visiting Williams's affluent Frisco community, surrounding Williams's house and beating on his door. Then going door-to-door questioning his neighbors. Williams is the only African-American male in this community and it stereotypes him to have the police searching for him and questioning his neighbors as to his whereabouts.
11. CHL never again assigned Williams any work and he was fired within 60 days; all based upon Barnes actions.

ORIGINAL COMPLAINT - 3

<u>BARNES CREATES FALSE POLICE REPORT</u>

1. Barnes wrote in her report, "WHILE SPEAKING WITH RP IT WAS CLEAR THAT HE WAS MENTALLY UNSTABLE". In her report she continues to explain what led her to believe Williams was mentally unstable. She wrote, "He was speaking very fast" which hardly constitutes mental instability, especially when a person is calling the police to make a police report regarding a criminal act. Although Barnes states that she felt Williams was mentally unstable she did not send an ambulance or a police car to Williams home. Nor did she ask whether or not he was currently taking medication, or if he had ever been treated for mental illness?

   Barnes used the statement of "WHILE SPEAKING WITH RP IT WAS CLEAR THAT HE WAS MENTALLY UNSTABLE" as a pretext to justify preempting Williams police report and tipping off the suspects as to Williams pending police report. And also to construct a racial profile of Williams to pass along to investigators and law enforcement in general; and to prejudice law enforcement against Williams and deprive him of his constitutional right of equal protection under the law. BARNES ABUSED THE PROCESS OF FILING A POLICE REPORT FOR MALICIOUS REASONS.

2. Barnes continues in her report to state, Williams was going through a divorce and was having problems with his in-laws. This is a false statement that was COMPLETELY MADE UP. It was done intentionally and recklessly. Williams never told her that; as evidenced by the police audio tapes.

3. Barnes put in her report that Williams had a large amount of bills and that he was having marital problems. This is a false statement that was COMPLETELY MADE UP. It was done intentionally and recklessly. Williams never told her that; as evidenced by the police audio tapes.

4. Barnes stated in her report that Williams told her that he had never contacted HR, then, according to her, he made a reversal and stated that he did indeed contact HR. This is a false statement that was made intentionally and recklessly; Williams never told her that; as evidenced by the police audio tapes. And what difference would that make to the dispatch person, anyway? All that would come out in an investigation.

<u>CLOSING</u>

When Williams requested through the Public Information Act the audio tapes of the calls between Barnes and CHL security and staff, Williams was told by Irving PD attorney Les Moore that the tapes were not available. He was able to provide the tape of Williams's initial phone call to Barnes, but not with the tapes between Barnes and CHL Employees. Williams does not believe those tapes disappeared, he believes those tapes, that evidence, were destroyed or withheld to protect the police department. IN THE AUDIO TAPED CALL WITH WILLIAMS YOU CAN HEAR BARNES STATINGTHAT ALL THE LINES WHWRE SHE WORKS ARE RECORDED.

And if the Irving PD asserts that Barnes made the calls to CHL from a different phone that was not being recorded, the question would be "WHY" did she make the calls from a different phone that was NOT being recorded? According to Barnes call sheet and her notes (that she thought would never be seen) her call to CHL was made within seconds of hanging up from talking to Williams; not minutes but seconds.

Although Barnes had a telephone in her hand, capable of making inbound and outbound calls she put that phone down and immediately went to a different phone to make a call to the suspects. The reason she did not call the suspects on the phone that she was currently using is because the phone she was currently using was a recorded line, and she did not want the call she was making to the alleged suspects to be recorded. Barnes wanted to hide this call, the call to CHL was to be a secret call.

ORIGINAL COMPLAINT - 4

| | |
|---|---|
| 1 | Dispatcher Barnes, operating under the color of authority, has deliberately, with malice and forethought, |
| 2 | fabricated information about Williams, and purposefully misquoted Williams in order to prejudice him in the eyes |
| | of his employer and investigators and derail any chance he may had to seek protection from the set of |
| 3 | circumstances he was calling about. Williams character was defamed in the eyes of his employer and co-workers |
| | and he was denied "due process" as a result of her actions. |
| 4 | |

**ARGUMENT**
**COUNT V**

| ARGUMENT | STATUTE |
|---|---|
| To NOT investigate the suspects AND accept false, unchallenged and uncorroborated statements from a third party in defense of the suspects was a perversion of the investigatory process. Not sharing this information with the victim, and banking on the victim not knowing the process of obtaining records through the Public Information Act was an egregious abuse of the process. With the ulterior motive being to protect the company CHL. The plaintiff and plaintiffs' family has suffered financial, psychological and emotional damages as a result of these acts. | **ABUSE OF PROCESS** <br> *1) There was an illegal, improper, or perverted use of the legal process, neither warranted nor authorized by the legal process,* <br> *2) There was an ulterior motive or purpose in exercising such use, and* <br> *3) There was damage as a result of the illegal act* |

**COUNT VII (CIVIL COURT)**

| ARGUMENT | STATUTE |
|---|---|
| Victim and his family and friends are in more fear now than they were before plaintiff reported the crime to police. But the fear is of the people who threatened the family and of the police department itself. Every day plaintiff and plaintiffs' family wake up in fear about being shot or shot at, or retaliated against in some form by either the CHL people or the police or an agent of either of those organizations. | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br><br> *1) Defendant acted intentionally or recklessly; and* <br> *2) Defendant's conduct was extreme and outrageous; and* <br> *3) Defendant's act is the cause of the distress; and* <br> *4) Plaintiff suffers severe emotional distress as a result of defendant's conduct.* |

**COUNT VII (CIVIL COURT)**

| ARGUMENT | STATUTE |
|---|---|
| Victim and his family and friends are in more fear now than they were before plaintiff reported the crime to police. But the fear is of the people who threatened the family and of the police department itself. Every day plaintiff and plaintiffs' family wake up in fear about being shot or shot at, or retaliated against in some form by either the CHL people or the police or an agent of either of those organizations. | **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br><br> *1) Defendant acted intentionally or recklessly; and* <br> *2) Defendant's conduct was extreme and outrageous; and* <br> *3) Defendant's act is the cause of the distress; and* <br> *4) Plaintiff suffers severe emotional distress as a result of defendant's conduct.* |

ORIGINAL COMPLAINT - 5

_Michael Williams_
Plaintiff's Signature

creativityandmagic@hotmail.com
Plaintiff's e-mail address

Plaintiff consents to the use of this email for service/delivery of pleadings. THAT plaintiff reserves the right to plead further orally upon trial of this matter.

SUBSCRIBED AND SWORN before me this the __14__ day of ___May 2014___

By: _____
Clerk of the Court or Notary Public

Dated this Monday, May 12, 2014.

ORIGINAL COMPLAINT - 6

Case Number: 04-SC-14-00081

| | | |
|---|---|---|
| MICHAEL WILLIAMS | § | JUSTICE OF THE PEACE |
| VS. | § | PRECINCT 4 |
| DETECTIVE ERIC CURTIS | § | COLLIN COUNTY, TEXAS |

**SUMMONS**

In accordance with the Texas Rules of Civil Procedure, you are hereby notified to appear before the

Justice Court – Precinct 4, Collin County Texas located at **8585 John Wesley Drive #130, Frisco**

**Texas** on **July 24, 2014 at 1:30 PM**, for your Civil Suit DEFENDANT'S MOTION TO

TRANSFER VENUE Hearing.

Witness my official signature on this the 3rd day of July, 2014



By: _Harker_
     Civil Clerk

---

MICHAEL WILLIAMS
7604 ACORN LN
FRISCO TX  75034

JASON MCCLAIN
825 WEST IRVING BOULEVARD
IRVING TX  75060

**APPROPRIATE COURT ATTIRE REQUIRED: NO SHORTS, T-SHIRTS OR CAPS**

Case Number: 04-SC-14-00080

| | | |
|---|---|---|
| MICHAEL WILLIAMS | § | JUSTICE OF THE PEACE |
| VS. | § | PRECINCT 4 |
| STEPHANIE BARNES | § | COLLIN COUNTY, TEXAS |

## SUMMONS

In accordance with the Texas Rules of Civil Procedure, you are hereby notified to appear before the Justice Court – Precinct 4, Collin County Texas located at **8585 John Wesley Drive #130, Frisco Texas** on **July 24, 2014 at 1:30 PM**, for your Civil Suit DEFENDANT'S MOTION TO TRANSFER VENUE Hearing.

