IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MICHAEL WILLIAMS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:15-CV-1701-L** |
| **CITY OF IRVING; IRVING POLICE** | § | |
| **DEPARTMENT; STEPHANIE BARNES;** | § | |
| **ERIC CURTIS; BRUCE JOLLEY; and** | § | |
| **CRAIG LACKEY,**[1] | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the City of Irving's Summary Judgment Motion (Doc. 92), filed March

20, 2018. No response to the motion was filed by Plaintiff Michael Williams ("Williams" or

"Plaintiff"). After careful consideration of the City of Irving's ("the City" or "City of Irving")

motion, brief, and summary judgment evidence, and applicable law, the court enters this order

**vacating** the standing order of reference (Doc. 11), **granting** the City of Irving's Summary Judgment

Motion (Doc. 92), and **dismissing with prejudice** Plaintiff's remaining claims against the City.

## I.    Factual and Procedural Background

On May 15, 2015, Williams, who is proceeding pro se,[2] filed this action against the City of

Irving, the Irving Police Department ("IPD"), IPD dispatcher Stephanie Barnes ("Barnes"), IPD

---

[1] Plaintiff's First Amended Complaint, the live pleading, also includes Caliber Home Loans as a defendant; however, for the reasons, herein explained, Plaintiff did not seek or obtain leave to join Caliber Home Loans as a party. It also appears from a motion for leave that was filed by Plaintiff after the party joinder deadline and subsequently withdrawn that Plaintiff mistakenly added Caliber Home Loans as a party in his First Amended Complaint. As Caliber Home Loans was never properly joined as a party, the court does not include it in the case caption.

[2] Plaintiff initially filed this case pro se. On September 14, 2016, an attorney entered an appearance on his behalf before Defendants filed a motion to dismiss on February 10, 2017. Plaintiff's attorney, however, moved to withdraw on February 28, 2017, and an order allowing the attorney to withdraw as Plaintiff's counsel in this action was entered on March 1, 2017.

Detective Eric Curtis ("Curtis"), IPD Captain Bruce Jolley ("Jolley"),[3] and attorney Craig Lackey ("Lackey") (collectively, "Defendants"), who is in-house counsel for Plaintiff's former employer Caliber Home Loans. In his Original Complaint, Williams asserted claims against all Defendants, pursuant to 42 §§ U.S.C. 1983 and 1985(2), for alleged constitutional violations. Plaintiff also asserted the following state law tort claims against the individual Defendants: Count 3, intentional infliction of emotional distress (Barnes, Lackey, Jolley, Curtis); Count 4, invasion of privacy (Barnes, Lackey); Count 5, defamation of character or slander (Barnes, Lackey, Curtis); Count 6, defamation of character or libel (Barnes, Curtis); and Count 7, abuse of process (Barnes, Jolley, Curtis).[4]

On June 16, 2016, the court entered a Standing Order of Reference, referring the case to the magistrate judge for pretrial management. Pursuant to that order, the magistrate judge entered two scheduling orders. The first scheduling order included a March 3, 3017 deadline for joining parties and pleading amendments. In a subsequent February 22, 2017 order, this deadline was extended to August 1, 2017.

On September 9, 2016, an agreed judgment was entered dismissing all claims with prejudice against Lackey. On February 7, 2017, the court accepted the magistrate judge's findings and conclusions, granted Individually Named City Defendants' Motion for Partial Summary Judgment (Doc. 24) based on qualified immunity, dismissed with prejudice Plaintiff's claims under 42 U.S.C.

---

[3] In footnote one of the Findings, Conclusions and Recommendation of the United States Magistrate Judge entered on February 10, 2017, the magistrate judge notes that Plaintiff incorrectly spelled Bruce Jolley's name in his Original Complaint as "Jolly."

[4] The factual bases for these claims and the law applicable to the claims are included in the Findings, Conclusions and Recommendation of the United States Magistrate Judge entered on January 13, 2017, and July 14, 2017, which the court **incorporates** by reference as if repeated herein verbatim.