Witness my official signature on this the 3rd day of July, 2014



By: _Harker_

Civil Clerk

---

MICHAEL WILLIAMS
7604 ACORN LN
FRISCO TX 75034

JASON MCCLAIN
825 WEST IRVING BOULEVARD
IRVING TX 75060

**APPROPRIATE COURT ATTIRE REQUIRED: NO SHORTS, T-SHIRTS OR CAPS**

RECEIVED
JUL 11 2014
CITY ATTORNEY'S OFFICE

**COURT'S JUDGMENT IN**
**04-SC-14-00081**

**MICHAEL WILLIAMS**
PLAINTIFF

JUSTICE OF THE PEACE

VS.

PRECINCT #4

**DETECTIVE ERIC CURTIS**
DEFENDANT

COLLIN COUNTY, TEXAS

## ORDER OF NON-SUIT

ON THIS THE 24TH DAY OF JULY 2014, CAME ON TO BE HEARD THE ABOVE ENTITLED AND NUMBERED CAUSE; WHEREIN, **MICHAEL WILLIAMS** IS PLAINTIFF AND **DETECTIVE ERIC CURTIS** IS DEFENDANT. A MOTION WAS MADE BY PLAINTIFF TO TAKE A NON-SUIT AGAINST DEFENDANT **DETECTIVE ERIC CURTIS**. THE COURT HAS GRANTED PLAINTIFF'S MOTION.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT THAT THE PLAINTIFF'S MOTION FOR NON-SUIT AGAINST DEFENDANT **DETECTIVE ERIC CURTIS** IS HEREBY GRANTED.

SIGNED AND ENTERED THIS 24TH DAY OF JULY 2014.

W.M. "MIKE" YARBROUGH
JUSTICE OF PEACE, PRECINCT 4





**COURT'S JUDGMENT IN**
**04-SC-14-00080**

**MICHAEL WILLIAMS**
PLAINTIFF

JUSTICE OF THE PEACE

VS.

PRECINCT #4

**STEPHANIE BARNES**
DEFENDANT

COLLIN COUNTY, TEXAS

### ORDER OF NON-SUIT

ON THIS THE 24TH DAY OF JULY 2014, CAME ON TO BE HEARD THE ABOVE ENTITLED
AND NUMBERED CAUSE; WHEREIN, **MICHAEL WILLIAMS** IS PLAINTIFF AND
**STEPHANIE BARNES** IS DEFENDANT. A MOTION WAS MADE BY PLAINTIFF TO TAKE A
NON-SUIT AGAINST DEFENDANT **STEPHANIE BARNES**. THE COURT HAS GRANTED
PLAINTIFF'S MOTION.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT THAT THE
PLAINTIFF'S MOTION FOR NON-SUIT AGAINST DEFENDANT **STEPHANIE BARNES** IS
HEREBY GRANTED.

SIGNED AND ENTERED THIS 24TH DAY OF JULY 2014.

W.M. "MIKE" YARBROUGH
JUSTICE OF PEACE, PRECINCT 4



FILED

14 DEC 23 PM 2: 51

GARY FITZSIMMONS
DISTRICT CLERK
DALLAS CO., TEXAS

DEPUTY

Cause No.: DC-14-14860

| MICHAEL DURRELL WILLIAMS | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| CITY OF IRVING, | § | |
| Defendant. | § | 160th JUDICIAL DISTRICT |

## ORIGINAL PETITION

### I.   DISCOVERY

1.1    Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, plaintiff intends to conduct discovery in this case under Level 2.

### II.   JURISDICTION

1.1    This Court has subject matter jurisdiction over this claim because the Texas Tort Claims Act waives defendants sovereign immunity for Claims involving personal injury caused by defamation of character by defendant City of Irving, under Section 101.021 of the Texas Civil Practices and Remedies Code.

### III.   VENUE

2.2    The events as alleged herein arose within this District, pursuant to 28 U.S.C. § 1391(b), and within this Division, and one or more of the Defendants are subject to personal jurisdiction in the District and Division to which this action has been assigned.

### III. PARTIES

3.1    Plaintiff Michael Williams ("Williams") is an individual residing in Collin County, Texas and a citizen of the State of Texas.

3.2    Defendant the City Of Irving ("IPD") is a governmental unit of the State of Texas as defined by Section 101.001(3)(B) of the Texas Rules of Civil Practice and Remedies Code. Defendant may be served with process by serving Jason D. McClain, Esq., Sr. Assistant City Attorney; City Attorney's Office; City of Irving at 825 W. Irving Blvd., Irving, TX 75060. Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org.

### IV. BACKGROUND

Page 1 of 5



EXHIBIT
4

4.1     On December 21, 2013, Williams made a non-emergency phone call to the Irving Police Dispatch department seeking to file a police report for "Terroristic Threats" that were made towards him and his family by, what appeared to be to him, as a White Supremacist or Hate Group operating at his workplace at Caliber Home Loans (CHL).

4.2     Dispatcher Stephanie Barnes of the Irving PD ("Barnes") took the phone call and, in her own words, tricked me into giving her information that she was otherwise not entitled to, or was not necessary for her to know in order to provide me with the directions to make a police report for "Terroristic Threats."

4.3     After Williams call with Barnes ended, Barnes took the information that she obtained by trickery under the color of authority, such as Williams full name, Williams place of employment etc. . . , to contact security at Williams employer as well as contact key managers at Williams employment and began to expose to those people the details of his call to the Police Department and to tell the people there that Williams was crazy and posed a physical threat to the safety of the employees of the building as well as threat to himself.

4.4     During the short 90 seconds or so of police audio tapes, you can hear Barnes mention to Caliber Security, on at least three - four occasions, that Williams was a Black Male. She repeatedly reminded the security that Williams was Black. Caliber Security never even asked Barnes for a physical description of Williams. This was her attempt to infuse racism and bias into an investigation of Williams and any other Black Male that happened to walk through the doors of CHL on his way to work.

4.5     Barnes actions had a similar effect of going into a crowded theatre and yelling "fire" because instantly everyone went into a "panic". Many adverse actions were taken against Williams by his employer and co-workers. Williams access badge that allowed him to enter the building was deactivated; his remote computer access was deactivated; his chain of command was told about the Barnes phone call and Barnes unfounded allegations of him being insane. The Frisco Police Department ("FPD"), which is the Police Department where Williams lives, was dispatched to his home pounding on his door because, in the words of the FPD, they were led to believe that I could be in the house bleeding to death. When there was no answer at my home, the FPD Officers began knocking on the doors of Williams neighbors and interviewing them as to whereabouts and habits of Williams based upon the Barnes phone call. Williams was, and probably still is, the only Black person residing in an All- White Frisco community; this stereotyped him. Williams neighbors do not wave or say hello to me and my family anymore. The neighborhood kids do not play with Williams son anymore, he was is six years old at the time and the isolation continues to this day.

4.6     After Williams made the Police report, the case was assigned to Detective Eric Curtis. Det. Curtis closed the case without ever speaking to Williams. Nor did he speak to, or even attempt to speak with, the alleged assailants who made the death threats to Williams and his family. However, Curtis did speak at length with Attorney Craig Lackey who is in-house Counsel to Caliber Home Loans. Attorney Craig Lackey hindered the investigation by

making many false statements to Det. Curtis in an effort to assist the alleged assailants in evading arrest or prosecution. Attorney Craig Lackey hindered this investigation by making statements which were false to Det. Curtis. Det. Curtis knew, or should have known, the statements being made by Curtis were false. For example, one key factor in the case was the allegation that Williams personal email was being intercepted everyday and that Williams bank account and email accounts were being accessed by members of this Hate Group which is how they knew where Williams wife works. Weeks prior to this, this Hate Group was boasting about knowing where Williams wife worked and the hours she worked there and they boasted about setting up a snipers nest and shooting her as she went to or from her workplace. Attorney Craig Lackey told Det. Curtis this could not be true because CHL hired a third party to perform forensic tests on the computers of the people involved and found no trace of my information on their computers.