§§ 1983 and 1985(2) against Barnes, Curtis, and Jolley, and noted that only Plaintiff's state law tort claims remained against these Defendants as a result of the court's ruling.

On February 10, 2017, the City, IPD, Barnes, Curtis, and Jolley filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking an order: "(1) requiring Williams to re-plead his §1983 and §1985(2) claims [against the City] and (2) dismissing with prejudice Williams's remaining claims against IPD and the individual Defendants." Defs.' Mot. 1 (Doc. 41). On July 14, 2017, the magistrate judge entered the Findings, Conclusions and Recommendation of the United States Magistrate Judge, recommending that the court grant Defendants' Rule 12(b)(6) Motion to Dismiss; dismiss with prejudice Plaintiff's section 1983 and 1985(2) claims against IPD; dismiss with prejudice Plaintiff's remaining individual and official capacity state law claims against Barnes, Curtis, and Jolley as barred by the Texas Tort Claims Act ("TTCA"); but allow Plaintiff to replead his section 1983 and 1985(2) claims against the City because he might be able to cure the deficiencies noted with respect to these claims. The magistrate judge further recommended that, "[i]f Plaintiff timely files an amended complaint, the motion to dismiss should be denied as moot, and the action should be allowed to proceed on the amended complaint." (Doc. 54 at 18).

On July 29, 2017, Plaintiff filed his First Amended Complaint ("Amended Complaint"). On August 30, 2017, the court accepted the magistrate judge's findings and conclusions and denied as moot Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 41) as recommended by the magistrate judge in light of Plaintiff's First Amended Complaint. Plaintiff's Amended Complaint is not a model of pellucid draftsmanship difficult and, thus, difficult to decipher. In it, Plaintiff includes as Defendants in the case caption the City of Irving, Lackey, and Caliber Home Loans but states in paragraph one of his Amended Complaint that his Amended Complaint is directed at the City of

Irving, IPD, Barnes, and Curtis. In the "Parties" section of his Amended Complaint, Plaintiff lists

only the City of Irving and Lackey as Defendants. The body of his Amended Complaint, however,

includes allegations against the City, IPD, Barnes, Curtis, Jolley, Lackey, and Caliber Home Loans.

The certificate of service for the Amended Complaint states that Lackey and Assistant City Attorney

Jason D. McClain were served with a copy of the amended pleading.[5] The City filed an Amended

Answer on September 12, 2017, to Plaintiff's Amended Complaint. No other Defendants filed a

responsive pleading to the Amended Complaint. Caliber Home Loans has not made an appearance

in this case, and there is no indication that it was properly joined as a party or served with process

in this action by Plaintiff.

The Amended Complaint includes the following claims: Counts 1 and 2, section 1983 and

1985(2) claims; Count 3, intentional infliction of emotional distress; Count 4, invasion of privacy;

Count 5, defamation of character (slander); Count 6, defamation of character (libel); Count 7, abuse

of process; Count 8, negligence (against the City of Irving); Count 9, negligence per se; Count 10,

gross negligence; Count 11, intrusion on physical or mental solitude or seclusion; Count 12,

unreasonable investigation, shadowing, and trailing; and Count 13, civil conspiracy. Except for

Count 8, all claims in the Amended Complaint are against "Defendants" or "ALL DEFENDANTS."[6]

On October 23, 2017, Plaintiff moved, pursuant to Federal Rule of Civil Procedure 16(b) to

modify the scheduling order to extend the pleading amendment and other deadlines, and requested

a stay of all proceedings pending resolution of his motion. On December 8, 2017, after hearing oral

argument on this and other pending motions by the parties, the magistrate judge denied Plaintiff's

---

[5] Jason D. McClain is listed on the docket sheet as the counsel of record for the City, IPD, Barnes, Curtis, and Jolley.