4.7     Attorney Craig Lackey was deliberately trying to deceive the Investigator. There was no third party IT vendor that came to CHL for the express reason of performing forensic tests on the computers during 12/25/2013 and 02/15/2014 which is the time period in question. But evidence exists that the alleged assailants had their computers switched out during the 12/25/2013 and 02/15/2014 to destroy any evidence to support Williams allegations. The computers the assailants used to carry out these deeds against Williams and his family were destroyed and Caliber Senior Management provided them all with new computers in order destroy any evidence. Det. Curtis never requested evidence of the third party vendor tests results from Attorney Craig Lackey. Det. Curtis never questioned the alleged suspects in person, nor over the telephone. Det. Curtis never ran a background check on the alleged assailants to see if they had any similar allegations or convictions in their past. Det. Curtis investigation was more a process of tipping off the assailants and warning to hide and destroy evidence prior to any discovery being found.

4.8     Williams immediately contacted Irving PD Interval Affairs and initiated a complaint against Stephanie Barnes specifically. The Legal Advisor in charge was Les Moore, who had been with the IPD for many years. When Williams asked Mr. Moore to make available to Williams, through the Public Information Act, "all call sheets and recordings between Barnes and myself and/or CHL Security and/or CHL Management and/or Michelle Greenstreet", Mr. Moore responded to Williams in a letter dated March 25, 2014 and told Williams the only material that did exist were the calls I made to Barnes. Mr. Moore was lying.

4.9     Williams went to meet with Det. Curtis, in person, to follow-up on the investigation. Det. Curtis told Williams that he closed the case and did not offer a plausible reason for doing so. Det. Curtis was very arrogant with an "us" versus "them" adversarial demeanor; very cruel in tone. Williams asked Det. Curtis about the actions taken by Dispatcher Barnes and Curtis told Williams that everything Barnes did was within Police Policy. Det. Curtis was lying. He knew, or should have known, that Barnes actions were not in compliance with Police General Orders. Williams surreptitiously recorded the conversation between Curtis and Williams.

4.9.1   Williams wrote a letter to the Irving Prosecutors office requesting Det. Curtis, Dispatcher Barnes, and Craig Lackey be investigated or prosecuted. The Irving Prosecutors Office never responded to Williams email nor did she direct someone else to respond to Williams email.  Williams wrote a letter to the Chief of Police, Bruce Jolly, requesting a different Detective to investigate Williams case. The Chief of Police never responded to Williams email nor did he direct anyone else to respond to Williams email.

4.9.2   Through months of hard work and tenacious traversing of the bureaucracy within the Police Department, Internal Affairs and the Irving Prosecutors Office Williams was able to get an Internal Affairs investigation started against Barnes. The Internal Affairs investigation concluded that Williams allegations against Barnes were **SUSTAINED** and that she was not operating in accordance with Irving PD policies and procedures.

4.9.3   It was not until I filed a Small Claims case in a Frisco Court and began interacting with Jason McClain of the IPD before I was able to obtain the vast defamatory audio and written material that was quietly and secretly being stacked up against me behind an impenetrable wall of police protection . The audio and written material was so repugnant and defamatory that Williams decided to have his case unsuited from Justice Court 4 and sue in Dallas District Court for a higher amount.

4.9.4   As a result of the City's actions, Williams has lost a valued career position, and he has suffered physically, emotionally. Williams career and professional reputation has been irreparably damaged as a result of actions on behalf of the City. Williams is over 50 years of age.

## VI. FIRST CLAIM FOR RELIEF
## DEFAMATION OF CHARACTER

5.1      The allegations of paragraphs 1.1 through 4.9.4 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of themselves and the classes of similarly situated ticket holders.

## XII. DAMAGES AND RELIEF SOUGHT

6.1      Plaintiff hereby incorporate paragraphs 1.1 through 4.9.4, verbatim, as set forth at this point.

6.2      Plaintiff seeks to recover actual damages outlined below from Defendants as a direct and proximate result of the conduct of Defendants.

6.3      Plaintiff will show that the conduct of Defendants constitutes "gross negligence," "malice," and "actual malice" under Texas law. Plaintiffs therefore request the assessment of exemplary or punitive damages in an amount as may be necessary to punish Defendants and to deter other with similar lawless inclinations in the future.

6.4     Plaintiff seeks to recover the following damages and obtain the following relief from Plaintiffs:

   a) Economic loss suffered by Plaintiff;
   b) Treble damages under the Texas Deceptive Trade Practices Act;
   c) Punitive or exemplary damages;
   d) All reasonable and necessary attorneys' fees;
   e) Court costs; and
   f) Pre and post-judgment interest.

## XIII. PRAYER

WHEREAS, PREMISES CONSIDERED, Plaintiffs pray the Defendants be cited in terms of law to answer herein and that upon final trial, Plaintiff have and recover all damages which they are entitled, all costs of Court, attorneys' fees, pre and post-judgment interest, and for further and other relief, whether in law or in equity, to which Plaintiffs may show themselves justly entitled.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial of all causes by jury.

DATED: December 21, 2014

Michael Williams
7604 Acorn Lane
Frisco, Texas 75034
Email: creativityandmagic@hotmail.com
Telephone: 818-926-0929

Cause No: DC-14-14860

| | | |
|---|---|---|
| **MICHAEL WILLIAMS,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **CITY OF IRVING,** | § | |
| *Defendant.* | § | **160TH JUDICIAL DISTRICT** |

## ORDER ABATING CITY OF IRVING'S PLEA TO THE JURISDICTION

On April 1, 2015, the Court heard Defendant City of Irving's Plea to the Jurisdiction in the above-styled and numbered cause. After considering the plea, the response to the plea, attachments to the plea, the pleadings, and the written and oral arguments of counsel and Plaintiff, the Court is abating it's ruling on the City's Plea to the Jurisdiction for 30 days in order for Plaintiff Michael Williams to have an opportunity to amend his Original Petition.

Therefore, it is ORDERED that Plaintiff file an Amended Petition on or before May 1, 2015. If Plaintiff files an Amended Petition on or before May 1, 2015, Defendant's Plea to the Jurisdiction will be denied. If, however, Plaintiff fails to timely file an Amended Petition, this case may be dismissed pursuant to the City's Plea to the Jurisdiction.

Signed on this the _____ day of April 2015.


_____
JUDGE PRESIDING



EXHIBIT
5

Cause No.: <u>DC-14-14860</u>

| | | |
|---|---|---|
| MICHAEL DURRELL WILLIAMS | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| CITY OF IRVING, IRVING POLICE | § | |
| DEPARTMENT, DETECTIVE ERIC CURTIS | § | |
| AND STEPHANIE BARNES | § | |
| Defendants | § | 160th JUDICIAL DISTRICT |

<u>PLAINTIFFS FIRST AMENDED ORIGINAL PETITION</u>

### I.    DISCOVERY

1.    Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery in this case under Level 2.

### II.    JURISDICTION

2.    This Court has subject matter jurisdiction over this claim because the Texas Tort Claims Act waives defendant's sovereign immunity for Claims involving personal injury caused by negligence by Defendant City of Irving, under Section 101.021 of the Texas Civil Practices and Remedies Code.

### III.    VENUE

3.    The events as alleged herein arose within this District, pursuant to 28 U.S.C. § 1391(b), and within this Division, and one or more of the Defendants are subject to personal jurisdiction in the District and Division to which this action has been assigned.

### III. PARTIES

4.    Plaintiff Michael Williams ("Plaintiff") is an individual residing at 7604 Acorn Lane; Frisco, Texas 75034 in Collin County, Texas and a citizen of the State of Texas. Telephone: 818-926-0929. Email: creativityandmagic@hotmail.com;

5.    Defendant the City Of Irving ("Defendant") is a governmental unit of the State of Texas as defined by Section 101.001(3)(B) of the Texas Rules of Civil Practice and Remedies Code.  Defendant may be served with process by serving Jason D. McClain, Esq., Sr. Assistant City Attorney; City Attorney's Office; City of Irving at 825 W. Irving Blvd., Irving, TX 75060. Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org.

### IV. STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

6.    On December 21, 2013, Plaintiff made a non-emergency phone call to the Irving Police Department to report on-going death threats made towards him and his family by a group of White co-workers at his place of employment, Caliber Home Loans or "Caliber" located at 3701 Regent Blvd. in the City of Irving, Texas.

---

Plaintiffs First Amended Original Petition



7.     Police Dispatcher Stephanie Barnes of the Irving PD ("Barnes") took Plaintiffs phone call. During this phone call, Barnes began a series of questioning, under the color of authority.