[6] *See* Pl.'s First Am. Compl. ¶¶ 10, 14, 15, 17, 19, 20, 23, 26, 28, 29, 30, 31.

request to stay all proceedings and granted his request to extend the deadline for discovery, mediation, and dispositive motions, but denied his request to revive and extend the pleading amendment deadline that expired August 1, 2017. On January 17, 2018, Plaintiff filed an Amended Motion for Leave to Amend Complaint (Doc. 77) to "correct a slight technical error by modifying the list of Co-Defendants by adding Stephanie Barnes, Bruce Jolley and Eric Curtis; and removing CoDefendants Caliber Home Loans and Craig Lackey."[7] Pl.'s Mot. 1 (Doc. 77). A hearing on this and other pending motions was held by the magistrate judge on February 23, 2018, after which the magistrate judge entered an order (Doc. 85) denying as moot Plaintiff's Amended Motion for Leave to Amend Complaint (Doc. 77) based on Plaintiff's representation that he no longer wished to pursue the motion. Plaintiff's Amended Complaint (Doc. 55) is, therefore, the operative pleading.

On March 20, 2018, the City moved for summary judgment on Plaintiff's section 1983 and 1985(2) claims, eight common law intentional tort claims, and three common law negligence claims against it. Based on the following reasoning, the City expressed the belief it was the only remaining Defendant in this case against whom Plaintiff has claims:

> Williams originally filed this suit on May 15, 2015 against the City, Irving PD, Barnes, Curtis, Bruce Jolley and CHL employee, Craig Lackey. (doc. 3). The Court dismissed Lackey from the suit on September 9, 2016. (doc. 35). The Court dismissed the federal claims against Barnes, Curtis and Jolley on February 7, 2017. (doc. 40). In response to Defendants' Rule 12(b)(6) Motion to Dismiss, Williams filed an Amended Complaint on July 31, 2017 that dismissed Irving PD, Barnes, Curtis, and Jolley from this suit. (doc. 55). Thus, the City is the only remaining Defendant.

City Summ. J. Mot. 7. As previously noted, however, it is not entirely clear whether Plaintiff's reference in his Amended Complaint to "ALL DEFENDANTS" refers to some or all of the original Defendants to this action. On April 11, 2018, Plaintiff moved for an extension of time to respond

---

[7] On January 11, 2018, Plaintiff filed an unsigned Motion for Leave to Amend Complaint (Doc. 74), which was denied as moot after Plaintiff filed a second amended motion for leave on January 17, 2018.

to the City's summary judgment motion and, on April 12, 2018, was granted an extension to April 17, 2018. Despite this extension, Plaintiff never responded to the City's summary judgment motion.

## II. The City's Summary Judgment Motion

The City moves for summary judgment on Plaintiff's section 1983 and 1985(2) claims. As noted, Plaintiff filed no response to the motion, even though he was given an extension of time to do so. The court, therefore, applies the legal standard applicable to no-response summary judgments in ruling on the City's motion.

### A. No-Response Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden

of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Plaintiff filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed

when no response or opposition is filed. *Id*. Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). As Plaintiff's pleadings are not verified, he has presented no summary judgment evidence to raise a genuine dispute of material fact in response to the City of Irving's motion for summary judgment.

### B.      Summary Judgment Grounds

#### 1.      Section 1983 Claim

##### a.      The City's Contentions

The City contends that it is entitled to summary judgment on Williams's claim under section 1983 for deprivation of his constitutional right to due process of law and equal protection of the laws because he has no evidence to raise a genuine dispute of material fact as to whether: (1) the City has an actual policy or custom of denying African-American equal protection; or (2) "the City's governing body or an official to whom that body has delegated policymaking authority was actually or constructively aware of [any] constitutionally infirm policy or custom." City Summ. J. Br. 5. In addition, the City contends that, "[e]ven if Williams can establish a policy or custom of which a City policymaker was aware, he still cannot show a constitutional violation whose moving force was the policy or custom in question." *Id.* at 7.