8.     After Plaintiff's phone call with Barnes ended, Barnes took information obtained during her phone call with Plaintiff (the "Plaintiff" was the "victim" during the call) to contact the defendants (Caliber Senior Management and Caliber Security) and misrepresented the facts of the conversation. She also began providing information to the defendants, and possible agents of the defendants, that would guide them in creating a false alibi and destroying evidence.

9.     Barnes did not seek guidance from her supervisor prior to contacting Caliber Home Loans and making the statement that she made to them.

10.     As a result of Barnes phone calls and accusations many adverse actions were taken against Plaintiff by Caliber managers and co-workers.  Plaintiff's building access badge was deactivated; his remote computer access was deactivated; his chain of command was told about the Barnes phone call and Barnes unfounded allegations of him being insane and her misinterpretation of the facts of his phone call to the IPD.  The Frisco Police Department ("FPD"), which is the Police Department in Plaintiff's community, was dispatched to his home pounding on Plaintiff's door because, in the words of the FPD, they were led to believe that I could be in the house bleeding to death. When there was no answer at Plaintiff's home, the FPD Officers began knocking on the doors of Plaintiff's neighbors and interviewing them as to the whereabouts and habits of Plaintiff based upon the Barnes phone call.

11.     After Plaintiff completed the online Terroristic Threats Police report, the case was assigned to Detective Eric Curtis of the IPD.  Det. Curtis responded to the police report the exact same way that Barnes responded to the phone call.  Both Detective Curtis and Dispatcher Barnes to an adversarial position against the victim who is the Plaintiff in this case.  Detective Curtis without speaking to neither the Defendant, nor the alleged assailants in the Terroristic Threats Police report, closed the case made by Plaintiff.  But Detective did not close the case before providing Caliber Home Loans attorneys with everything they needed to know about the police reports, the pending investigation and all the claims Plaintiff made regarding electronic evidence that exists at Caliber that could establish circumstantial evidence of the harassment that supported the Terroristic Threats claims in the Police report.

12.     On 03/05/2014, Plaintiff went to the IPD to meet with Det. Curtis, in person, where Plaintiff surreptitiously recorded the conversation between Curtis and Plaintiff (See DetectiveCurtisInterview03052014.MP3: Exhibit 4).  In that recording Det. Curtis confirms that he spoke with Caliber Senior Management (the defendants' agents) and closed the case based upon those conversations.  In that recording Det. Curtis also confirms that he spoke with Barnes.  But more importantly, in that recording, Curtis confirms that he listened to the tapes of Barnes and the related phone calls and that everything Barnes did was a common and wide spread practice of the Irving Police Department.

13.     On April 4th, 2014, Plaintiff initiated an investigation through Irving PD Interval Affairs Legal Advisor, Les Moore against Stephanie Barnes.  When Plaintiff requested Mr. Moore to make available, through the Public Information Act, "all call sheets and recordings between Barnes and myself and/or CHL Security and/or CHL Management and/or Michelle Greenstreet", Mr. Moore stated in a letter dated March 25, 2014 (See LesMoore_IrvingPoliceLegal.pdf: Exhibit 10) and told Plaintiff the only material that did exist were the calls Plaintiff made to Barnes. Mr. Les Moore was lying.  After Plaintiff filed suit in Justice Court 4 in Frisco, Texas the audio tapes suddenly surfaced through Irving City Attorney Jason McClain.

---

Plaintiffs First Amended Original Petition

14.     On May 27th, 2014, the Internal Affairs investigation concluded that Plaintiffs allegations against Barnes were **SUSTAINED** and that she was not operating in accordance with Irving PD policies and procedures. (See Stephanie_Barnes_SUSTAINED.pdf: Exhibit 8).

15.     On June 16th, 2014 Plaintiff received a letter from Irving PD Interval Affairs stating that the investigation against Detective Curtis was **UNFOUNDED.** Although Barnes and Curtis both worked for the same police department in the same building guided by the same General Orders, the audio tapes of Barnes speaking with Caliber Senior Management were turned over to Plaintiff (albeit not without a tremendous struggle), but Plaintiff was told in an email from Jason McClain that the audio tapes of Curtis speaking with Caliber Senior Management were NOT available.

16.     As a direct and proximate result of the City's actions, Plaintiff has suffered the following injuries and damages:

       a) Loss of a valued career position; earnings; health insurance benefits and all other benefits associated with his employment at Caliber Home Loans;
       b) He has suffered physically and emotionally.
       c) Plaintiff's career and professional reputation has been irreparable damage.

17.     At all relevant times, Defendants were acting under the color of law and under the color of authority as police officers, detectives, employees, and agents or servants of the City of Irving, Texas; and the County of Dallas, Texas; and as agents of the State of Texas.

## FIRST CLAIM FOR RELIEF
## NEGLIGENCE

18.     Plaintiff will show that the actions that made the basis of this lawsuit resulted from negligence of all Defendants, both separately and together.  The Defendants conduct, separately and together, constituted negligence, and such negligent conduct was a proximate cause of the plaintiffs damages that make the basis of this lawsuit.

19.     Police dispatchers owe a duty to the public to protect the public confidence of victim callers and abide by the Police Policies and Procedures of the police departments that employ them. Dispatcher Barnes breached those duties by contacting plaintiff's employer and making untrue statements about Plaintiffs' police call.  Detective Curtis breached those duties by basing the closure and overall handling of the investigation on information that was based upon the improper execution of the Police Policies and Procedures.

20.     The Defendants negligent actions or omissions include, but are not limited to one or more of the following:

      a. Failure to follow Police Policies and Procedures as defined by the City of Irving.
      b. Failure to properly train dispatchers in handling phone calls and communicating with the public.
      c. Failure to properly train detectives in policies and procedures that should guide the investigation of criminal police complaints.

## DAMAGES

---

21.     Plaintiff seeks to recover actual damages outlined below from Defendants as a direct and proximate result of the conduct of Defendants.

22.     Plaintiff will show that the conduct of Defendants constitutes "negligence" under Texas law. Plaintiff therefore request the assessment of exemplary or punitive damages in an amount as may be necessary to punish Defendants and to deter other with similar lawless inclinations in the future.

23.     Plaintiff seeks to recover the following damages and obtain the following relief from Plaintiffs:

       a) Economic loss suffered by Plaintiff;
       b) _Psychological treatment expenses which in reasonable probability will be incurred in the future.
       c) Mental anguish suffered in the past
       d) Mental anguish which in reasonable probability will be suffered in the future.
       e) Lost wages in the in the past; and
       f) loss of earning capacity in the future.
       g) Punitive or exemplary damages;
       h) All reasonable and necessary attorneys' fees;
       i) Court costs; and
       j) Pre and post-judgment interest.

### XXIII. PRAYER

24.     WHEREAS, PREMISES CONSIDERED, Plaintiffs pray the Defendants be cited in terms of law to answer herein and that upon final trial, Plaintiff have and recover all damages which they are entitled, all costs of Court, attorneys' fees, pre and post-judgment interest, and for further and other relief, whether in law or in equity, to which Plaintiffs may show themselves justly entitled.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand trial of all causes by jury.

DATED: May 1, 2015

Michael Williams
7604 Acorn Lane
Frisco, Texas 75034
Email: creativityandmagic@hotmail.com
Telephone: 818-926-0929

4

Plaintiffs First Amended Original Petition

**Cause No: DC-14-14860**

| | | |
|---|---|---|
| MICHAEL WILLIAMS,<br>*Plaintiff,* | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | DALLAS COUNTY, TEXAS |
| CITY OF IRVING, IRVING POLICE<br>DEPARTMENT, DETECTIVE ERIC<br>CURTIS AND STEPHANIE BARNES,<br>*Defendants.* | §<br>§<br>§<br>§ | 160TH JUDICIAL DISTRICT |

## ORDER GRANTING CITY OF IRVING'S SECOND PLEA TO THE JURISDICTION

On November 16, 2015, the Court heard Defendant City of Irving's Second Plea to the Jurisdiction in the above-styled and numbered cause. The Court, having considered the Plea and arguments of counsel, finds that the Court does not have subject-matter jurisdiction of Plaintiff's claims as alleged in Plaintiff's First Amended Original Petition. Therefore, the Court finds that the Defendant's Plea should be granted.