Regarding an actual policy or custom, the City asserts that, during his deposition, Williams was unable to identify an official policy promulgated by the City, regulation, or decision that violated his right to equal protection, and he was "unable to identify any other situations in which the City either refused to protect the black community from white criminals or retaliated against black

individuals who demanded equal protection or filed a federal lawsuit." *Id.* at 4-5.  The City further asserts that Williams was only able to point to his own interactions with City personnel, but the law is settled that, to establish a widespread pattern or practice, a section 1983 plaintiff typically cannot rely on his own alleged deprivation of constitutional rights. *Id.* at 5 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009), for the proposition that "[a] pattern requires similarity, specificity, and sufficiently numerous prior incidents.").

Regarding its contention that there is no evidence that a policymaker had actual or constructive knowledge of the constitutional violation alleged by Williams, the City, based on evidence submitted, asserts that, while Williams alleges the "City Council, Mayor, and Police Chief and 'senior members' of the police department are policymakers in this case," he was only able to identify Eric Curtis in deposition.  In support of its motion, the City points to evidence, which establishes that, pursuant to its Charter and the City's Code of Ordinances adopted by the City, the City's mayor, eight council members, and the City's chief of police are policymakers.  The City also presented evidence to show that Eric Curtis is not the chief of police; he is a "police officer serving in a detective assignment," and thus has no policymaking authority under the City's ordinances because police officers do not create policy; they follow it.  The City contends that Plaintiff has no evidence that any of its policymakers (City Council, the mayor, or chief of police) were actually or constructively aware of any illegal policy or custom.  The City further contends and submitted evidence that establishes that, during his deposition, Williams did not know who the chief of police was at the time in question and mistakenly believed that Jolley, a captain who  reported to the assistant chief of police, was the chief of police.

Finally, regarding its contention that Williams cannot establish a constitutional violation whose moving force was the policy or custom in question, the City contends that there is no constitutional violation because Williams has no evidence to support his allegation that he was denied equal protection because of his race, as he fails to: (1) identify any similarly-situated persons of a different race whom City employees treated differently; or (2) "provide any evidence to show that these or any City employees took an adverse action against [him] because of his race." *Id.* at 8. In addition, the City contends that Williams has no evidence "to establish City action or decisions that reflect deliberate indifference to the risk of an equal protection violation." *Id.*

The City asserts that, because Williams cannot establish any of the three requirements for municipal liability under section 1983, his claim for alleged constitutional violations under section 1983 fails. The court agrees with the City.

### b. Standard for Municipal Liability Under 42 U.S.C. § 1983

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [City] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.    A persistent, widespread practice of [City] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [City] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [City] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam), *cert. denied*, 472 U.S. 1016 (1985).  A plaintiff must identify the policy, connect the policy to the governmental entity itself and show that his injury was incurred because of the application of that specific policy.  *Bennett*, 728 F.2d at 767.  A plaintiff must establish that the governmental entity through its deliberate conduct was the "moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's action and the deprivation of a federally protected right.  *Bryan Ctny.,* 520 U.S. at 404.

Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official.  *Bennett*, 728 F.2d at 769.  The official complained of must possess

[f]inal authority to establish [City] policy with respect to the action ordered. . . .The official must also be responsible for establishing final government policy respecting such activity before the [City] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482 (1986).  An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee agency or board and *cannot* review the action or decision of the employee, agency or board.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112,127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989).