It is therefore ORDERED that the Defendant City of Irving's Plea to the Jurisdiction is GRANTED and Plaintiff's claims against all Defendants in this matter are dismissed. This Order of Judgment is FINAL as to all parties and all claims and is appealable.

Signed on November __17__, 2015.

JUDGE PRESIDING



**EXHIBIT**

**7**

FILED
DALLAS COUNTY
6/28/2017 3:54 PM
FELICIA PITRE
DISTRICT CLERK
Freeney Anita

1 CT-CERT-MAIL

DC-17-08054

CAUSE NO. _____

| | | |
|---|---|---|
| **MICHAEL WILLIAMS** | § | |
| *Plaintiff Pro Se,* | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| vs. | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **THE CITY OF FRISCO, FRISCO** | § | |
| **CITY ATTORNEY'S OFFICE,** | § | |
| **LAW FIRM OF ABERNATHY,** | § | |
| **ROEDER, BOYD AND** | § | |
| **HULLETT, THE CITY OF** | § | **M-298TH JUDICIAL DISTRICT** |
| **IRVING, JON SKERTICH,** | § | |
| **JOHN BRUCE, RICHARD** | § | |
| **ABERNATHY, JULIO VARGAS,** | § | |
| **ERIC CURTIS, CORY KRAFT** | § | |
| *Defendant(s)* | § | |

## PLAINTIFFS ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Michael Williams, hereinafter called Plaintiff, complaining of and about The City of Frisco, hereinafter called Defendant, and for causes of actions shows unto the Court the following:

### I.
### DISCOVERY

1.    Plaintiff intends to conduct discovery in this case under Level 2 Pursuant to Texas Rules of Civil Procedure Rule 190.3.

### II.
### REQUEST FOR DISCLOSURE

2.    Pursuant to Texas Rules of Civil Procedure 194, you are hereby requested to disclose within fifty days after date of service of this Request, the information and the material described in Rule 194.2(a) through (i). More specifically, you are requested to disclose:

PLAINTIFFS ORIGINAL PETITION                                                                                         1



a) The correct names of the parties to the lawsuit;

b) The name, address and telephone number of any potential parties;

c) Legal theories and in general the factual basis of Defendants' claims or defenses; 22

d) The amount of any method of calculating economic damages (for Plaintiff and Defendants);

e) The name, address and telephone number of persons having knowledge of relevant facts and a brief statement of each identified person's connection with the case;

f) For any testifying expert:

   1) the expert's name, address and telephone number;

   2) the subject matter on which the expert will testify;

   3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or, if the expert is not retained by, employed, or otherwise subject to the control of the responding party, documents reflecting such information;

   4) if the expert is retained by, employed, or otherwise subject to the control of the responding party:

      a) all documents, tangible things, reports, models or data compilations that have been provided to, reviewed or for the expert in anticipation of the expert's testimony; and

      b) the expert's current resume and bibliography.

      c) Any discoverable indemnity and insuring agreements;

d) Any discoverable settlement agreements relating to this case; and

e) Any discoverable witness statements.

## III.
## PARTIES

3.     Plaintiff, Michael Williams, is a resident of Frisco, Collin County, Texas.

4.     Defendant, City of Frisco, Texas, is a municipality organized under Texas Local Government Code Annotated, Chapter 5 and Subchapter A. The City of Frisco may be served by<sup></sup> CERT-MAIL serving Richard Abernathy or Ryan D. Pittman, Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700 Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210. Metro 214-544-4000 or Fax 214-544-4040; rpittman@abernathy-law.com

5.     Defendant, City of Irving, Texas, is a municipality organized under Texas Local Government Code Annotated, Chapter 5 and Subchapter A. The City of Irving may be served by serving the City Attorney's Office at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org.

6.     Defendant, Eric Curtis, is a police detective with the Irving Police Department who can be served at his place of employment at 825 W. Irving Blvd., Irving, TX 75060; Phone: (972) 721.2541 or Fax: (972) 721.2750; jmcclain@cityofirving.org.

7.     Defendant, Jon Skertich, is an Internal Affairs Sergeant with the Professional Standards Unit Team of the Frisco Police Department who can be served by serving Richard Abernathy or Ryan D. Pittman, Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700 Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210. Metro 214-544-4000 or Fax 214-544-4040; rpittman@abernathy-law.com.

8.    Defendant, John Bruce, is a police officer with the Frisco Police Department who can be served by serving Richard Abernathy or Ryan D. Pittman, Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700 Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210.  Metro 214-544-4000 or Fax 214-544-4040; rpittman@abernathy-law.com.

9.    Defendant, Cory Kraft, is a police detective with the Frisco Police Department who can be served by serving Richard Abernathy or Ryan D. Pittman, Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700 Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210.  Metro 214-544-4000 or Fax 214-544-4040; rpittman@abernathy-law.com.

10.   Defendant, Julio Vargas, is a police officer with the Frisco Police Department who can be served by serving Richard Abernathy or Ryan D. Pittman, Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700 Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210.  Metro 214-544-4000 or Fax 214-544-4040; rpittman@abernathy-law.com.

11.   Defendant, Richard Abernathy, is a police detective with the Irving Police Department who can be served by serving Richard Abernathy or Ryan D. Pittman, Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700 Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210.  Metro 214-544-4000 or Fax 214-544-4040; rpittman@abernathy-law.com.

## IV.
## JURISDICTION

12.     This Court has jurisdiction over Defendants because Defendants have done business in Texas, committed a tort in Texas and have had continuous contacts with Texas. In addition, the damages for which Plaintiff brings suit exceeds the minimum jurisdictional limits of this court.

## V.
## VENUE

13.     Venue is proper in Tarrant County, Texas because Defendants' law firm is located in Tarrant County, Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(2) (Vernon 2005).

## VI.
## FACTS

**Williams is unlawfully/illegally arrested by the Frisco PD**
**Corporal Vargas**

14.     **On June 27th, 2015,** Plaintiff Williams was **parked, with the motor off,** at the car wash on Main Street in Frisco, Texas, two blocks from where he owns his home.

15.     Williams had committed no traffic violation nor was there a warrant for his arrest, nor an APB issued for someone who matched his description.

16.     Suddenly two (2) Frisco Police cruisers pulled into the car wash parking lot and placed Williams under arrest.

17.     As the officers approach Williams, Corporal Vargas states Williams's full name and full street address and advises Williams that, "There **might be** a warrant for your arrest." Williams responds by asking Vargas why Vargas stopped him, Vargas states, "I recognized you." Vargas then asks Williams if Williams has a warrant for his arrest.

18.     Vargas is trying to get Williams to arrest himself. Vargas is obeying the false BOLO, which states, in general, that if you see Williams arrest Williams, but is unsure of the crime under which to arrest Williams.

19.     Seconds before Williams was approached by the Frisco PD officers, you can hear on the police audio, the arresting officer Corporal Vargas telling the dispatcher he is stopping Williams because Williams's Mercedes-Benz looked suspicious (a Black man driving a late model Mercedes-Benz is suspicious to these people); without stating *why* it looked suspicious. This was the sole reason Vargas offered for stopping and questioning Williams. **See "Police Video of the Stop" Exhibit A**

20.     After the officers fabricated a pretext, Williams was subsequently arrested, taunted, ridiculed and insulted. His car was illegally searched and seized by Corporal Vargas and Sergeant Vest. Drugs and drug paraphernalia were later found in the gas tank area of Williams's vehicle. Williams is convinced that these drugs were planted by Corporal Vargas and Sergeant Vest while he was imprisoned and his car seized.

21.     On the dispatch call that was later obtained through the Public Information Act, you can hear Vargas taunting Williams by not allowing Williams to rollup the windows on his Mercedes-Benz, not allowing him to call his ex-wife to come get the car and saying the car had to be towed because it was blocking the entrance to the car wash. You can see from the dash cam video that the entrance Vargas was saying Williams's car was blocking is the same entrance he and Vest used to enter the parking lot; so Williams's vehicle couldn't have been blocking the entrance. They *wanted* to tow Williams's car.

22. In the audio portion of the dash cam video you can hear Vargas explain to the dispatcher that he recognized Williams from a system that publishes BOLO's to police cars across the nation.

23. Williams was handcuffed and taken to the Frisco Police Department and subsequently released with no plausible explanation.