**Memorandum Opinion and Order – Page 11**

## c.    Discussion

In his Amended Complaint, Plaintiff alleges as follows regarding the City's allegedly unconstitutional policy:

> 48. Today, in 2017, the Defendant City of Irving has adopted an unconstitutional policy of refusing to enforce the law that protects members of the Black community from criminal elements within the White community.
>
> 49. The Defendants further adopted an open and widely implemented unconstitutional policy of retaliating against Black people when they demand the equal protection they are constitutionally entitled to.
>
> 50. The Defendants further adopted an open and widely implemented unconstitutional policy of retaliating against Black people who dare file federal lawsuits, and who single-out high-ranking investigators, officers, policy makers and police personnel, by name, who are secretly and under the color of authority, using City resources to reinvigorate and revive the traditional goals of the "Ku Klux Klan", one of which is the use of violence and intimidation and bullying to deny the African-American community equal protection under the law. The incidents, though did not result in actual physical contact, are acts of violence and terrorism on behalf of the City of Irving policy.
>
> 51. It is these policies that caused the deprivation of Williams's constitutional rights in this case.
>
> 52. *Under Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred because of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality.

Pl.'s First Am. Compl. ¶¶ 48-52. Plaintiff, however, has not come forward with any evidence to raise a genuine dispute of material fact as to whether the City's policymakers had an unconstitutional custom or policy as alleged in his pleadings, or whether the City had actual or constructive knowledge of such custom or policy. Accordingly, accepting the City's facts as undisputed, the court determines that Plaintiff has failed to raise a genuine dispute of material fact as to these requirements

for municipal liability, and it need not address the City's remaining contentions. Plaintiff's section 1983 claim against the City, therefore, fails, and the City is entitled to judgment as a matter of law as to this claim, which will be dismissed with prejudice.

### 2. Section 1985(2) Claim

The City contends that it is entitled to judgment on Williams's civil conspiracy claim under section 1985(2) because he cannot satisfy the requirements that: "(1) two or more persons conspired to obstruct justice in a state court proceeding, and (2) race or class-based animus motivated the conspirators." City Summ. J. Br. 9 (citing *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986)). Specifically, the City contends that Williams has no evidence that a City employee conspired to obstruct justice in a state or federal court proceeding, and he has no evidence, and does not even allege, that race or class-based animus motivated the alleged conspiracy against him.

Section 1985(2) provides:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). Section 1985(2) contains two parts. The first part pertains to conspiracies that interfere with the administration of justice in federal court, whereas the second part deals with conspiracies that interfere with the administration of justice in state court. *Daigle*, 794 F.2d at 979

(footnotes and citations omitted). The first part "prohibits conspiracies to deter witnesses from attending court or testifying, punish witnesses who have so attended or testified, or injure jurors." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n.6 (5th Cir. 2010). "[T]he first part does not require evidence of race or class-based animus" but "does require that there has been interference with the *federal* court system." *Daigle*, 794 F.2d at 979 (citation omitted). The second part of 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant*, 597 F.3d at 687. Because the equal protection language in section 1985(2) parallels the language in section 1985(3), the race or class-based animus requirement of section 1985(3) also applies to claims under the second clause of section 1985(2). *Daigle*, 794 F.2d at 979 (citation omitted). Thus, claims under the second part of section 1985(2) require evidence that the conspirator's action was driven by race or class-based discriminatory animus. *Bryant*, 597 F.3d at 687 (citation omitted); *Daigle*, 794 F.2d at 979 (citation omitted).

The basis for Plaintiff's section 1985(2) claim against the City is as follows:

18. The City of Irving conspired with Craig Lackey, In-House Legal counsel for Caliber[,] to obstruct, intimidate and deter Williams's determination to seek justice in both his cases against the City of Irving and his case against Caliber Home Loans and to provide a pretext to "Klansmen" disguised as police officers, detectives, prosecutors and investigators that could be used to justify the malicious prosecution and/or murder of Williams.

19. This conspiracy manifested itself in the form of a BOLO that was distributed to police cars, prosecutors and other law enforcement agencies. The creation a[nd] distribution of this BOLO has caused irreparable and incalculable damages.

20. As a direct and proximate result of the Defendants' violations of Plaintiff[']s constitutional rights, Plaintiff has suffered severe and substantial damages. These damages include lost salary, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney

fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and emotional distress and other compensatory damages, in an amount to be determined by a jury and the Court.