24. Whatever source Vargas was using had Williams face and address side by side with no specific crime assigned to Williams, BUT advising police officers throughout the United States to "Be on the Lookout" for Williams.

**Williams requests Internal Affairs Investigation from Frisco Police Department**

25. After this Williams contacted Deputy Chief David Shilson #3127 of the Frisco PD. Shilson said, as well as the Frisco PD website, that I may file a complaint in person 24 hours a day, 7 days a week with any officer on duty.

26. But Williams recorded Jonathan Skertich (Professional Standards Unit (PSU - Internal Affairs Group) telling Williams that he, Michael Williams, would not be permitted to file the complaint with any officer on duty, 24 hours per day 7 days per week and that he would be required to come in to the office in person to meet with Skertich, and Skertich alone. Otherwise the report would never be taken.

27. From **July 2015 to September 2015** Williams cooperated fully in a plethora of emails, in-person and telephonic interviews with Skertich.

28.     **On September 2015,** Skertich sent Williams an email informing him that the investigation has been completed and that he was sending the report to Chief John Bruce. It is at this point that the investigation DISAPPEARED and vanished into thin air!

29.     Williams sent numerous emails to John Bruce (Frisco Chief of Police) and Richard Abernathy (City Attorney for the City of Frisco) requesting copies of the results on the Internal Affairs investigation.

30.     In response to that request, Williams received a letter from Richard M. Abernathy (City Attorney for the City of Frisco) that informed him that "the City" has chosen not to release the results of the Final Internal Affairs investigation report – in defiance of their duty to do so and Open Records Laws and the Public Information Act.

31.     Mr. Abernathy then referred Williams to the TML Risk Pool, and advised him to obtain a lawyer. Melanie Friske (512) 491-2389, of the TML Risk Pool, told Williams in an email dated 11/12/2015 that the TML Risk Pool under the direction of Mr. Abernathy opened a claim on Williams's behalf without Williams's knowledge or permission.

32.     **From 02/08/2015** until the present time, Melanie Friske (512) 491-2389 of the TML Risk Pool has attempted to obtain a copy of the Internal Affairs Investigation report that she could properly process the claim and determine damages. The corruption within the City of Frisco is so pervasive and thoroughly covered-up that they have refused to provide even her with the report; when it is them who referred the claim to her.

33.     Williams filed two separate complaints with Attorney Neal Falgoust of the Office of the Attorney General of Texas.

**THE FRISCO CITY ATTORNEY'S OFFICE COMMITS PERJURY BEFORE THE ATTORNEY GENERAL OF TEXAS**

34.     In February 2016, Williams receives from the Attorney General's Office, the response from **Attorney Ryan Pittman of the Law Firm of Abernathy, Roeder, Boyd and Hullett**. In that letter, Pittman is stating that *"No information responsive to the request for an Internal Affairs Report exists"*. The Frisco PD conducted an Internal Affairs Investigation and when it did not turn out the way they wanted it to, the City's leaders destroyed any evidence of the Investigation, violating Williams's constitutional rights to equal protection under the law.

35.     Williams recorded all the phone calls and interviews and saved all the emails between himself and the Frisco Police Department regarding the Internal Affairs investigation of the illegal arrest and the subsequent actions intended to cover it up.

**THE ONLINE IMPERSONATION CASE AND THE DISCOVERY OF THE BOLO IS A RETALIATORY PROSECUTION**

36.     The Frisco Police and the Collin County District Attorney's office, in an attempt to protect the City of Frisco from a lawsuit brought by Williams turned what should have been a Family Law case into a Criminal case in an effort to launch a retaliatory, biased investigation and maliciously prosecute and frame Williams for the crime of ONLINE IMPERSONATION.

37.     The specifics of that case go beyond the scope of this lawsuit and are currently in the process of litigation.

38.     **On 03/15/2016,** Williams's defense attorney in the ONLINE IMPERSONATION case, Mitchell Nolte, provides the discovery material from the prosecutors and makes it available to Williams on CD-ROM.

39.    This is when the fake BOLO was first discovered by Williams. The BOLO, which is totally false, tilted the scale in whether or not to charge Williams with the third degree felony offense of ONLINE IMPERSONATION.

40.    In the BOLO, Williams is depicted as insane and with a criminal record that includes Larceny, Fraud, Dangerous Drugs, Disorderly Conduct, Obstruct Police Officer, Robbery, Injury to a Child, Traffic.

## COUNT ONE
### SUIT FOR MANDAMUS
### (AGAINST CITY OF FRISCO)

1.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

2.    The facts stated above are incorporated here as a basis for this cause of action for mandamus. Pursuant to the Texas Public Information Act (TPIA), Tex. Gov't Code section 552.321, Plaintiff Rodgers brings this suit for mandamus against the City of Frisco and asks the Court to order Defendant and its personnel to supply all of the information Rodgers requested in Exhibits A, B, C, and D attached to this Petition.

3.    The facts stated above are incorporated here as a basis for this cause of action for mandamus. Pursuant to the TPIA, Tex. Gov't Code section 552.321, Plaintiff Williams brings this suit for mandamus against the City of Frisco and asks the Court to order Defendant(s) and its personnel to supply all of the information Williams requested in **Exhibits A** attached to this Petition.

## COUNT TWO
### 42 U.S. CODE § 1983 – CIVIL ACTION FOR DEPRIVATION OF RIGHTS
### (AGAINST CITY OF FRISCO AND JULIO VARGAS)

1. Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

2. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

3. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. *(R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)*

### COUNT THREE
### FALSE ARREST
### (AGAINST THE CITY OF FRISCO AND JULIO VARGAS)

4. Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

5. False arrest is an intentional tort consisting of willful detention of the plaintiff, without the plaintiffs consent, and without the authority of law. (Cantu v. Botello, 910 S.W.2d 65 (Tex. App. Corpus Cristi 1995).)

6. False arrest, rather than false imprisonment depends on whether peace officers had probable cause to affect an arrest. (2) In general, probable cause exists when the information known

to the officers is sufficient to warrant a person of reasonable caution in the belief that a particular person has committed or is committing an offense(3)

7.      A cause of action for false arrest is often joined with A cause of action for violation of the plaintiffs civil rights under federal law (6 See 42 USCA&& 1983, 1988)

## COUNT FOUR
### INSTIGATION
### (AGAINST THE CITY OF IRVING AND ERIC CURTIS)

8.      Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

9.      In Texas, liability for false arrest extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention. This the first element of false imprisonment maybe satisfied by conduct that is intended to cause one to be detained and in fact causes the detention, even when the actor does not participate in the detention. This is known as the instigation standard. (1 Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W. 3d. 502 (Tex 2002); Dangerfield v. Ormsby, 264 S. W. 3d. 904(Tex. App. Fort Worth 2008).)

10.      When the alleged detention results from an unlawful arrest, to prove instigation a plaintiff must show that the defendant clearly directed or requested the arrest. To hold a third party liable for instigating the detention, the act of the arrest must be made by the officer, not of his or her own volition, but to carry out the request of the defendant. (3 Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W. 3d. 502 (Tex 2002); Dangerfield v. Ormsby, 264 S. W. 3d. 904(Tex. App. Fort Worth 2008).)

11.      Only knowingly providing false information will make a party liable for instigating a false arrest. (5 Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W. 3d. 502 (Tex 2002))

## COUNT FIVE
## DEFAMATION - PER SE
### (AGAINST CITY OF FRISCO, THE CITY OF IRVING, JON SKERTICH, JOHN BRUCE, RICHARD ABERNATHY, ERIC CURTIS, CORY KRAFT)

12.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

13.     There are two types of actionable defamation under Texas law: defamation *per se* and defamation *per quod*. A claim for defamation *per quod* means that a statement is defamatory due to circumstances. While the statement is not defamatory when viewed on its face, due to circumstances, the statement can be considered defamatory.

14.     A person claiming defamation *per se* does not have to prove that they suffered damage to their reputation or any monetary loss. The statement speaks for itself - it is defamatory, and thus, the plaintiff is entitled to damages. In Texas cases involving defamation *per se*, "our law presumes that statements that are defamatory *per se* injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish." Bentley v. Bunton, 94 S.W.3d 561 (Tex. 2002).