Pl.'s First Am. Compl. ¶¶ 18-20. Based on the foregoing allegations, Plaintiff's claim falls under the first and second parts of section 1985(2). Plaintiff's pleadings, however, are not verified, and he has not come forward with any evidence to raise a genuine dispute of material fact as to whether the City conspired to interfere with a state or federal proceeding; nor has he come forward with any evidence that race or class-based discriminatory animus was behind the City's alleged actions. Plaintiff's section 1985(2) claim against the City, therefore, fails, and the City is entitled to judgment as a matter of law on this claim, which will be dismissed with prejudice.

### 3. State Law Tort Claims

The City contends that it is entitled to summary judgment on Plaintiff's state law intentional tort claims for intentional infliction of emotional distress, invasion of privacy, slander, libel, abuse of process, intrusion on solitude, unreasonable investigation, and civil conspiracy in Counts 3, 4, 5, 6, 7, 11, 12, and 13 because the City has immunity from such claims under the TTCA. City Summ. J. Br. 11 (citing Tex. Civ. Prac. & Rem. Code §101.057, and *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014) ("[T]o be viable, the claim cannot arise out of an intentional tort")). The City asserts: "While there is no 'unreasonable investigation' tort, Williams alleges that City employees 'decided . . . [to] injure Plaintiff' and violated his 'rights to privacy' and 'invaded his seclusion and solitude.' Clearly, he is alleging intentional conduct and appears to conflate this allegation with his other intentional tort claims." City Summ. J. Br. 11 (internal citation omitted).

In addition, the City contends that Plaintiff's state law negligence tort claims included in Counts 8 through 10 are similarly barred under the TTCA, as they are based on the same conduct as

his intentional tort claims for invasion of privacy, abuse of process, and civil conspiracy. *Id.* at 12 (citing *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); and *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009)). The City asserts that, while the TTCA waives sovereign immunity for claims arising from an employee's negligent "operation or use of a motor-vehicle or equipment if the employee would be personally liable" to the plaintiff, none of Williams's negligence claims involves the operation or use of a motor-vehicle or equipment.

As explained in the next section, the court determines that all of the claims in Plaintiff's Amended Complaint, other than his section 1983 and 1985(2) claims against the City, exceed the scope of amendment authorized by the magistrate judge's July 14, 2017 findings and conclusions, which were accepted by the court. Consequently, all claims by Plaintiff, except for those under sections 1983 and 1985(2) against City, are not properly before the court. Even assuming that Plaintiff's state law claims against the City are properly before the court, they fail for the reasons that follow.

The magistrate judge previously determined in her July 14, 2017 findings and conclusions, which were accepted by this court, that the TTCA's limited waiver of sovereign immunity does not apply to intentional torts, and intentional infliction of emotional distress, invasion of privacy, slander, libel, abuse of process, and intrusion on solitude are considered intentional torts under Texas law. Doc. 54 at 16-17. Likewise, Williams's state law claim for civil conspiracy is an intentional tort, *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996), and, therefore, does not fall within the exception to governmental immunity. As a result, these claims by Plaintiff against the City are barred by the TTCA.

Regarding his "unreasonable investigation, shadowing, and trailing" claim in Count 12 of his Amended Complaint, Plaintiff alleges:

> 35. After obtaining the knowledge alleged in the foregoing paragraphs above, Defendant, through its authorized officers, agents, servants, employees, and representatives acting within the scope of their employment and authority, decided to conduct a campaign to intimidate, malign, and otherwise severely injure Plaintiff and his good name, character, and reputation in order to carry out the City of Irving[']s policy or practice of retaliation against citizens who complain of abuse or police corruption.
>
> 36. Defendant(s), through its authorized officers, agents, servants, employees, and representatives acting within the scope of their employment and authority violated plaintiffs right to privacy and invaded his seclusion, solitude, and private affairs by, but not limited to, the following means, instrumentalities and methods:
>
> 37. Illegally obtaining plaintiff[']s human resources files, photos and medical information and distributing it in the form of a BOLO and passing that BOLO to other courts and Grand Jury proceedings.
>
> 38. After [t]he police investigation was closed[,] conducting a continuing investigation of plaintiff in a manner that with reasonable foreseeability would, and did, violate plaintiff[']s right to privacy, subject him to harassment and intimidation, and invade [his] seclusion, solitude, and private affairs.
>
> 39. On account of defendant's wrongful acts, plaintiff suffered ridicule, embarrassment, vexation, humiliation, loss of sleep, and mental stress, all of plaintiff's damages in a sum within the jurisdictional limits of this court.
>
> 40. Defendant's actions were oppressive, malicious, outrageous, willful, wanton, reckless, and abusive, for which plaintiff seeks punitive damages in an amount within the jurisdictional limits of this court.

Pl.'s First Am. Compl. ¶¶ 35-40. Though described by Plaintiff as an "unreasonable investigation," the essence of the claim set forth in Count 12 is that City employees engaged in a campaign of harassment and intimidation. The court, therefore, agrees with the City that this claim, regardless of the label attached to it by Plaintiff, arises out of intentional conduct. Thus, assuming that Texas

law recognizes a cause of action for unreasonable investigation, the claim, as alleged by Plaintiff in Count 12, constitutes an intentional tort that is barred by the TTCA.

The court also agrees, for the reasons stated by the City, that Plaintiff cannot maintain his state law claims in Counts 8 through 10 for negligence, negligence per se, and gross negligence against the City under the TTCA because they are based on the same conduct that forms the bases of his intentional tort claims. *See Quinn v. Guerrero*, 863 F.3d 353, 363 (5th Cir. 2017) ("'[T]he TTCA does not apply to claims arising out of an intentional tort.' If plaintiffs classify intentional-tort claims as negligence claims, governmental immunity still applies.") (citations omitted); *see also* Pl.'s First Am. Compl. 21-28.

Accordingly, even if they were properly before the court, Plaintiff's state law intentional tort claims for intentional infliction of emotional distress, invasion of privacy, slander, libel, abuse of process, intrusion on solitude, unreasonable investigation, and civil conspiracy against the City in Counts 3, 4, 5, 6, 7, 11, 12, and 13, and his state law claims against the City in Counts 8 through 10 for negligence, negligence per se, and gross negligence all fail as a matter of law.

## III.    Claims Outside the Scope of Amendment Allowed

As previously explained, the magistrate judge recommended, in her July 14, 2017 findings and conclusions, that the court dismiss Plaintiff's section 1983 and 1985(2) claims against IPD and his state law claims against IPD, Barnes, Curtis, and Jolley because they fail as a matter of law but give Plaintiff an opportunity to amend his pleadings with respect to his section 1983 and 1985(2) claims against the City, as it was unclear whether he had pleaded his best case regarding these claims.

The Amended Complaint filed by Plaintiff on July 29, 2017, however, far exceeds the scope of the amendment recommended by the magistrate judge. In addition to repleading section 1983 and 1985(2) claims against the City, Plaintiff's Amended Complaint includes a large number of state law claims against the City. The Amended Complaint also adds Caliber Home Loans as a party; revives Plaintiff's section 1983 and 1985(2) claims against Barnes, Curtis, and Jolley, although these were previously dismissed with prejudice on February 7, 2017; includes state law claims against Barnes, Curtis, and Jolley that the magistrate judge determined on July 14, 2017, were barred by the TTCA, as well as new state law claims; includes section 1983 and 1985(2) claims against IPD that the magistrate judge determined on July 14, 2017, fail as a matter of law; and includes claims for abuse of process, civil conspiracy under section 1985(2), and defamation against Lackey, although all claims against him that were brought or could have been brought were previously dismissed with prejudice by agreement (Doc. 35). While the August 1, 2017 joinder and pleading amendment deadline had not yet expired when Plaintiff filed his Amended Complaint on July 29, 2017, Plaintiff did not move for leave to file an Amended Complaint that exceeded the scope of that authorized by the magistrate judge, and the Amended Motion for Leave to Amend Complaint (Doc. 77) that he filed on January 17, 2018, after expiration of the joinder and pleading amendment deadline, was denied as moot based on his representation to the magistrate judge that he no longer wished to pursue the motion.

As these claims are either barred by the joint stipulation and agreed judgment dismissing all claims with prejudice against Lackey or fall outside the scope of amendment allowed by the magistrate judge, and Plaintiff did not seek or obtain leave to join Caliber Home Loans as a party or amend his pleadings to include claims other than those under sections 1983 and 1985(2) against the City, none of the claims in his Amended Complaint, except for those against the City under

sections 1983 and 1985(2), is properly before the court, and they are **stricken**, together with the pleadings asserted in support of such claims. Moreover, even if properly before the court, Plaintiff's state law claims against the City, Barnes, Curtis, and Jolley, and his section 1983 and 1985(2) claims against IPD fail as a matter of law for the reasons set forth in this opinion and the magistrate judge's January 13, 2017 and July 14, 2017 findings and recommendations, which were accepted by the court.[8]

## IV.    Conclusion

For the reasons explained, the court **concludes** that no genuine dispute of any material fact exists with respect to Plaintiff's section 1983 and 1985(2) claims against the City of Irving. The court, therefore, **grants** the City of Irving's Summary Judgment Motion (Doc. 92) and **dismisses with prejudice** Plaintiff's section 1983 and 1985(2) claims against the City. Plaintiff's state law claims against the City also fail as a matter of law; however, as these and Plaintiff's claims against the other Defendants in the Amended Complaint exceed the scope of amendment allowed by the court and are not properly before it, all pleadings that pertain to claims other than Plaintiff's section 1983 and 1985(2) claims against the City are **stricken.** As all allowable claims by Plaintiff against

---

[8] In revisiting the magistrate judge's findings and conclusions (Doc. 54) and this court's order (Doc. 57) accepting those findings and conclusions and denying as moot Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 41), the court noticed that the magistrate judge's determination regarding the viability of Plaintiff's claims and recommendation that Plaintiff only be allowed to replead his section 1983 and 1985(2) claims against the City are incongruent with the magistrate judge's recommendation that the court deny as moot Defendants' motion to dismiss in its entirety if Plaintiff filed an amended complaint in accordance with the magistrate judge's report. Accordingly, the court **vacates** its order (Doc. 57) *to the extent it denied as moot Defendants' 12(b)(6) Motion to Dismiss (Doc. 41)* and **amends** the order such that Defendants' 12(b)(6) Motion to Dismiss (Doc. 41) is **granted** with respect to Plaintiff's section 1983 and 1985(2) claim against IPD in Counts 1 and 2 of the Original Complaint; **granted** with respect to Plaintiff's state law claims against Barnes, Curtis, and Jolley for intentional infliction of emotional distress, invasion of privacy, defamation of character (slander and libel), and abuse of process in Counts 3 through 7 of the Original Complaint; and **denied without prejudice** as to Plaintiff's section 1983 and 1985(2) claims against the City. Further, all of the foregoing claims, except those against the City for alleged violations of sections 1983 and 1985(2), are **dismissed with prejudice**, as a result of the court's ruling on Defendants' Rule 12(b)(6) Motion to Dismiss.

the City, IPD, Barnes, Curtis, Jolley, and Lackey have been dismissed with prejudice as a result of this memorandum opinion and order and the prior orders entered by the court in this case, the court will enter a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 30th day of August, 2018.

Sam A. Lindsay
United States District Judge