15.     The following statements and actions constituted Defamation Per Se.

    a.   Williams was convicted of and/or has a criminal history that includes Larceny, Fraud, Dangerous Drugs, Disorderly Conduct, Obstruct Police Officer, Robbery, Injury to a Child, Traffic **IS A LIE.**

    b.   ..They hired an outside computer forensic examiner to image all of the computers of everyone involved, including Williams.

    c.   They interviewed all of the accused and witnesses and no one could substantiate anything that Williams claimed.

    d.   .. prior to the accusations, Williams was always sending emails complaining about his pay and not receiving an end-of-year bonus.

e. .. he didn't receive a bonus because he'd only worked for the company for a few months and they don't typically give a bonus to new employees.

f. .. When Williams made his accusations, they launched a full investigation into them.

16. When they delivered the BOLO to the DA's office, when they delivered the BOLO to the Grand Jury.

**COUNT SIX**
**DEFAMATION - PRO QUOD**
(AGAINST CITY OF FRISCO, THE CITY OF IRVING, JON SKERTICH, JOHN BRUCE, RICHARD ABERNATHY, ERIC CURTIS, CORY KRAFT)

17. Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

18. The following statements and actions constituted Defamation Pro Quod.

a. Williams is a mental health consumer, whatever that is.

b. Williams was convicted of and/or has a criminal history that includes Larceny, Fraud, Dangerous Drugs, Disorderly Conduct, Obstruct Police Officer, Robbery, Injury to a Child, Traffic **IS A LIE.**

c. ..They hired an outside computer forensic examiner to image all of the computers of everyone involved, including Williams.

d. They interviewed all of the accused and witnesses and no one could substantiate anything that Williams claimed.

e. .. prior to the accusations, Williams was always sending emails complaining about his pay and not receiving an end-of-year bonus.

f. .. he didn't receive a bonus because he'd only worked for the company for a few months and they don't typically give a bonus to new employees.

g. .. When Williams made his accusations, they launched a full investigation into them.

19. The disclosure of the information has resulted in the damaging of plaintiff's public and professional reputation, severe mental anguish, pain and suffering, the loss of a valued career position, and he has suffered physically and emotionally as well.

## COUNT SEVEN
### CIVIL CONSPIRACY
### (AGAINST CITY OF FRISCO, THE CITY OF IRVING, JON SKERTICH, JOHN BRUCE, RICHARD ABERNATHY, ERIC CURTIS, CORY KRAFT)

20.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

21.     Pleading further and in the alternative, the Defendants have entered into a civil conspiracy with each other and have agreed to use unlawful means to accomplish an unlawful purpose to Plaintiffs' detriment.

22.     Plaintiff was and continues to be damaged as a direct and proximate result of the civil conspiracy between and by and amongst the Defendants.

23.     Plaintiff has suffered, and will continue to suffer substantial injury as a result of Defendants' civil conspiracy, including but not limited to injury to character and reputation, mental anguish, loss of past and future income, seniority, cost of living increases, benefits, and loss of earning capacity and medical expenses. Plaintiff will continue to suffer for the rest of his life.

## COUNT EIGHT
### FEDERAL RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT (RICO)
### (AGAINST CITY OF FRISCO, THE CITY OF IRVING, JON SKERTICH, JOHN BRUCE, RICHARD ABERNATHY, ERIC CURTIS, CORY KRAFT)

24.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

### *Racketeering*

> *A 'pattern of racketeering activity' requires at least two acts of racketeering activity. 18 U.S.C. § 1961 (5). The acts must "amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238-39 (1989). This continuity requirement can be established by showing either closed-ended or open-ended continuity. At minimum, the predicate acts for close-ended continuity must span a period of "at least one year." Open-ended continuity, however, does not require that the acts span for a certain period of time. Rather, the racketeering acts must "include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." See H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 242 (1989).*

25.     The abuse of process in creating a fraudulent BOLO as a means of issuing a death threat against Williams was a criminal act and constitutes a threat of continued and open-ended criminal activity and is a threat to continue indefinitely into the future.

26.     Plaintiff, as an African American and citizen of the United States, belonged to a protected group intended to be protected by these statutes.

27.     As a result of defendants conduct in violation of the statute, plaintiff has suffered, including but not limited to injury to character and reputation, mental anguish, loss of past and future income, seniority, cost of living increases, benefits, and loss of earning capacity and medical expenses. In all reasonable probability, plaintiff will continue to suffer for the rest of his life.

**COUNT NINE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

28.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

29.     Defendants' conduct, as described above, was intended to and did inflict severe mental and emotional distress upon plaintiff. Defendants knew that such conduct would subject plaintiff to sever emotional distress.

30.     Defendants' conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized society.

31.     Defendants' conduct proximately caused plaintiff's damages in that it caused him suffer severe emotional distress. In particular, Defendants' conduct was the direct and proximate cause of severe mental pain and anguish.

32.     Plaintiff emotional distress has been severe in that he has suffered from anxiety attacks, depression, and loss of sleep, loss of appetite, nausea and vomiting.

33.     In addition to severe emotional distress, plaintiff has suffered and will continue to suffer additional damages as a proximate result of the defendants' conduct in that, in all reasonable

probability, plaintiff will continue to suffer this mental pain and anguish for a long time in the future. Plaintiff has also incurred loss of earnings and future earning capacity.

### COUNT TEN
### MENTAL ANGUISH
### (AGAINST ALL DEFENDANTS)

34.     In Douglas v. Delp, the Texas Supreme Court left open the question of whether mental anguish damages are recoverable in non-economic loss cases, such as when the client alleges loss of liberty, or in cases involving egregious misconduct. 987 S.W.2d at 885. The San Antonio Court of Appeals upheld an award of mental anguish damages based on the jury's finding that the defendant attorney had acted with malice in assisting a fiduciary breach during a dispute over trust assets. Parenti v. Moberg, No. 04-06-00497-CV, 2007 WL 1540952, at *3 (Tex. App.—San Antonio May 30, 2007, pet. denied) (holding mental anguish damages are recoverable for intentional or malicious conduct).

35.     The following acts on behalf of the defendant constituted a fiduciary breach:

   a) Negligence in not allowing Williams to secure his vehicle prior to arrest;

   b) Negligence in willfully and maliciously destroying evidence and blocking he release if the Internal Affairs Investigation;

   c) Negligence in arresting Williams without a warrant;

   d) Fraudulently forging Williams's name and filing a complaint with the Texas Municipal Insurance Company.

   e) Deliberately racially profiling Williams and approaching him without reason not probable cause.

NEGLIGENCE
(AGAINST ALL DEFENDANTS)

36.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

37.     Pleading further, and in the alternative if necessary, through their improper treatment of plaintiff's federal cases, plaintiff faces the loss of two federal cases and additional litigation that were being prosecuted very well prior to defendant's involvement.

38.     Defendants were negligent and their actions and inactions fell below the applicable standard of care due to plaintiff.

39.     The following acts on behalf of the defendant constituted a fiduciary breach:

        f)   Negligence in not allowing Williams to secure his vehicle prior to arrest;

        g)   Negligence in willfully and maliciously destroying evidence and blocking he release if the Internal Affairs Investigation;

        h)   Negligence in arresting Williams without a warrant;

        i)   Fraudulently forging Williams's name and filing a complaint with the Texas Municipal Insurance Company.

        j)   Deliberately racially profiling Williams and approaching him without reason not probable cause.

40.     The acts and/or omissions of Defendants constitute negligence. This conduct was therefore a proximate cause of injuries and damages sustained by plaintiff.

41. Defendants knew that the information contained in the BOLO was false, in the alternative; Defendants published these representations without any regard for their truth. Defendants intended that police officers and district attorney and grand jurors rely on their misrepresentations and/or omissions.

42. As described above, the conduct by Defendants constitutes embezzlement and larceny, as defined by Tex. Pen. Code §§ 31.01. Accordingly, the limitation on recovery of exemplary damages set forth in Tex. Civ. Prac. & Rem. Code § 41.008(b) does not apply. See Tex. Civ. Prac. & Rem. Code § 41.008(c)(3).

### COUNT TWELVE
### EXEMPLARY DAMAGES - PUNITIVE DAMAGES
### (AGAINST ALL DEFENDANTS)

43. Actual malice can be proven by circumstantial evidence. Evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by accumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity. *Reader's Digest Assn. v. Superior Court* 37 Cal.3d 244, 257 (1984).

44. Defendants' conduct, when viewed from the standpoint of the actors at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Furthermore, Defendants' conduct illustrates not only an attitude of conscious indifference for the rights, safety and welfare of others, but also shows Defendants' actual and subjective awareness of the dangers of such conduct.

45. Nevertheless, Defendants proceeded with a conscious indifference to the rights, safety or welfare of others, including Plaintiff. Therefore, Defendants are liable for exemplary/punitive damages.

46. As a result, plaintiff seeks exemplary damages in this action under *Sections 41.001 et seq. of the Texas Civil Practices and Remedies Code.*

### COUNT THIRTEEN
### DAMAGES
### (AGAINST ALL DEFENDANTS)

47. Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

48. As a result of Defendants' actions as described herein, plaintiff has suffered damages including: physical pain and suffering; mental anguish sustained in the past; mental anguish that, in reasonable probability, plaintiff will sustain in the future; the cost of re-litigation based upon defendants legal errors and omissions in these cases sustained in the past, and in reasonable probability will sustain in the future.

49. As set forth herein, Plaintiff has suffered additional damages and seek recovery for same from Defendants, jointly and severally. Plaintiff further request recovery of pre-judgment interest and post-judgment interest at the statutory rate or at such other rate as is set by this Court.

50. Pleading further, and alternatively, if necessary, Defendants are guilty of misconduct which was committed knowingly, intentionally, maliciously, wantonly, fraudulently, and in reckless and callous disregard of the legitimate rights of the Plaintiff so far as to justify the imposition of exemplary damages. Plaintiff seeks recovery of such exemplary damages from Defendants.

### PLAINTIFFS' RESERVATION OF RIGHT TO AMEND
### AND/OR SUPPLEMENT THIS PETITION

51.     As allowed by Texas Rules of Civil Procedure 45, 62, 63, 64, 65, 66, 67, 69 and other related rules, the Plaintiffs assert and reserve their legal right to amend and/or supplement the allegations and other contents of this petition to conform with any additional evidence or information and/or to respond to any or all pleadings of the Defendant in the above numbered and styled civil action.

### CONDITIONS PRECEDENT

52.     All conditions precedent has been performed or has occurred as required by Texas Rule of Civil Procedure 54.

### JURY TRIAL DEMANDED

53.     Plaintiff hereby respectfully demands a trial by jury.

### PRAYER AND REQUEST FOR RELIEF

54.     For the foregoing reasons, Plaintiffs request that upon final trial or other disposition of this lawsuit, Plaintiffs have and recover judgment against Defendants jointly and severally for the following:

        a) all damages requested;

        b) reasonable and necessary attorney's fees;

        c) pre-judgment and post-judgment interest as provided by law;

        d) costs of court;

        e) exemplary damages;

        f) punitive damages and;

        g) such other and further relief, at law or in equity, to which Plaintiffs are justly entitled.

RESPECTFULLY SUBMITTED,

*/s/ Michael Williams*
MICHAEL WILLIAMS, *PRO SE*
FRISCO, TEXAS 75034
TELEPHONE: (818) 926-0929
CREATIVITYANDMAGIC@HOTMAIL.COM

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2017, a true and correct copy of the foregoing

document was filed via ECF and delivered by mail to Richard Abernathy and Ryan D. Pittman,

Counsel for the City of Frisco, at the law firm of Abernathy, Roeder, Boyd & Hullett P.C., 1700

Redbud Boulevard, Suite 300; P.O. Box 1210, McKinney, Texas 75070-1210. Metro: 214-544-4000

or Fax 214-544-4040; rpittman@abernathy-law.com.

RESPECTFULLY SUBMITTED,

*/s/ Michael Williams*
Michael Williams
Pro Se

JURY

# U.S. District Court
## Northern District of Texas (Dallas)
### CIVIL DOCKET FOR CASE #: 3:17-cv-02124-B

Williams v. City of Frisco Texas

Assigned to: Judge Jane J. Boyle

Case in other court: 298th Judicial District Court, Dallas County TX, DC-17-08054

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 08/11/2017

Jury Demand: Defendant

Nature of Suit: 440 Civil Rights: Other Civil Rights

Jurisdiction: Federal Question

**Plaintiff**

**Michael Williams**                                represented by **Michael Williams**
7604 Acorn Lane
Frisco, TX 75034
(818) 926-0929
PRO SE

V.

**Defendant**

**City of Frisco Texas**                           represented by **Kevin M Curley**
Fletcher Farley Shipman & Salinas LLP
9201 N. Central Expy., Suite 600
Dallas, TX 75231
214-987-9600
Fax: 214-987-9866
Email: kevin.curley@fletcherfarley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Frisco City Attorney's Office**

**Defendant**

**Law Firm of Abernathy Roeder Boyd**              represented by **Thomas A Culpepper**
**and Hullett**                                     Thompson Coe Cousins & Irons LLP
Plaza of the Americas
700 North Pearl Street, 25th Floor
Dallas, TX 75201-2832
214/871-8200
Fax: 214/871-8209
Email: tculpepper@thompsoncoe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*



EXHIBIT
9

                                    **Cody Joseph Moorse**
Thompson Coe Cousins & Irons, LLP
700 N. Pearl
Suite 2500
Dallas, TX 75201
214-871-8272
Fax: 214-871-8272
Email: cmoorse@thompsoncoe.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**The City of Irving**

**Defendant**

**Jon Skertich**

**Defendant**

**John Bruce**

**Defendant**

**Richard Abernathy**          represented by   **Thomas A Culpepper**
                                              (See above for address)
                                              *LEAD ATTORNEY*
                                              *ATTORNEY TO BE NOTICED*

                                              **Cody Joseph Moorse**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Julio Vargas**

**Defendant**

**Eric Curtis**

**Defendant**

**Cory Kraft**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/11/2017 | 1 | NOTICE OF REMOVAL WITH JURY DEMAND from 298th Judicial District Ct., case number DC-17-08054 filed by City of Frisco Texas. (Filing fee $400; receipt number 0539-8596257) In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business |

| | | days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Index of State Docs, # 2 Cover Sheet, # 3 Cover Sheet Supplement) (Curley, Kevin) (Entered: 08/11/2017) |
|---|---|---|
| 08/11/2017 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by City of Frisco Texas. (Curley, Kevin) (Entered: 08/11/2017) |
| 08/11/2017 | 3 | NOTICE of Related Case filed by City of Frisco Texas (Curley, Kevin) (Entered: 08/11/2017) |
| 08/11/2017 | 4 | New Case Notes: A filing fee has been paid. Case received over counter/electronically. No prior sanctions found. (For court use only - links to the national and circuit indexes.) Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Stickney). Clerk to provide copy to plaintiff if not received electronically. (ndt) (Entered: 08/11/2017) |
| 08/11/2017 | 5 | Notice and Instruction to Pro Se Party. (ndt) (Entered: 08/11/2017) |
| 08/11/2017 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:4,5. Fri Aug 11 15:03:54 CDT 2017 (crt) (Entered: 08/11/2017) |
| 08/14/2017 | 6 | Motion to Dismiss for Failure to State a Claim filed by City of Frisco Texas (Curley, Kevin) (Entered: 08/14/2017) |
| 08/14/2017 | 7 | Brief/Memorandum in Support filed by City of Frisco Texas re 6 Motion to Dismiss for Failure to State a Claim (Curley, Kevin) (Entered: 08/14/2017) |
| 08/14/2017 | 8 | Appendix in Support filed by City of Frisco Texas re 6 Motion to Dismiss for Failure to State a Claim, 7 Brief/Memorandum in Support of Motion (Curley, Kevin) (Entered: 08/14/2017) |
| 09/06/2017 | 9 | MOTION to Dismiss filed by Richard Abernathy, Law Firm of Abernathy Roeder Boyd and Hullett with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order)Attorney Thomas A Culpepper added to party Richard Abernathy(pty:dft), Attorney Thomas A Culpepper added to party Law Firm of Abernathy Roeder Boyd and Hullett(pty:dft) (Culpepper, Thomas) (Entered: 09/06/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/26/2017 15:21:57 | | | |
| **PACER Login:** | ic0415:2794687:0 | **Client Code:** | Williams |
| **Description:** | Docket Report | **Search Criteria:** | 3:17-cv-02124-B |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |